**No. 25-2933**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

---

ALONZO SMITH,

*Plaintiff-Appellee*

JOHN BURGE*, et. al.,*

*Defendants-Appellees*

---

BOB HERCULES,

*Intervenor-Appellant*

---

Appeal from the United States District Court for the Northern District of Illinois,
Case No. 16 C 03404--Virginia Kendall, *Judge*

---

# INTERVENOR-APPELLANT BOB HERCULES'S OPENING BRIEF AND REQUIRED SHORT APPENDIX

---


Matthew Topic
Stephen Stich Match
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
foia@loevy.com


**Oral Argument Requested**

Save As Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2933

Short Caption: Alonzo Smith v. Richard M. Daley

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Intervenor Bob Hercules

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Loevy + Loevy

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Matthew Topic Date: 11/18/25

Attorney's Printed Name: Matthew Topic

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** _____

Address: 311 N. Aberdeen St. 3rd Floor

Chicago, IL 60607

Phone Number: 312-243-5900 Fax Number:

E-Mail Address: foia@loevy.com

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2933

Short Caption: Alonzo Smith v. Richard M. Daley

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Intervenor Bob Hercules

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Loevy + Loevy

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Stephen Match Date: 12/08/2025

Attorney's Printed Name: Stephen Match

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 311 N. Aberdeen St. 3rd Floor

Chicago, IL 60607

Phone Number: 312-243-5900 Fax Number:

E-Mail Address: foia@loevy.com

## TABLE OF CONTENTS


I. JURISDICTIONAL STATEMENT .......... 1

II. ISSUES PRESENTED .......... 2

III. STATEMENT OF THE CASE .......... 3

IV. SUMMARY OF THE ARGUMENT .......... 7

V. ARGUMENT .......... 9

A. The district court erred by burdening Hercules to show good cause to vacate the protective order .......... 9

1. This case lacks the circumstances that justify placing the burden on the party seeking modification .......... 9

2. Hercules seeks to vacate the protective order so that the public can view the video deposition .......... 11

B. If Daley bears the burden, he failed to show that good cause supports the protective order .......... 13

1. Daley failed to show the video deposition would reveal his private health information .......... 14

2. The public interest in what Daley knew about police torture when he served as State's Attorney and Mayor outweighs Daley's undemonstrated privacy interests .......... 16

C. Even if Hercules bears the burden, the district court abused its discretion in holding that Hercules did not meet that burden .......... 18

1. Hercules did not agree to the protective order, and its broad scope affects his ability to access the video deposition through Illinois FOIA .......... 19

2. Daley failed to show he relied on the protective order when he gave his deposition testimony .......... 21

3. There is good cause to vacate the protective order .......... 22

VI. CONCLUSION .......... 25

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(A)(7) .......... 27

CIRCUIT RULE 31(e)(1) CERTIFICATION .......... 28

**CERTIFICATE OF SERVICE** ........................................................................................29

**REQUIRED SHORT APPENDIX** .................................................................. A001-A039

## TABLE OF AUTHORITIES

***Page***

***Cases***

*Anderson v. Cryovac, Inc.,* 805 F.2d 1(1st Cir. 1986) ....................10

*Bayer AG and Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456 (S.D.N.Y. 1995) ....................21

*Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009)....................1

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999) ...9, 21

*City of Greenville, Illinois v. Syngenta Crop Protection LLC*, 764 F.3d 695 (7th Cir. 2014)....................11, 12

*Crothers v. Pilgrim Mortg. Corp.*, No. 95-cv-4681, 1997 WL 570583 (S.D.N.Y. Sept. 11, 1997)....................12, 24

*Daniels v. City of New York*, 200 F.R.D. 205 (S.D.N.Y. 2001)....................12

*Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) ....................1

*Doe v. Lansal, Inc.*, No. 08 C 5983, 2012 WL 707112 (N.D. Ill. Mar. 5, 2012)....................24

*Felling v. Knight*, 211 F.R.D. 552 (S.D. Ind. 2003) ....................24

*Gastineau v. Wright*, 592 F.3d 747 (7th Cir. 2010)....................19

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995) ....................13

*Grove Fresh Distrib., Inc. v. Everfresh Juice, Co.*, 24 F.3d 893 (7th Cir. 1994) ....................1

*Heraeus Kultzer, GmbH v. Biomet, Inc.*, 881 F.3d 550 (7th Cir. 2018) ....................8, 9, 11, 12, 19, 22

*In re Bank One Sec. Litig.*, 222 F.R.D. 582 (N.D. Ill. 2004)....................15

*In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417 (9th Cir. 2011)....................9, 15, 16, 18, 22, 23, 25

*In re U.S Motion to Modify Sealing Orders*, No. 5:03-MC-2, 2004 WL 5584146, (E.D. Tex. June 8, 2004) ....................12

*Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854 (7th Cir. 1994) ....................8, 9, 13, 23

*Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499 (S.D. Iowa 1992)........19

*Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 295 (2d Cir. 1979)........21, 22

*Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175 (N.D. Ill. 2006)........19, 21, 22

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994)........13, 16, 17, 25

*Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775 (1st Cir. 1988)........20

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)........17

*Smith v. Burge*, 222 F. Supp. 3d 669 (N.D. Ill. 2016)........4

*Sokol v. City of Chicago*, No. 13-cv-5653, 2014 WL 5473050 (N.D. Ill. Oct. 29, 2014)........13, 16

*Tel. & Tel. Co. v. Grady*, 594 F.2d 594 (7th Cir. 1978)........19

*U.S. v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, 2016 WL 278968, (E.D. Tex. Jan. 22, 2016)........9

*Walsh v. Alight Solutions LLC*, 44 F.4th 716 (7th Cir. 2022)........13, 14

*Will v. Hallock*, 546 U.S. 345 (2006)........1

***Statutes***

5 ILCS 140/2(c)........18

***Other Authorities***

Arthur R. Miller, Confidentiality, Protective Orders and Public Access to the Courts 105 *Harv. L. Rev*. 427 (1991)........9

Fed. R. Civ. P. 26(c)........3, 5

## I. JURISDICTIONAL STATEMENT

The District Court of the Northern District of Illinois had subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because it arises under the First and Fourteenth Amendments to the United States Constitution, and pursuant to 28 U.S.C. § 1343, because relief was sought pursuant to 28 U.S.C. §§ 1983 and 1985. The district court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) as to the related state law claims.

This Court has jurisdiction to decide this appeal under 28 U.S.C. § 1291 and the collateral order doctrine. *E.g. Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)) (the collateral order doctrine is "best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a 'practical construction' of it."); *see Grove Fresh Distrib., Inc. v. Everfresh Juice, Co.*, 24 F.3d 893, 895-96 (7th Cir. 1994) (applying collateral order doctrine). The requirements for a collateral order appeal are that the order (1) conclusively determines the disputed question; (2) resolves an important issue separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment. *Will*, 546 U.S. at 349.

Here, Intervenor-Appellant appeals from a final decision entered September 24, 2025, denying his motion to vacate the January 24, 2018 protective order that precluded the distribution of Appellee Richard M. Daley's video deposition taken in this matter. As to the first factor, the order conclusively determined that the protective order should not be vacated. *See* A.001; s*ee also Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009) (reviewing district court's order as to an intervenor's request to modify a protective order). Further, the ruling as to the protective order is separate from the merits of the case, which pertained to the Plaintiff's constitutional, federal statutory, and related state law claims, and so the second factor is met. The separable issue is important because, as the district court recognized, it implicates Intervenor-Appellant's First

Amendment rights, and the public has an interest in hearing Defendant Daley's testimony, which was taken to ascertain his knowledge of police torture and forced confessions that took place while he was Mayor of Chicago and State's Attorney of Cook County. *See* A.004-6, 11. Finally, the September 24, 2025 order is effectively unreviewable on an appeal from a final judgment because the district court entered judgment in November of 2018 after the parties agreed to settle the case. Thus, the order meets the collateral order appeal requirements and Intervenor-Appellant filed a timely notice of appeal in the district court on October 24, 2025.

This appeal is taken from the district court's final judgment adjudicating all the claims with respect to the parties.

## II. ISSUES PRESENTED

1. When a district court enters an unrequested protective order barring distribution of discovery material without a finding of good cause, and where all the relevant proceedings took place in secret, who bears the burden with respect to the protective order's validity: the party seeking to keep the order in place, or an intervenor seeking to vacate it?
2. If the proponent of the order bears the burden, is the inclusion of largely public medical information good cause to keep secret a video deposition taken to ascertain a former mayor and state's attorney's knowledge of police torture and coerced confessions that occurred while he was in office?
3. If the intervenor bears the burden, did the intervenor here demonstrate changed circumstances and good cause to vacate the protective order, where the deponent never testified to his knowledge at trial—a fact that did not exist at the time the order was entered—and the order prevented a public body from producing the video deposition under a state public records law?

## III. STATEMENT OF THE CASE

This case concerns a secret protective order entered during a closed hearing that directly interferes with the public's right under Illinois law to obtain public records concerning a long-serving public official's knowledge of widespread allegations of police torture. The protective order, issued over Appellee Richard M. Daley's videotaped deposition in a police torture civil rights case, was unrequested and entered without any finding of "good cause" under Fed. R. Civ. P. 26(c). Because the parties reached a settlement, and Daley never testified at trial, the deposition video is now the only way for the public to learn what Daley knew about police torture allegations that plagued the City while he served as Mayor and Cook County State's Attorney. Despite the district court's lack of any good cause finding, and Daley's failure to explain how vacating the protective order now would divulge his private health information when that information is either already public or capable of redaction, the district court denied Intervenor-Appellant Bob Hercules's motion to vacate the protective order. The district court's reasoning is flawed. It repeatedly conflates First Amendment court access law with the law governing protective orders pursuant to Rule 26(c). The former is not relevant to the material at issue in this case, and the latter supports vacating the secrecy order.

In 2016, Plaintiff Alonzo Smith sued various defendants, including Appellee Daley, for violating his civil rights in connection with police torture and coerced confessions committed by disgraced former Chicago Police Department Detective and Commander Jon Burge and his associates. Smith alleged that the torture was committed with the full knowledge of Daley, who served as State's Attorney of Cook County at the time of Smith's coerced confession, and who allegedly did nothing to address the issue after becoming Mayor of Chicago. The district court

(St. Eve, J.)[1] denied Daley's motion to dismiss in part, finding that there were credible allegations "that Defendant Daley, as Chicago's Mayor, participated in a conspiracy to conceal evidence of police torture." *Smith v. Burge*, 222 F. Supp. 3d 669, 697 (N.D. Ill. 2016).

Smith then sought Daley's deposition to discover Daley's knowledge of police torture and coerced confessions connected to Burge while he served in public office. In a sealed filing, Daley moved to preclude the deposition on the ground that a stroke he suffered in 2014 purportedly made him "unable to provide accurate or reliable answers in response to questions that might be put to him." Dkt. 284 at 3 (Mar. 22, 2017).[2] In a sealed order, the district court denied that motion without prejudice. *See* A.020.

Daley then renewed his motion and submitted new medical evidence, again under seal. *See* Dkt. 285 (Dec. 18, 2017). Smith, also under seal, opposed the motion, arguing that Daley was, at the time, serving as Of Counsel for the law firm Katten Muchin Rosenman, LLP ("Katten"), as Executive Director of Tur Partners, and on the Board of Directors of Coca-Cola, and that he was of sound enough mind to sit for a deposition. *See* Dkt. 286 at 9-10 (Jan. 16, 2018). Smith offered to conduct the deposition "under seal," which Daley had not requested. *Id*. at 18.

The district court then held a hearing on Daley's renewed motion. The public was not informed that the Court would consider a protective order barring distribution of the video deposition: the Minute Entry setting the hearing (Dkt. 163) did not communicate this, and the

---

[1] Three different judges have presided over this case in the district court. The case was originally assigned to Judge St. Eve, who entered the protective order. When Hercules moved to intervene in the case, the case was reassigned to Judge Dow. When Hercules moved to vacate the protective order, the case was reassigned to Judge Kendall. For clarity, Hercules references the judges by name where appropriate.

[2] Many of the relevant documents were initially filed under seal and were unsealed on Hercules' motion. *See* Dkt. 256, 279. For these documents, Hercules cites docket numbers associated with the unsealed records that were refiled on the public docket and the date of the original sealed filings. The dates on the file stamps do not match the dates the documents were initially filed.

motion papers were under seal at the time. The transcript for the hearing remained under seal until it was ordered unsealed in 2023. *See* A.016. The docket indicates that this January 24, 2018 hearing took place "in chambers," meaning that it was closed to the public. Dkt. 168.

At the closed hearing, the court ordered that the deposition go forward, finding that the medical evidence and Daley's ongoing work for Katten, Tur Partners, and Coca-Cola undermined Daley's claimed inability to answer questions. A.025. At the same time, the court ordered various accommodations, including that the deposition take place across multiple shorter days rather than one session, and that Judge St. Eve would observe those sessions. A.026-28. The court also ordered that the deposition "will be under seal. Nothing can happen with that video deposition without further order of the Court." A.028. The court, however, was not asked to, and did not, make any findings about whether precluding distribution of the deposition satisfied the "good cause" standard for a protective order under Fed. R. Civ. P. 26(c). *Id.*

The depositions went forward on April 9, June 7, and July 16, 2018. A.037. The parties then began settling the case, and informed the court on November 6, 2018, that a settlement had been reached. Dkt. 235.

In 2021, Intervenor-Appellant Bob Hercules, a Peabody Award-winning filmmaker, moved to intervene in the case to better understand and report on the events surrounding Daley's deposition and, ultimately, the deposition's contents—including whether Daley's deposition revealed that he knew about Chicago Police Department torture and coerced confessions and did nothing about it. *See* Dkt. 256. To better understand the basis for the protective order, and the court's reasons for entering it, Hercules also moved to unseal certain docket entries related to Daley's motion to preclude his deposition. *See id*. The case was reassigned to Judge Dow, and the court granted Hercules leave to intervene; Daley opposed unsealing. *See* Dkt. 257, 272, 276.

Judge Dow granted Hercules' unsealing motion in part. A.015-16. The court unsealed many of the documents Hercules requested, including the transcript of the hearing where Judge St. Eve entered the protective order, but redacted parts that discussed Daley's private medical information, which Hercules did not seek. *Id.*

Hercules later made a FOIA request to the City of Chicago Law Department for a copy of the video deposition of Daley. A.018 at ¶ 11. The Law Department denied the request based on the protective order entered by Judge St. Eve and for no other reason. *Id.*; A.036.

After the Law Department denied his FOIA request, Hercules filed a motion to vacate the protective order over the videotaped deposition, and the case was reassigned to Judge Kendall. Dkt. 293-94. Daley opposed, and the parties briefed Hercules's motion, with the court ordering certain filings to be made under seal. Dkt. 297, 302-03, 311, 315, 322-24. On September 24, 2025, the court denied Hercules's motion in a written opinion and ordered that certain sealed filings be re-filed with redactions to Daley's specific medical information on the public docket. A.001-14; *see* Dkt. 322-24.

In denying Hercules's motion, the court found that Hercules had standing to challenge the protective order because Hercules identified a willing speaker, Smith's attorney G. Flint Taylor, who would disseminate the videotaped deposition to him but for the protective order, and who supported Herecules's motion. A.003-6. The court found that Hercules "identified an injury-in-fact to his constitutional right to receive information that will be redressed if the Court determines it is appropriate to vacate the protective order." A.006.

But the court denied Hercules's motion to vacate the protective order. It held that Daley lacked any burden to show good cause for the protective order and instead placed the burden on Hercules to show good cause for vacating it. A.006-8. The court then held that Hercules did not

meet his purported burden. A.013. Hercules had argued that circumstances changed since the court entered the protective order: at the time the court entered it, Daley presumably would have given the same testimony at a public trial, an expectation that was dashed after the parties settled the case. A.011-12. The court, however, determined that these changed circumstances were not "legally significant" because the public's court-access rights—which were not at issue in this case—do not apply to unfiled civil discovery. A.012-13. The court also speculated that the protective order did not interfere with Hercules's rights under Illinois FOIA even though the City specifically cited the protective order in denying his request. *Id.* And it held that the deposition video would reveal Daley's sensitive medical information even though it recognized that the fact of Daley's stroke is already public and was not the subject of the deposition, which was instead taken to ascertain his knowledge of police torture and coerced confessions. *See* A.013. Hercules appealed. A.039.

## IV. SUMMARY OF THE ARGUMENT

1. A party seeking a protective order bears the initial burden to justify it. Once it does so, the burden in some cases shifts to the party seeking to vacate the protective order. But this is not one of those cases. Here, the protective order was entered after an offhand suggestion by Daley's counsel, the court made no good-cause finding to support it, and because the proceedings were conducted entirely under seal, neither Hercules nor any member of the public had any opportunity to object before it was entered. In addition, Hercules seeks to vacate the protective order so that the public can access additional information on an issue of public concern. In the unique circumstances of this case, the district court erred by saddling Hercules with the burden of showing good cause to vacate the order. Instead, it should have required Daley to show good cause to maintain it.

2. Daley failed to meet the burden he rightfully bore. He failed to identify any specific part of the deposition that would reveal his private health information, especially considering that the purpose of the deposition was not to learn about his health, but about his knowledge of the Burge torture allegations. Daley also failed to demonstrate that his amorphous privacy claims outweigh the substantial public interest in learning what he knew about police torture and coerced confessions perpetuated by Chicago Police Department detective Jon Burge while Daley served as the Cook County State's Attorney and Mayor of Chicago.

3. If, *arguendo*, Hercules does bear the burden to justify vacating the protective order, the district court erred when it found that Hercules failed to meet it. The district court itself recognized the substantial public interest in Daley's knowledge of police torture and coerced confessions yet rejected as not "legally significant" the fact that, after the court entered the protective order, the case settled, and the public lost the only remaining avenue for satisfying that interest: Daley's trial testimony. The court's conclusion turned entirely on case law holding that the public lacks a right to access court records that do not affect judicial decision-making, which is simply irrelevant to the legality of a protective order concerning unfiled civil discovery. The court was also wrong to speculate that the City of Chicago lacks access to the video deposition—and that the order interferes with Hercules' rights under Illinois FOIA—since the City denied Hercules's request solely on the basis of the protective order.

4. The district court's ruling cannot be squared with decisions of this Court, which support placing the burden of good cause on the party that seeks to keep information secret, require courts to make specific good cause findings when they order blanket secrecy, and instruct courts to avoid "permanent, frozen" protective orders. *See Heraeus Kultzer, GmbH v. Biomet, Inc.*, 881 F.3d 550 (7th Cir. 2018); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854 (7th Cir. 1994);

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999) Because the district court erred this Court should reverse and remand with instructions to vacate the protective order.

## V. ARGUMENT

### A. The district court erred by burdening Hercules to show good cause to vacate the protective order.

#### 1. This case lacks the circumstances that justify placing the burden on the party seeking modification.

Which party bears the burden of showing good cause to modify a protective order is a question of law and is reviewed *de novo*. *See Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). In the ordinary case, the party seeking a protective order bears the initial burden to show "good cause" for its entry. *Id.* (quoting Fed. R. Civ. P. 26(c)). When such orders are stipulated, like this one was, "the court is faced with an essentially non-adversarial situation and must assume the duty of making an independent inquiry." *Id*. (quoting Arthur R. Miller, Confidentiality, Protective Orders and Public Access to the Courts, 105 *Harv. L. Rev*. 427, 492 n. 322 (1991)). Once the court has independently found good cause, the order is presumed valid, and the burden typically shifts to a party seeking to modify it. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 566 (7th Cir. 2018).

This is not the ordinary case. For one, the district court made no good cause finding. Thus, its order is not entitled to deference. *See Jepson*, 30 F.3d at 859 (holding that the absence of a good cause determination "requires us to independently determine whether 'good cause' existed" for a protective order); *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) ("When the protective order was a stipulated order and no party ha[s] made a good cause showing, then the burden of proof" remains with "the party seeking protection") (cleaned up); *see also U.S. v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-543, 2016 WL 278968, at *4 (E.D.

Tex. Jan. 22, 2016) ("If good cause was shown for the original protective order, the burden is on the party seeking modification to show good cause for modification; if good cause is not shown for the original protective order, the burden of showing good cause is on the party seeking continued confidentiality protection.") (collecting cases).

The district court—two judges removed from the one who entered the order—failed to identify a good cause finding. The judge who entered the order did not find good cause for it. She simply stated at a hearing, when issuing the order, that the deposition "will be under seal" without requiring any evidence or elaborating on her reasoning, and did not issue a written order. A.028. That does not constitute a finding of good cause. *See Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986) ("A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."). Indeed, the judge's only reference to good cause, on which the court below relied, was a finding that there was ***not*** good cause for a ***different*** protective order that would have precluded the plaintiff from taking Daley's deposition. A.024. The absence of good cause for one protective order is plainly not good cause for a different one. The district court wrongly concluded otherwise.

So here we have a protective order requested by nobody, offhandedly suggested by the party it does not protect, and entered at a non-adversarial hearing without a finding of good cause. That is already enough to defeat the presumption of the protective order's validity. But to make matters worse, all this took place in secret, through sealed filings and at a closed court hearing—we know about them only because they were unsealed years later in response to a motion by Hercules. A.015-16.[3] Thus, while one could imagine an argument that the public was

[3] Hercules brought his unsealing motion after a review of the district court docket showed that Daley had moved for a protective order, which the court had granted in part and denied in part. It was not even clear at the time that the protective order concerned a deposition. *See* Dkt. 256 at 2.

constructively on notice and forfeited its right to object to the initial entry of the order, such an argument would not apply here. Secret protective orders should be easier to vacate, not harder.

#### 2. Hercules seeks to vacate the protective order so that the public can view the video deposition.

Independent of the unusual way in which the order was entered, this Court has also recognized that when a party seeks to keep information subject to a protective order secret, the burden of showing good cause lies with that party. *See Heraeus Kulzer*, 881 F.3d at 566-67 (holding that the burden lay with the party seeking modification because it "stressed throughout this litigation that it wants to *prevent* public disclosure") (emphasis in original). But here, Hercules seeks to vacate the protective order so that the public can view Daley's video deposition, and this supports placing the burden on Daley.

The district court disagreed, and distinguished *Heraeus Kulzer* stating that the Court's "discussion was limited to situations where a third party seeks access to court files and other documents that make up the public record" and "[t]here is no such presumption of public disclosure for unfiled discovery." A.007. But like this case, *Heraeus Kulzer* involved a protective order over unfiled discovery, and the Court relied on access-to-court-records cases when it considered if Heraeus's desire to keep discovery documents secret counseled against shifting the burden of showing good cause to the other parties. 881 F.3d at 566-67. The Court did not distinguish those cases because they concerned access-to-court records rather than access to discovery documents. *Id.* Instead, the Court found them relevant and distinguished them because the party seeking modification was trying to prevent public access to the documents rather than make them available to the public. *Id.* at 567.

Instead of following *Heraeus Kulzer*, the district court relied on *City of Greenville, Illinois v. Syngenta Crop Protection LLC*, 764 F.3d 695 (7th Cir. 2014), which concerned an intervenor's

attempt to access sealed exhibits that were mistakenly filed on the public docket. A.007. Unlike this case, *Syngenta* concerned the constitutional and common-law public right of access to mistakenly filed court records, not the lifting of a protective order over unfiled discovery, and so the Court in *Syngenta* was not asked to consider which party bears the burden of showing good cause for a protective order, let alone address whether an intervenor's purpose in seeking modification to make information public affects which party bears that burden. 764 F.3d at 698. Here, Hercules seeks to modify the protective order so that the public can learn what Daley knew about police torture allegations concerning Burge while he was State's Attorney and Mayor, and under authority from this Court Daley thus bears the burden. *See Heraeus Kulzer*, 881 F.3d at 566-67.

Cases from other jurisdictions also support placing the burden on the party that seeks to keep information secret, regardless of the type of records being sought. *See Daniels v. City of New York*, 200 F.R.D. 205, 207 (S.D.N.Y. 2001) ("When a private party asserts a public interest in order to gain access to information, the burden is on the party seeking to maintain the confidentiality order to show that there is 'good cause' for continued confidentiality") (assessing a protective order over discovery documents); *Crothers v. Pilgrim Mortg. Corp.*, No. 95-cv-4681, 1997 WL 570583, at *3 (S.D.N.Y. Sept. 11, 1997) (acknowledging that standard applies to "the modification of protective and sealing orders"); *In re U.S Motion to Modify Sealing Orders*, No. 5:03-MC-2, 2004 WL 5584146, at *2 (E.D. Tex. June 8, 2004) ("When the case is of great interest to the public and media, the courts refuse to shift the burden to the party seeking to modify the protective order. Instead, the party seeking to maintain confidentiality must show good cause for continued protection.") (granting motion to modify a protective order over a sealed deposition).

The district court overlooked this authority, which is in line with authority from this Court, when it declined to place the burden on Daley.

### B. If Daley bears the burden, he failed to show that good cause supports the protective order.

If Daley bears the burden of showing good cause, as the Court should conclude, Daley must "specifically demonstrate[] that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples will not suffice." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (cleaned up); *see Walsh v. Alight Solutions LLC*, 44 F.4th 716, 727-28 (7th Cir. 2022) (affirming district court's denial of a protective order where proponent failed to "articulate[] how production of this information would result in disclosure to a third party"); *Sokol v. City of Chicago*, No. 13-cv-5653, 2014 WL 5473050, at *1 (N.D. Ill. Oct. 29, 2014) ("In determining whether there is good cause for a protective order, the court must balance the harm to the party seeking the protective order against the importance of public disclosure.") (St. Eve, J.). Courts also consider whether the protective order would interfere with disclosure under state freedom of information laws, and if so, there is a "strong presumption" that "tilts the scales heavily against entering or maintaining an order of confidentiality." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 791 (3d Cir. 1994).

Here, Daley failed to show good cause for two reasons: First, he failed to show that the video deposition would implicate his private health information; and second, the public interest in what Daley knew about police torture when he served as State's Attorney and Mayor of Chicago, and the protective order's interference with the public's ability to obtain that information through Illinois FOIA outweigh his undemonstrated privacy interests. Because the district court made no good cause finding, the Court reviews the issue *de novo*. *See Jepson*, 30 F.3d at 858-59 (independently assessing a protective order where the district court did not find good cause).

### 1. Daley failed to show the video deposition would reveal his private health information.

Daley's only cited harm is the release of his private health information, but the record does not support that the deposition video would reveal this information. *See* Dkt. 322 at 17; *Walsh*, 44 F.4th at 727-28. As discussed above, the subject of the deposition was Daley's knowledge of police torture, not his health. While Daley sought to prevent the deposition from going forward based on his health and used his private health information to support that argument in his corresponding motion, that did not transform the actual subject matter of his deposition.

The district court found that Judge St. Eve and Judge Dow's "rulings in this case demonstrate that Daley's health conditions have remained the 'driving force' behind the protective order," A.013, but that is not supported by the record.[4] As the district court recognized, it is public knowledge that Daley suffered a stroke in 2014. *See* A.001; Dkt. 293 at 2. Despite this, Judge St. Eve found that Daley was capable of being deposed as to his knowledge of police torture based on both the medical evidence and Daley's ongoing work for Katten, Tur Partners, and Coca-Cola. A.024-25. While Judge St. Eve did order certain accommodations for Daley, such as the deposition taking place over multiple days, these came prior to the deposition, so her rulings cannot establish that the deposition video itself reveals private health information. A.026-28. Judge St. Eve also made no specific finding as to Daley's private health information when she ordered the video deposition to be "under seal." A.028.

Judge Dow's orders are even less relevant on this point because he addressed the private health information only in the context of unsealing court records, which did not include the

[4] Because the district court placed the burden on Hercules, it did not assess whether Daley would have borne the burden if he had it. It issued this finding, and others discussed in this section, in connection with its analysis of Hercules' burden. Because they bear on both, Hercules discusses them here.

deposition video, and Hercules explicitly did not seek Daley's private health information. A.015 ("Intervenor has disavowed any interest in 'any specific health information'"). He was not asked, and thus did not consider, whether the unfiled video of Daley's deposition would reveal any private medical information.

In its ruling, the district court suggested that *in camera* review of "certain portions" of the video could suggest that Daley may appear to display certain symptoms of having experienced a stroke but stops short of stating that any non-public health information would be revealed. A.013 ("certain portions" of the video "could have the tendency to reveal sensitive aspects" of Daley's health). And even if Daley's appearance in the video could somehow reveal his private health information, which Daley has never shown, Judge St. Eve found the opposite when she ordered Daley to sit for the deposition in the first place based in part on his public professional activities, such as his service on the board of a major public corporation. *See* A.025. And, again, it is already public knowledge that Daley had a stroke, and his health was not so embarrassing as to prevent him from sitting on the board of directors of a publicly traded corporation.

Moreover, even if parts of the deposition video do somehow implicate Daley's private health information, such as discussions of his symptoms or treatment, the solution should be to redact any confidential information, not maintain the status quo of blanket secrecy. *Roman Catholic Archbishop*, 661 F.3d at 425 ("[I]n determining whether to protect discovery materials from disclosure under Rule 26(c), a court must not only consider whether the party seeking protection has shown particularized harm, and whether the balance of public and private interests weighs in favor, but also keep in mind the possibility of redacting sensitive material"); *In re Bank One Sec. Litig.*, 222 F.R.D. 582, 586 (N.D. Ill. 2004) ("If a party does identify specific genuine confidential material within documents concealed by the protective order, a court nevertheless may

place the documents in the public record following redaction of the confidential material."). Indeed, the district court found only that "certain portions" of the deposition video could reveal aspects of Daley's health, not the whole of the deposition which was recorded over three separate sessions. A.013. There has been no showing from Daley, and no finding from the district court, that the entirety of the deposition implicates Daley's specific health information, or that any alleged privacy harm cannot be addressed through redaction. *See Roman Catholic Archbishop*, 661 F.3d at 425.

**2. The public interest in what Daley knew about police torture when he served as State's Attorney and Mayor outweighs Daley's undemonstrated privacy interests.**

While Daley has failed to show any specific way in which the deposition video would reveal his private health information, and the district court did not articulate any specific harm either, the district court did not dispute the public interest in the video. It recognized that "[t]he public of course has an interest in hearing what Daley might have to say about allegations of police torture and forced confessions" and that this interest is "elevated considering Daley, 'the party benefiting from the confidentiality order[, was] a public official.'" A.011 (quoting *Sokol*, No. 13-cv-5653, 2014 WL 5473050, at *1). Indeed, Daley was head of the State's Attorney's Office and the City at the relevant times, and so his testimony would shed light on what these public bodies knew about allegations related to Burge.

Hercules has also triggered the strong presumption against protective orders because he has shown that the protective order in this case interferes with his access to the record through Illinois FOIA. *Pansy*, 23 F.3d at 791. Before moving to vacate the protective order, Hercules requested a copy of the deposition video from the City's Law Department. A.018 at ¶ 11. The Law Department denied Hercules's FOIA request solely based on the protective order. *Id.*; A.036.

Put differently, the protective order alone prevented the Law Department from releasing this public record through the Illinois FOIA.

The district court held otherwise because the video deposition "is decidedly not a matter of public record." A.012-13. It relied on *Seattle Times Co. v. Rhinehart*, which held that unfiled discovery is not a "public source of information" *qua* court record; documents gain that status only once they are "admitted." 467 U.S. 20, 33 (1984). But the district court's holding addresses the wrong question. The question is not whether the document is subject to the common-law right of access to court records, as in *Seattle Times*, but whether the protective order interferes with rights under ***state public records laws***. *See Pansy*, 23 F.3d at 791.

The Third Circuit addressed this very distinction in *Pansy*. That case concerned the intervenors' motion to vacate a confidentiality order blocking the government defendant from releasing an unfiled settlement agreement resolving a federal lawsuit under the state's public records law. *Id*. at 783-85. The Third Circuit found that the settlement agreement was not a judicial record subject to the court access doctrine, but explained that if the intervenors "are successful in vacating the Order of Confidentiality, as a matter independent of the right of access doctrine," the confidentiality order "would merely be vacated" and the intervenors "would then be free to seek access to the Settlement Agreement through other legal channels," including the state's public records law. *Id.* at 784. In determining whether there was good cause to maintain the confidentiality order in *Pansy*, the court stressed there is a "strong presumption against . . . maintaining an order of confidentiality whose scope would prevent disclosure of [] information pursuant to the relevant freedom of information law." *Id.* at 791.

The district court did not dispute that the deposition video would be subject to Illinois FOIA, and plainly it is. "[P]ublic records" subject to Illinois FOIA are "all records . . . pertaining

to the transaction of public business, regardless of physical form or characteristics . . . in the possession of, or under the control of any public body." 5 ILCS 140/2(c). Here, the City was named as a defendant in Smith's lawsuit, and so Daley's deposition pertains to the Law Department's representation of the City and thus pertains to public business. Further, the Law Department's response letter denied the request solely because of the protective order, confirming that the deposition ***is*** a public record, and that but for the protective order, it would release it. A.036.

The district court also speculated that the Law Department does not actually possess the video. A.012. Its sole reason was its statement that the protective order supposedly only applied to Daley, the plaintiff, and their counsel. *See id*. But the transcript of the protective order hearing simply does not support that assertion. A.028. And in any event, if the Law Department did not possess the deposition video, it would have said so rather than deny Hercules's request based on the protective order. The district court thus erred when it discounted the protective order's interference with Hercules's ability to obtain the deposition video through Illinois FOIA, especially when balanced against Daley's unspecified privacy interest.

In sum, Daley failed to meet his burden to show good cause to maintain the order. This Court should order it vacated.

### C. Even if Hercules bears the burden, the district court abused its discretion in holding that Hercules did not meet that burden.

If the Court concludes that Daley bears the burden of showing good cause, the Court does not need to reach this issue. But even if the Court finds that Hercules, and not Daley, bears the burden, the Court should still reverse because the district court abused its discretion in holding that Hercules did not meet that burden. *Roman Catholic Archbishop*, 661 F.3d at 424 ("We review a lower court's decision to grant, lift or modify a protective order for abuse of discretion") (internal

quotations and citation omitted); *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010) ("An abuse of discretion occurs if the district court reaches erroneous conclusions of law or premises its holding on a clearly erroneous assessment of the evidence.") (internal quotations omitted). When the movant has the burden of showing good cause, courts typically consider four factors: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Heraeus Kulzer*, 881 F.3d at 565 (citing *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175 (N.D. Ill. 2006)); A.006. The second factor, foreseeability, is only relevant when a party negotiates a protective order and fails to include provisions that it should have foreseen in advance. *See Murata*, 234 F.R.D. at 180. When the terms of a protective order were not negotiated, this factor is not relevant, as the district court held. A.009. The other three factors are relevant and are discussed below.

#### 1. Hercules did not agree to the protective order, and its broad scope affects his ability to access the video deposition through Illinois FOIA.

The first factor, the nature of the protective order, considers both the scope of the protective order, that is, the amount of information it covers, and whether the parties have agreed to the order. *Murata*, 234 F.R.D. at 179. While lower courts, including the district court here, have considered whether the order is an umbrella, blanket, or specific order, there is no indication that this Court has endorsed that trichotomy for the purpose of this factor. Instead, the Court has focused on whether the movant agreed to the protective order. *Heraeus Kulzer*, 881 F.3d at 567 (citing *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1978)) ("Heraeus's burden was even higher because Heraeus agreed to the protective orders at issue"); *see Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 501-02 (S.D. Iowa 1992) ("The courts' rationale for this standard is that a party which in good faith negotiates a stipulated protective order and then proceeds to produce documents

pursuant to that protective order is entitled to the benefit of its bargain"). Courts place a higher burden on a movant when that party agreed to the order so as to hold the parties to their bargain, *id.*, but that consideration does not apply to Hercules, who was not a party to the case when the protective order was entered, and could not have objected because the briefing and proceedings concerning the protective order were under seal until years after they concluded.

The district court found that Hercules's status as an intervenor, rather than a party who agreed to the order is "of no moment" because Hercules moved to vacate the protective order to receive the deposition video from Smith's counsel, G. Flint Taylor "who originally consented to the order[.]" A.008. But Hercules should not be penalized simply because the protective order was agreed to when it was entered: he had no ability to contest it, as the relevant briefing was sealed and the proceedings were held in secret. Further, the district court concluded the protective order is "akin to a blanket order," A.009, the same type of order that demands careful examination when a non-party seeks to modify it. *See Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 790 (1st Cir. 1988) (blanket protective orders are "by nature overinclusive and are, therefore, peculiarly subject to later modification"). The protective order here covers everything Daley said during the three-day deposition without regard to its content or relationship to his health. Indeed, it was entered before Daley even said anything at all, and there is no reason to expect that the deposition should have covered sensitive medical information since it was taken primarily to learn about police torture and coerced confessions while Daley served in public office. The breadth of the order and the fact that Hercules did not agree to it and did not have the ability to object support modification.

Finally, the district court's focus on Smith and Daley's agreement overlooks the fact that the protective order affects the public's right to access the deposition video through FOIA. *Pansy*,

23 F.3d at 791; *see Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (observing that blanket sealing orders cause the public interest to "go unprotected unless the media are interested in the case and move to unseal"). Indeed, the City did not agree to the protective order, nor did the Illinois General Assembly, yet the City is prevented from releasing the deposition video under Illinois statute on account of it. Thus, the nature of the protective order in this case supports modification.

**2. Daley failed to show he relied on the protective order when he gave his deposition testimony.**

Reliance goes to what "extent the party resisting modification relied on it in affording access to discovered materials." *Murata*, 234 F.R.D. at 180 (quoting *Bayer AG and Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 467 (S.D.N.Y. 1995)). Under this factor, the relevant inquiry is whether witnesses relying on protective orders will "be inhibited from giving essential testimony in civil litigation" and to facilitate orderly litigation. *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979). Here, there is no indication that the protective order impacted Daley's testimony, since he was ordered to sit for the deposition prior to its entry, and because Daley never indicated that his testimony was affected by the protective order. *See* A.009.

The district court agreed but held the factor nevertheless weighed against modification because it found that Daley relied on Smith's counsel's assurance that videotaping the deposition was only to preserve Daley's testimony for trial. A.009-10. The district court suggests that Daley would not have gone forward with deposition without this specific assurance from Smith's counsel or would have opposed videotaping the deposition. A.010.

But the district court misapprehends the record. Instead, the record shows that Judge St. Eve ordered the deposition to forward, and Daley's counsel did not protest based on Judge St. Eve's attendance and her order that the video would be under seal, which both happened prior to

the comments made by Smith's counsel. A.028-29. Contrary to the district court's finding, Daley did not rely on any assurance from Smith's counsel "in affording access to discovered materials," A.010 (quoting *Murata*, 234 F.R.D. at 180), and to the extent he relied on Judge St. Eve's order, he failed to specify how his testimony would have been different but for the protective order, which is the relevant inquiry. *See Martindell*, 594 F.2d at 295. The district court abused its discretion when it found this factor weighs in favor of Daley.

### 3. There is good cause to vacate the protective order.

Whether there is good cause to modify the protective order is the "most significant[]" factor in the analysis. *Heraeus Kulzer*, 881 F.3d at 565. To assess good cause, courts must "weigh that party's need for modification against the other party's need for protection." *Murata*, 234 F.R.D. at 180; *see Roman Catholic Archbishop*, 661 F.3d at 424. When the moving party bears the burden, the public interest component of good cause also includes the existence of "changed circumstances." *Heraeus Kulzer*, 881 F.3d at 567; *Murata*, 234 F.R.D. at 180.

The district court itself acknowledged the public interest in the deposition video, and that the public interest is "augmented," both because Daley was a public official, and because his testimony on a subject of substantial public concern has remained secret. A.011-12. Despite this, the district court found that Hercules "failed to demonstrate a legally significant change in circumstances that justifies vacating the protective order." A.012. Hercules argued that circumstances have changed in two ways: First, at the time the protective order was entered, the court could reasonably have expected the public to learn about Daley's knowledge of police torture and coerced confessions at the eventual trial in the case, which did not happen due to the settlement. And second, the protective order now affects Hercules's ability to obtain the deposition video through an Illinois FOIA request he submitted after the order was entered.

The district court rejected Hercules's first argument because it saw Hercules as conflating the public's interest in access to live trial testimony with its interest in access to unfiled discovery from parties governed by protective orders. A.011-12. But it was the district court that conflated these two bodies of law.

The public's access to live trial testimony stems from the First Amendment and common-law rights to access court proceedings and records. Those rights attach only when the proceedings and records pertain to the functioning of the courts, such as by shedding light on judicial decision-making, as in *Syngenta*, on which the district court relied. *See id.* (citing *Syngenta*); *see also Syngenta*, 764 F.3d at 697-98 (addressing the unsealing of mistakenly filed exhibits and holding that "we have limited the presumption of public access to materials that affect judicial decisions . . . the presumption of public access turns on what the judge did, not on what the parties filed"). Citing this doctrine, the district court reasoned that because Daley did not testify at trial, the court-access rights do not apply here and do not undergird an interest in the deposition video that arose only after the protective order was entered.

All that is true, but it is also irrelevant. Hercules never invoked the court-access rights when articulating changed circumstances since the entry of the order. Neither did he need to. Changed circumstances since the issuance of a protective order are not limited to factors cognizable under the entirely distinct court-access doctrine. Unsurprisingly, then, courts addressing the modification of a protective order have relied on all sorts of criteria outside whether the documents at issue affected judicial decision-making. *E.g. Jepson*, 30 F.3d at 861 (holding district court erred in denying motion to modify a protective order where the deposition was relevant to a proceeding before the International Trade Commission, and where the proponent of the order failed to demonstrate the deposition was privileged in that proceeding); *Roman Catholic*

*Archbishop*, 661 F.3d at 428 (affirming modification of a protective order where "weighty interest in public safety" outweighed privacy interests for accused priest whose "clerical duties may bring him into contact with children"); *Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) (holding there was no good cause to maintain a protective order over a videotaped deposition where "due to the passage of time, any potential 'embarrassment factor' for the deponents have also diminished"); *Doe v. Lansal, Inc.*, No. 08 C 5983, 2012 WL 707112, at *5 (N.D. Ill. Mar. 5, 2012) (granting modification where "both parties have demonstrated broad abandonment of their protective agreement"); *Crothers*, No. 95-cv-4681, 1997 WL 570583, at *6 (intervenor established good cause to modify a protective order where it raised "serious allegations" that the proponent of the order was attempting to use the protective order to "further a fraud").

Again, the changed circumstance is the simple fact that, when the court entered the order, the public had another way to learn about Daley's knowledge about police torture and coerced confession, but at the time Hercules moved to vacate the order, the public had no other avenues. Nothing about that turns on the public's right to access court records and proceedings.

The district court also misapprehended Hercules's second argument as to the changed circumstances in this case. Below, Hercules argued that the circumstances have changed because the protective order currently prevents him from obtaining the deposition video through Illinois FOIA, as evidenced by the Law Department's denial of his Illinois FOIA request. The district court discounted this argument because it found the video is not a public record and believed there is no evidence that the Law Department has access to it. *See* A.012-13. But as explained above, the video deposition is a public record under FOIA Section 2(c) if it pertains to the transaction of public business and is in the public body's possession or under its control, as the City itself acknowledged in failing to deny the request on the basis that the video is not a public record. V.B.2

*supra*. The protective order clearly prevents the release of the deposition through Illinois FOIA, and that supports modification. *Pansy*, 23 F.3d at 791. This, coupled with the fact that the videotape is the only way for the public to learn what Daley said under oath about police torture allegations since the case settled are legally significant changed circumstances that support modification.

Despite these changed circumstances, and the "augmented" public interest in the deposition video, the district court found that "Daley's continued interest in keeping his sensitive health information private weighs against dissemination of the video." A.013. But as discussed above, neither Daley nor the district court explain how the deposition video implicates Daley's private health information, especially considering that Daley's deposition was not taken to ascertain that information. V.B.1 *supra*. To the extent that the district court has upheld the protective order to prevent embarrassment of Daley based on how he appears in the video, that is undermined by Judge St. Eve's finding that the deposition could go forward based on Daley's public and professional appearances. A.025. And to the extent that portions of the deposition video, which was filmed over three separate dates, does reveal Daley's private health information there has been no showing by Daley or a finding by the district court that the protective order cannot be modified to provide for the redaction of that information. *See Roman Catholic Archbishop*, 661 F.3d at 425.

Because the public interest and changed circumstances outweigh Daley's unarticulated health concerns, or the need to shield Daley from embarrassment, the district court erred when it found there was no good cause to modify the protective order.

## VI. CONCLUSION

The Court should reverse and order the district court to vacate the protective order.

Respectfully submitted,

s/ Matthew Topic
One of Intervenor's Attorneys

Matthew Topic
Stephen Stich Match
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
foia@loevy.com

**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(A)(7)**

The undersigned, counsel of record for Intervenor-Appellant, furnishes the following in compliance with F.R.A.P. Rule 32(a)(7). I hereby certify that this brief conforms to the rules contained in F.R.A.P. 32(a)(7) for a brief produced with a proportionately spaced font. The length of the brief is 8,359 words.

Respectfully submitted,

s/ Matthew Topic
One of Intervenor's Attorneys

Matthew Topic
Stephen Stich Match
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
foia@loevy.com

## CIRCUIT RULE 31(e)(1) CERTIFICATION

The undersigned hereby certifies that I have filed electronically pursuant to Circuit Rule 31(e)(1), versions of the brief and all the appendix items that are available in non-scanned PDF format.

Respectfully submitted,

s/ Matthew Topic
One of Intervenor's Attorneys

Matthew Topic
Stephen Stich Match
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
foia@loevy.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I served the Opening Brief an Short Appendix of Intervenor-Appellant on December 8, 2025, using the CM/ECF system, which effected service on all counsel of record for Appellees.

Respectfully submitted,

s/ Matthew Topic
One of Intervenor's Attorneys

Matthew Topic
Stephen Stich Match
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
foia@loevy.com

**CIRCUIT RULE 30(D) STATEMENT**
**ATTACHED REQUIRED SHORT APPENDIX**

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required by Circuit Rule 30(a) and (b) are included in the Short Appendix.

Respectfully submitted,

s/ Matthew Topic
One of Intervenor's Attorneys

Matthew Topic
Stephen Stich Match
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
foia@loevy.com

## APPENDIX – TABLE OF CONTENTS

**Memorandum Opinion and Order, dated September 24, 2025, ECF No. 320 .................A 001**

**Order, dated May 8, 2023, ECF No. 279 ....................................................................A 015**

**Declaration of Bob Hercules, dated December 23, 2024, ECF No 293-1 ..........................A 017**

**Declaration of G. Flint Taylor, dated December 23, 2024, ECF No. 293-2 .......................A 037**

**Notice of Appeal, dated October 24, 2025, ECF No. 326 .....................................................A 039**

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALONZO SMITH, | ) | |
| *Plaintiff*, | ) | No. 16 C 03404 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| JON BURGE, *et al.*, | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Intervenor Bob Hercules moves to vacate a January 24, 2018 protective order precluding the distribution of Defendant Richard M. Daley's video deposition. (Dkt. 293). For the below reasons, the Court denies Hercules's motion [293].

**BACKGROUND**

Plaintiff Alonzo Smith filed this action on March 17, 2016 against the Jon Burge, former Commander of the Chicago Police Department; Richard M. Daley, former Mayor of the City of Chicago and Cook County State's Attorney; and others alleging the Chicago Police Department had a practice of coercing confessions from criminal defendants. (Dkt. 293 at 1; *see generally* Dkt. 1). Throughout the proceedings, G. Flint Taylor and the People's Law Offices represented Smith. (*See* Taylor Dec., Dkt. 293-2 ¶ 4). Smith noticed his intention to take Daley's deposition, prompting Daley's attorneys to file for a protective order to preclude any deposition because Daley would be "unable to provide accurate or reliable answers in response to questions that might be put to him" due to a stroke he suffered in 2014. (Dkt. 293 at 2; Dkt. 284 ¶¶ 4, 7).

Judge St. Eve, who was then presiding over this case, conducted an *in-camera* hearing on the motion for protective order with Plaintiff's and Daley's counsel along with Daley's treating physician and neurologist. (Dkt. 302 at 4). Judge St. Eve eventually denied Daley's request to preclude his deposition, concluding he failed to demonstrate that accommodations would be insufficient to allow a deposition to proceed. (*See* Dkt. 161; Dkt. 302 at 5). Daley filed a renewed motion for protective order after obtaining additional medical reports. (Dkt. 285). At another hearing, and after considering all the medical evidence, the results of Daley's neuropsychological test scores, and Daley's post-stroke professional and social commitments, Judge St. Eve denied the renewed motion, allowing an oral deposition to proceed with certain guardrails. (*See* Jan. 24, 2018 Hr'g Tr., Dkt. 293-1 at 99:10–100:1). Specifically, Judge St. Eve ordered the deposition to take place in shorter chunks of time rather than one standard session and personally agreed to attend the oral deposition "as an observer." (*Id.* at 100:16–18, 102:1–7).

Although Judge St. Eve denied Daley's motion for protective order to preclude the deposition from going forward, she granted a protective order preventing the disclosure of the videotaped deposition. Daley's attorneys lodged a concern that preserving a videotape of the deposition would "serve[] only to embarrass" Daley. (*Id.* at 102:14–20). Judge St. Eve stated on the record:

> [T]his will be under seal. Nothing can happen with that video deposition without further order of the Court. . . . And somebody will be in lots of trouble if there is a leak of that deposition. I do not think that is anybody's intention, though.

(*Id.* 102:21–103:4). Smith's counsel stipulated to the protective order preventing the disclosure of the video and elaborated that they "considered foregoing the video" altogether and only wished to proceed with a video deposition in the event they would need to preserve the testimony for use at a future trial. (*Id.* at 103:5–14). The deposition eventually took place over three sessions between

April and July of 2018. (Dkt. 293 at 3). After the deposition sessions concluded, and considering the "complicated nature" of discovery into Daley's knowledge of the underlying facts, Judge St. Eve granted Smith's request to issue supplemental requests to admit. (Dkt. 218).

On November 6, 2018, approximately four months after Daley's final deposition session, the parties notified the Court that they had reached a settlement. (Dkt. 235). The case was terminated later that month. (Dkt. 248). Three years later, Hercules moved to intervene and unseal certain docket entries related to Daley's attempt to preclude his deposition. (Dkt. 293 at 4; *see generally* Dkt. 256). The case was reassigned to Judge Dow on August 25, 2021. (Dkt. 257). Over the next two years, Judge Dow devoted considerable time and resources to Hercules's motion. On March 6, 2023, Judge Dow granted the motion in part and, having personally redacted portions of motions, responses, and exhibits, ordered the parties to file updated versions on the docket reflecting his omissions of information that implicated Daley's "legitimate privacy interests in regard to his medical circumstances and associated medical records." (Dkts. 278–279). All redacted versions of the relevant documents were filed on the docket by the end of September 2023. (*See* Dkts. 284–288). Hercules filed the instant motion to vacate the protective order prohibiting the disclosure of Daley's videotaped deposition on December 23, 2024 and the case was promptly reassigned to this Court. (Dkts. 293–294).

## DISCUSSION

### I. Standing

Before he can challenge the protective order, Hercules must demonstrate that he has standing. *In re Helmstetter*, 44 F.4th 676, 679 (7th Cir. 2022) ("The party invoking federal jurisdiction bears the burden of establishing standing."). Hercules must show that he has suffered an "injury-in-fact capable of being redressed by a favorable decision of the court." *Bond v.*

*Ultreras*, 585 F.3d 1061, 1072–73 (7th Cir. 2009). A legally cognizable injury-in-fact involves "an invasion of a legally protected interest" that is concrete and particularized, not speculative or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Daley contends that Hercules cannot satisfy the injury-in-fact prong because he has no legally protected interest or right to the deposition video. (Dkt. 303 at 10). It is true that the public has no general right of access to pretrial discovery materials, including deposition tapes and transcripts. *Bond*, 585 F.3d at 1074–75; *see also Seattle Times v. Rhinehart*, 467 U.S. 20, 33 (1984) ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."). Hercules is thus in a fundamentally different position now that he attempts to access "discovery materials that have never been filed with the court and have never influenced the outcome of a judicial proceeding" compared to his earlier efforts to unseal motions, responses, and exhibits, which were undoubtedly part of the public record, but filed under seal. *Bond*, 585 F.3d at 1073–74; *see Jessup v. Luther*, 227 F.3d 993, 997 (7th Cir. 2000) ("Those who seek access to sealed material have a right to be heard in a manner that gives full protection to the asserted right." (citation modified)). But Hercules does not contend that he has standing based on the public's right of access to court records. (Dkt. 311 at 3). Instead, he argues he has standing to challenge the protective order based on a First Amendment right to receive information.

Stipulated protective orders implicate a narrow First Amendment right. While the public does not have a *right* to unfiled discovery information, "[a]bsent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). So, when a protective order prevents the dissemination of this information, it implicates the "free expression rights" of those who are

bound to it. *Bond*, 585 F.3d at 1077. Further, it is not only the person who wishes to speak whose rights are at issue, but also the intended recipient's right to listen and receive information. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) ("Freedom of speech presupposes a willing speaker. But where a speaker exists . . . the protection afforded is to the communication, to its source and to its recipients both."). It is against this backdrop that Hercules claims to have standing based on his constitutional right to receive information.

In the context of protective orders governing unfiled discovery materials, intervenors must point to a particular willing speaker who, absent the restraint, would provide the intervenor with the information he seeks. For example, the intervenor in *Bond* sought to vacate a stipulated protective order prohibiting the dissemination of unfiled discovery material. *See Bond*, 585 F.3d at 1077. One of the parties in the underlying case "strongly objected to his challenge to the protective order." *Id.* at 1066. The other party did not voice any opposition or support. *Id.* at 1067. Accordingly, the Court found the intervenor lacked standing because he failed to show that there was any party or individual who would be willing to send him the information he sought even if the Court dissolved the protective order. *Id.* at 1078. The result in *Bond* is consistent with decisions of other courts of appeal that have distilled the willing speaker analysis into a simple inquiry: "whether third parties would obtain the information they seek if successful on the merits of their claims." *United States v. Wecht*, 484 F.3d 194, 204 (3d Cir. 2007); *see also Okla. Hosp. Ass'n v. Okla. Publ'g Co.*, 748 F.2d 1421, 1425 (10th Cir. 1984) (denying standing to third party that failed to establish it would "obtain[] the redress it s[ought]—access to the documents—were [the court] to lift the protective orders").

In this case, Hercules has identified a willing speaker, G. Flint Taylor. Taylor, who is subject to the protective order: (1) possesses a copy of Daley's unfiled video deposition; (2) wishes

to distribute a copy of that video to Hercules; (3) supports Hercules's motion to vacate the protective order; and (4) plans to send Hercules a copy of the video if the Court vacates the protective order. (Taylor Dec., Dkt. 293-2 ¶¶ 5–8). Unlike the intervenor in *Bond* or the third-party in *Oklahoma Publishing*, Hercules has met his burden in establishing that but-for the protective order, a willing speaker would exercise his free speech right to disseminate Daley's deposition. With Taylor as his willing speaker, Hercules has identified an injury-in-fact to his constitutional right to receive information that will be redressed if the Court determines it is appropriate to vacate the protective order. Accordingly, Hercules has standing.

## II. Good Cause to Vacate the Protective Order

Next, the Court turns to whether it is appropriate to vacate the protective order preventing the dissemination for Daley's deposition. Traditionally, the party seeking to modify or vacate an existing protective order has the burden of showing good cause. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 566 (7th Cir. 2018); *see also Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006) ("It should be no surprise that, there having been good cause to enter the protective order in the first place, there must be good cause shown before it can be vacated."). The Court considers four factors in determining whether to modify or vacate a protective order: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Heraeus Kulzer*, 881 F.R.D. at 565 (quoting *Chi. Mercantile Exch., Inc. v. Tech. Rsch. Grp., LLC*, 276 F.R.D. 237, 239 (N.D. Ill. 2011)).

Hercules resists the application of the four-factor test altogether and attempts to place the burden on Daley to demonstrate why good cause remains to keep the protective order in place. (Dkt. 293 at 7–8). First, he notes that the court in *Heraeus Kulzer* recognized it is sometimes

appropriate to shift the burden of proving good cause to the party who wishes to keep information under seal. *Id.* at 566. But that discussion was limited to situations where a third party seeks access to court files and other documents that make up the public record. *Id.*; *see also Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002) (noting a "strong presumption of public disclosure applies *only* to the materials that formed the basis of the parties' dispute and the district court's resolution." (emphasis added)). There is no such presumption of public disclosure for unfiled discovery. Indeed, "[t]he public has *no right* to access these documents, which cannot conceivably aid the understanding of judicial decisionmaking." *City of Greenville, Ill. v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 698 (7th Cir. 2014) (emphasis added). Contrary to Hercules's assertion, *Heraeus Kulzer* does not support placing the burden on Daley.

Nor does Daley inherit the burden based on the circumstances under which the protective order was issued. Hercules's attempt to cast Judge St. Eve's initial protective order as unsupported by good cause is misguided. (Dkt. 293 at 9). The record establishes that she undertook a thorough review of the parties briefing, Daley's personal medical information, and the public record in concluding that the deposition videotape would "be under seal." (Jan. 24, 2018 Hr'g Tr., Dkt. 293-1 at 102:21–23). Indeed, she articulated the good cause standard in finding the deposition could proceed, supporting the conclusion that it was with that standard in mind she issued the agreed protective order preventing disclosure of the videotape. (*Id.* at 98:18–100:1); *see Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 178 (N.D. Ill. 2006) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) and recognizing that a court's decision to enter a protective order "presumes that . . . there was good cause"). Finally, Judge Dow's equally thorough review of the record is in accord with Judge St. Eve's good cause finding. (*See* Dkt. 279). Based on the

above, Hercules bears the burden of establishing good cause exists to vacate the protective order. The Court considers each of the four factors relevant to that determination below.

**A. Nature of the Protective Order**

The nature of the protective order concerns the order's "scope and whether it was court imposed or stipulated to by the parties." *Murata*, 234 F.R.D. at 179 (quoting *Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995)). Smith's attorneys stipulated to entry of the protective order. Thus, this case does not present a unilateral government restraint but instead involves "self-imposed secrecy," which weighs against vacating the order. *Bond*, 585 F.3d at 1077. It is of no moment that Hercules is the person seeking to vacate the protective order, not one of the parties, because his entire argument depends on G. Flint Taylor, who originally consented to the order, wishing to disseminate the videotape. *Cf. Bayer AG*, 162 F.R.D. at 465 ("Where . . . the modification motion is brought by a party who stipulated to a blanket protective order, the party should be held to its agreement[.]").

In terms of scope, protective orders can ordinarily be broken into three categories: umbrella orders, blanket orders, and specific orders. An umbrella order "generally designates that all discovery is protected, without any review or determination of good cause." *Murata*, 234 F.R.D. at 179. It is also the easiest to modify. *Id.* Next, are blanket orders, which allow parties to protect "selected documents that they believe in good faith contain . . . confidential information." *Id.* Blanket orders to which the parties have stipulated are "more difficult to modify or vacate." *Id.* Finally, and most difficult to modify, are protective orders that are narrowly tailored to protect only a "specific kind of identified information." *Id.*

Despite Hercules's attempt to cast the instant protective order as a "partial umbrella order," it more neatly falls in one of the last two categories. (Dkt. 293 at 12). While the Court agrees that

it is hard to classify the order as specific because it does not target a class of information, it is also certainly not an umbrella order because the singular thing the protective order covers is a videotape. *See Bayer*, 162 F.R.D. at 465 (classifying protective order covering only one audiotape as specific); (Dkt. 293 at 12). Accordingly, the scope of this order falls somewhere in the middle, akin to a blanket order. And because the parties stipulated to entry of the order, this factor weighs against Hercules's requested modification. *See Bayer*, 162 F.R.D. 466.

### B. Foreseeability of Requested Modification

The foreseeability factor is not relevant here. It is often defined as questioning whether the parties who negotiated the original stipulated order could have foreseen the requested modification. *Murata*, 234 F.R.D. at 180. But the parties did not negotiate the terms of this protective order. Nor is it a party seeking to modify the protective order but an intervenor who was not involved in this case at the time Judge St. Eve entered the order.

### C. Parties' Reliance on the Order

Next, the Court looks to whether the party resisting modification of the protective order "relied on the protective order in affording access to discovered materials." *Id.* (quoting *Bayer*, 162 F.R.D. at 467). Hercules is technically correct that Daley "was ordered to sit for the deposition and had no choice in the matter" of whether to afford access to the discovered materials, i.e., his testimony. (Dkt. 293 at 13). In this way, Daley's reliance interest, like foreseeability, appears to be a wash because he cannot be said to have banked on the order in agreeing to sit for the deposition.

Daley's reliance interests deserve a closer examination, however, especially considering the specific information Hercules seeks. Hercules's motion concerns only the dissemination of Daley's videotaped deposition. At the hearing when the protective order was entered, Daley's

counsel perhaps anticipated the video's public release and voiced concern about videotaping in the first place because "preserving that [video] serves only really to embarrass [Daley]." (Jan. 24, 2018 Hr'g Tr., Dkt. 293-1 at 102:14–18). Smith's counsel responded that the "only reason why" they decided not to "forego[] the video" altogether was to preserve Daley's testimony for a potential trial. (*Id.* at 103:5–14). Without this assurance from Smith's counsel (on which it now backtracks, (Taylor Dec., Dkt. 293-2 ¶¶ 6–8)), it is certainly possible that Daley would have more forcefully resisted the deposition being videotaped. In that way, he did rely on the protective order, and Smith's counsel's representations, in "affording access to discovered materials," specifically, the videotape—irrespective of its contents. *Murata*, 234 F.R.D. at 180. Obviously, no trial came to pass, and Daley has continued to rely on the protective order to prevent the public disclosure of his video deposition for more than seven years. As a general matter, the parties' "longstanding reliance" on a protective order still weighs against modification as a matter of fairness and finality. *Heraeus Kulzer*, 881 F.3d at 568. Here, that is undoubtedly the case. In sum, this factor weighs against Hercules's request to vacate the protective order.

**D. Good Cause**

Finally, and most importantly, whether Hercules has met his burden in establishing good cause to vacate the protective order depends on three things: 1) whether circumstances have fundamentally changed since Judge St. Eve entered the protective order in the first place; 2) the public's interest in seeing Daley's deposition; and 3) Daley's interest in keeping the information private. Where, as here, the moving party seeking to modify or vacate a protective order bears the burden of establishing good cause, the court looks for "changed circumstances or new situations; a continuing objection to the terms of a protective order does not constitute good cause to modify or withdraw it." *Kyles v. J.K. Guardian Sec. Servs.*, 2006 WL 2349238, at *4 (N.D. Ill. Aug. 15,

2006); *Heffernan v. City of Chicago*, 286 F.R.D. 332, 335 (N.D. Ill. 2012); *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, 2011 WL 148252, at *2 (N.D. Ill. Jan. 18, 2011). Further, in considering good cause, "the court must weigh [the moving] party's need for modification against the other party's need for protection." *Murata*, 234 F.R.D. at 180.

Hercules's arguments on changed circumstances and public interest are intertwined. In summary, he asserts the public has a "massive interest in seeing the video deposition" because it may shed light on what the Cook County State's Attorney's Office and City of Chicago knew about "police torture and false confessions" within the Chicago Police Department. (Dkt. 293 at 10, 14). And he further contends that circumstances have changed since the order was entered in that the case ended without a trial. (Dkt. 293 at 14) As Hercules sees it, this has resulted in the public being deprived of an opportunity to hear Daley's live testimony, rendering the video deposition the "only vehicle to inform the public" about the underlying issues. (*Id.*)

The public of course has an interest in hearing what Daley might have to say about allegations of police torture and forced confessions. *See Wiggins v. Burge*, 173 F.R.D. 226, 230 (N.D. Ill. 1997) (recognizing the public's interest in knowing how allegations of police torture are investigated and resolved). And that interest is slightly elevated considering Daley, "the party benefitting from the confidentiality order[, was] a public official." *Sokol v. City of Chicago*, 2014 WL 5473050, at *1 (N.D. Ill. Oct. 29, 2014) (St. Eve, J.). But these considerations were as true on the day the protective order was entered as they are today. Hercules's argument that circumstances have changed because this case did not go to trial misses the mark because it conflates the public's interest in accessing live trial testimony and the public's interest in accessing unfiled discovery materials. Hercules's move here is not new. Indeed, the Seventh Circuit has recognized the "[t]ension between secrecy of discovery and disclosure of the record is inevitable; parties are

tempted to use the latter to undermine the former." *Syngenta*, 764 F.3d at 697. "To resolve this tension," the court has "limited the presumption of public access to materials that affect judicial decisions." *Id.* Thus, while the Court recognizes the public interest in seeing the Daley's deposition testimony, Hercules has failed to demonstrate a legally significant change in circumstances that justifies vacating the protective order. Moreover, the public's interest remains significantly augmented by the fact that Daley's deposition is not public material. The Court's "continued control" over it "does not raise the same specter of government censorship that such control might suggest in other situations." *Seattle Times*, 467 U.S. at 32; *see also Wrice v. Burge*, 2016 WL 6962838, at *9 (N.D. Ill. Nov. 29, 2016) (discussing the non-public nature of discovery materials in the context of a good cause analysis).

Hercules also suggests good cause exists to vacate the protective order because the order "interfere[s] with disclosure under state freedom of information laws." (Dkt. 293 at 10). Hercules attempted to obtain the video deposition from the City of Chicago Law Department under the Illinois Freedom of Information Act (FOIA), 5 Ill. Comp. Stat. Ann. 140. The Law Department denied Hercules's request based on the protective order. (*See* Ex. 3, Dkt. 293-1 at 20). But the Illinois FOIA does not apply for at least two reasons. First, the statute only applies to materials that have been "prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 Ill. Comp. Stat. Ann. 140/2(c). "[P]ublic body" meaning only "bodies of the state." *Id.* § 2(a). Here, the protective order limited access to the videotape to Daley, Daley's counsel, Smith, and Smith's counsel. There is no reason to believe the video is in the possession or control of any state body. Hercules's Illinois FOIA denial letter does not establish anything to the contrary. Second, as discussed at length in this Memorandum Opinion, the video deposition is decidedly not a matter of public record under controlling Supreme Court

precedent. *Seattle Times*, 467 U.S. at 33 (recognizing "discovered, but not yet admitted, information" is not "a traditionally public source of information"). Accordingly, Hercules's attempts to access Daley's videotaped deposition under the Illinois FOIA do not increase the public's right to access the underlying information, which remains unfiled discovery material.

The above considerations are alone sufficient to deny Hercules's motion. Still, without delving into the contents of Daley's testimony, the Court also notes that, on the other side of the ledger, Daley's continued interest in keeping his sensitive health information private weighs against public dissemination of the video. The Court ordered Taylor to produce a copy of the video for the Court's *in camera* review in connection with this motion. (Dkt. 319). The Court has reviewed certain portions of the deposition video and concludes that, irrespective of Daley's substantive answers, the recording could have the tendency to reveal sensitive aspects of his medical condition and symptoms following his 2014 stroke.[1] Moreover, Judge St. Eve's and Judge Dow's careful rulings in this case demonstrate that Daley's health conditions have remained the "driving force" behind the protective orders and determinations as to Daley's testimony. (Dkt. 279). Accordingly, Daley's continued "need for protection" still weighs heavily on the side of keeping the protective order in place.

In sum, Hercules has failed to demonstrate good cause exists to vacate the protective order and both the nature of the order and Daley's reliance on it support keeping the order in place. The Court denies Hercules's motion. (Dkt. 293).

## III. Sealing and Redactions

Finally, the Court briefly considers the parties positions on the extent to which their briefing on this motion should remain sealed or redacted. Unlike Daley's deposition, these briefs

[1] The public does not acquire a right of access to the otherwise unfiled deposition video based on the Court's limited *in camera* review. *Bond*, 585 F.3d at 1075 n.8 (collecting cases).

are without question part of the public record. *See In re Krynicki*, 983 F.2d 74, 75–76 (7th Cir. 1992). The Court agrees that only the portions of the briefs that implicate Daley's sensitive health information and other factual material that Judge Dow determined will remain under seal may be redacted from the publicly accessible versions of the briefs. (*See* Dkt. 279; Dkt. 311 at 13). Hercules's first sealed reply [311] may be refiled on the public docket without any redactions. The Court has made what it deems appropriate redactions to Daley's sealed response brief in opposition to Hercules's Motion to Vacate [303] and Hercules's second sealed reply [315]. These redactions are consistent with Judge Dow's prior orders, corresponding redactions, and decisions to keep some documents and exhibits under seal. (*See* Dkts. 279, 284–286, 289). They further account for this Memorandum Opinion and the decision to keep the protective order in place. The Court's redactions are indicated directly on the documents in red pen and will be transmitted to the Courtroom Deputy. The Courtroom Deputy will send the redacted documents to the parties and the parties shall resubmit them with the redactions professionally made within 7 days.

## CONCLUSION

For the above reasons, the Court denies Intervenor Bob Hercules's Motion to Vacate Protective Order [293]. Hercules is directed to refile his second sealed reply [315] and Daley is directed to refile his response [303] with the Court-ordered redactions within seven days of this Order.

Virginia M. Kendall
United States District Judge

Date: September 24, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALONZO SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-cv-3404 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| JON BURGE, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The parties are directed to review the order below and to refile the pleadings and transcripts discussed below, incorporating the Court's rulings on which portions of those documents should be redacted. Those redactions have been transmitted to the Courtroom Deputy and are shown, either directly on the documents with black marker or by listing the pages and lines to be redacted. Each party is directed to retrieve from the Courtroom Deputy as soon as possible, and no later than May 16, the documents that they provided in early March and to resubmit them with the redactions professionally no later than May 23. The Clerk will then file the resubmitted documents on the public docket.

**DISCUSSION**

The matter before the Court concerns the effort of Intervenor Bob Hercules, a documentary filmmaker, to obtain access to certain sealed pleadings and transcripts in this case, which settled more than four years ago.

Since the issuance of the Court's March 6, 2023, order [278], the parties have submitted and the Court has carefully reviewed the pleadings and transcripts concerning two motions for a protective order filed on behalf of former Chicago Mayor Richard M. Daley [111, 162, 167]. As previously noted, Intervenor has disavowed any interest in "any specific health information protected by HIPAA or the MHDDCA." [277, at 6.] Nevertheless, the public does have a right to know that concerns about Mayor Daley's health conditions were the driving force behind (a) Judge St. Eve's rulings on the motions for protective order, (b) her careful guidance to the parties on the ground rules for the deposition that took place in three sessions, and (c) her decision to allow Plaintiff to serve further written discovery requests after the deposition concluded. This requires the unsealing of certain documents that previously have been sealed in their entirety, followed by the refiling of those documents with appropriate redactions. In making the redactions, the Court has endeavored to balance the public's interest in access to court proceedings, including the basis for the Court's ruling on the motion for protective order on the one hand (see, *e.g.*, *Jessup v. Luther*, 277 F.3d 926, 927-28 (7th Cir. 2002); *Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000), with the Mayor's legitimate privacy interests in regard to his medical circumstances and associated

medical records (see, *e.g.*, *Gibson v. Milwaukee County*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015).

Consistent with the foregoing discussion and the Court's prior orders in this matter, the Court has determined appropriate redactions. Those redactions will be transmitted to the Courtroom Deputy either directly on the documents with black marker or by listing the pages and lines to be redacted. Each party is directed to retrieve from the Courtroom Deputy within 7 days the documents that they provided in early March and to resubmit them with the redactions professionally made within 7 additional days.

With respect to Defendant Daley's motion for protective order [111], the document is to be filed with redactions as well as unsealed versions of Exhibits A and B to that motion. Exhibits C and D, which are affidavits of medical providers, will remain sealed.

With respect to Defendant Daley's renewed motion for protective order [162], the document is to be filed with redactions.

With respect to Plaintiff's response to Defendant Daley's renewed motion for protective order [167], the document is to be filed with redactions as well as unsealed versions of Exhibits A, C, D, I, J, K, L, M, and N to that motion. Exhibits B, E, F, G, and H, which relate to Defendant Daley's medical conditions, will remain sealed.

The transcript of proceedings before Judge St. Eve on February 15, 2017, is already on the docket [105] and never was sealed.

The transcript of proceedings before Judge St. Eve on September 19, 2017, will remain under seal, as it is almost entirely medical testimony and any other matters discussed are adequately referenced in the unredacted portions of the briefs on the motions referenced above.

The transcript of proceedings before Judge St. Eve on December 7, 2017, is to be filed without any redactions.

The transcript of proceedings before Judge St. Eve on January 24, 2018 [271], will remain under seal except for pages 98 to 109. The portions of the transcript prior to page 98 consist almost entirely of additional medical testimony picking up from the September 19, 2017, hearing. However, the final 12 pages contain Judge St. Eve's guidance to the parties—essentially an oral ruling on the motion for protective order—and thus are to be unsealed and publicly available.

Dated: May 9, 2023

Robert M. Dow, Jr.
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALONZO SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:16-cv-03404 |
| | ) | |
| v. | ) | |
| | ) | |
| JON BURGE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF BOB HERCULES**

1. My name is Bob Hercules.

2. I am over the age of 18 and competent to provide this declaration.

3. The following statements are made on my personal and professional knowledge and, if sworn as a witness, I can testify competently thereto.

4. I have been a Chicago-based documentary director and producer for over 40 years. My films have won numerous awards. For example, I co-directed "Maya Angelou: And Still I Rise," which premiered at the 2016 Sundance Film Festival and went on to win 19 awards on three continents and a Peabody Award in 2018. The film was also nominated for an NAACP Image Award and aired on PBS' American Masters and on the BBC's Storyville series in 2017. My films have been seen widely on PBS, BBC, Netflix, Amazon, IFC, and in film festivals around the world.

5. I am currently making a documentary film that investigates the Chicago police torture scandal that involves the late Commander Jon Burge and detectives under his command, who tortured dozens of Black detainees in the 1970s through early 1990s.

6. I am currently working on a documentary film project about torture committed and false confessions exacted by members of the Chicago Police Department in the 1980s. I intervened

in this case to access court documents, including the video deposition of Richard Daley, that would provide the public with additional information about these issues, which I intend to include in my upcoming film.

7. The video deposition of Mr. Daley will be an integral part of the film, since it would likely illuminate whether the Cook County State's Attorney's Office, and the City of Chicago, knew about allegations of police torture and coerced confessions, and what (if anything) they did to remedy the issue.

8. The Court has already granted me leave to intervene, and granted in part my motion to unseal certain docket entries.

9. A true and correct copy of parts of a December 7, 2017 hearing transcript is attached as Exhibit 1.

10. A true and correct copy of parts of a January 24, 2018 hearing transcript is attached as Exhibit 2.

11. On September 5, 2024, I requested a copy of the video deposition of Richard M. Daley taken in this case from the City of Chicago Law Department under the Illinois Freedom of Information Act. The Law Department denied the request based on the protective order entered in this case and for no other reason. A true and correct copy of its denial letter is attached as Exhibit 3.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 19, 2024.

Bob Hercules

**Exhibit 1**



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALONZO SMITH, Plaintiff, vs. JON BURGE, et al., Defendants. | Docket No. 16 C 3404<br>Chicago, Illinois<br>December 7, 2017<br>8:53 o'clock a.m. |

TRANSCRIPT OF PROCEEDINGS - STATUS
BEFORE THE HONORABLE AMY J. ST. EVE

APPEARANCES (For Excerpt):

| | |
|---|---|
| For the Plaintiff: | PEOPLE'S LAW OFFICES<br>BY: MR. G. FLINT TAYLOR, JR.<br>MS. JOEY L. MOGUL<br>1180 North Milwaukee Avenue<br>Chicago, Illinois 60622 |
| For Defts. Shines, Needham, Hillard, Daley & Estate of Leroy Martin: | DYKEMA GOSSETT, PLLC<br>BY: MR. PAUL A. MICHALIK<br>10 South Wacker Drive, Suite 2300<br>Chicago, Illinois 60606 |
| Court Reporter: | MR. JOSEPH RICKHOFF<br>Official Court Reporter<br>219 S. Dearborn St., Suite 1232<br>Chicago, Illinois 60604<br>(312) 435-5562 |

* * * * * * * * * * * * * * * * * *

PROCEEDINGS RECORDED BY
MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

THE CLERK: 16 C 3404, Smith vs. Burge.

* * * * *

(Proceedings had at sidebar, under seal:)

THE COURT: What is the status of the additional testing as to Mr. Daley?

MR. MICHALIK: The testing was completed on, I think it was, November -- it was the Monday before Thanksgiving -- or the Monday after Thanksgiving rather. The testing was completed. It's my understanding it was all-day testing. And Mr. Burns was able to talk to a family member who indicated that they are hopeful to receive a report within a week.

THE COURT: Of today?

MR. MICHALIK: Yes.

THE COURT: Okay.

Do you have any preliminary results from the testing?

MR. MICHALIK: I do not.

THE COURT: Okay. So, we will see where that is.

There has been a motion pending since March, that I am going to deny without prejudice because the affidavits that you submitted in support of that motion, along with the other evidence that the Court has obtained -- namely, what the doctor said: That they could not conclusively say that there were not conditions that could be imposed that would enable him to sit for a deposition. They could not say that without this testing.

I am denying that motion without prejudice to refile.

And if you want to refile, you should refile any motion by -- do you think you can do it before the end of the year.

MR. MICHALIK: We will.

(Brief pause.)

THE COURT: So, let's do it by December 18th then.

If you want to go ahead and come back here -- I will assume you are going to file a motion. If you do not, we can cancel it. But if you want to come back here, take your pick, the 20th or the 21st, and we can talk about the motion.

MS. MOGUL: The 21st, your Honor.

MR. TAYLOR: I'm sorry, what time?

THE COURT: Katie is going to tell us.

(Brief pause.)

THE COURT: 9:00 a.m.

MS. MOGUL: Okay.

THE COURT: So, you can refile any motion by December 18th, and then 9:00 a.m. on December 21st for a status as to Mr. Daley only.

MR. TAYLOR: There's one other issue related, Judge, that --

MS. MOGUL: Can I raise it?

The issue with respect to the affidavit, your Honor. You asked that they provide any billing records or affidavit

related to billing records. We don't believe that this affidavit sufficiently answers your question.

THE COURT: That is one of the pieces of evidence that I am considering in denying the motion, because the burden has not been met on the motion. And if he is getting paid, I have questions about what he is getting paid for and what -- if it is just a contractual obligation or if he is getting paid for meeting with clients, even if he is not billing, or otherwise.

But the burden is not on you.

MS. MOGUL: I understand.

THE COURT: The burden is on them. So, I have considered that affidavit in denying the motion.

MS. MOGUL: Thank you.

MR. TAYLOR: Thank you, Judge.

THE COURT: Is there anything else?

MR. MICHALIK: That's it.

THE COURT: Thank you.

MS. MOGUL: Thank you.

(End of excerpt.)

* * * * *

I certify that the foregoing is a correct excerpt from the record of proceedings in the above-entitled matter.

/s/ Joseph Rickhoff January 8, 2018
Official Court Reporter

**Exhibit 2**



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALONZO SMITH, Plaintiff, vs. JON BURGE, et al., Defendants. | Docket No. 16 C 3404<br>Chicago, Illinois<br>January 24, 2018<br>3:00 o'clock p.m. |

EXCERPT OF PROCEEDINGS - EVIDENTIARY HEARING
BEFORE THE HONORABLE AMY J. ST. EVE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | PEOPLE'S LAW OFFICES<br>BY: MR. G. FLINT TAYLOR, JR.<br>MS. JOEY L. MOGUL<br>1180 North Milwaukee Avenue<br>Chicago, Illinois 60622 |
| For Defts. Shines, Needham, Hillard, Daley & Estate of Leroy Martin: | REITER BURNS, LLP<br>BY: MR. TERRENCE M. BURNS<br>MR. PAUL A. MICHALIK<br>311 South Wacker Drive, Suite 5200<br>Chicago, Illinois 60606 |
| Also Present: | MS. SUZANNE STRATER, Law Clerk<br>DR. ERIC TERMAN |
| Court Reporter: | MR. JOSEPH RICKHOFF<br>Official Court Reporter<br>219 S. Dearborn St., Suite 1232<br>Chicago, Illinois 60604<br>(312) 435-5562 |

* * * * * * * * * * * * * * * * * *

PROCEEDINGS RECORDED BY
MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

THE WITNESS: Certainly. Thank you.

(Brief recess.)

THE COURT: So, I have thoughts on this and can preview where I am going. I have read everything. We have been living with this for a while. It is time to move on. If you want to make any arguments or make any comments to me, first, you can. I am inclined to tell you what I am thinking and, then, work together toward where we are going.

I am not hearing any --

MR. BURNS: I'm amenable to that.

THE COURT: -- strong opposition to that.

Ms. Mogul, is that an opposition? Is the look to Mr. Taylor an opposition?

MS. MOGUL: No, your Honor. I mean, I understand. I know you've read everything. And, so, I don't want to repeat it. I think we would like to hear your thoughts.

THE COURT: Okay.

So, here is where I am going, based on my review of everything. The standard is good cause, and you have moved to not have a deposition go forward for good cause. You do not meet that standard, in my view. However, you also do not meet what plaintiffs have been advocating -- to sit for a traditional seven-hour deposition, or however many hours.

This is where I am going -- and I want your input, and I am hoping that we can work together towards something.

I found Dr. Hanlon incredibly experienced, credible, competent. There were no biases there. I did not get the sense he was trying to come out one way or the other. He gave, in my view, reliable opinions and with no bias. I have so many witnesses, experts come in with a bias leaning. I did not get that sense at all, including because he did not opine on exactly what you wanted him to opine on, Mr. Burns. He did not say he was not able to give oral statements. He said he cannot do it in the traditional manner.

In light of everything -- the medical evidence I reviewed, Dr. Hanlon's testimony, the results of the neuropsychological test scores, the fact that Mr. Daley still sits on the Board of Directors of Coca-Cola, he is listed as Executive Chairman for Tur Partners, he is Of Counsel at Katten -- I have your latest affidavit. Whether this other partner accompanies him wherever he goes or not, the fact is he is out meeting with clients or doing other events for Katten where I am sure he is speaking to people and not just silently coming along and letting the other partner talk for him.

But in light of the testimony of Dr. Hanlon and the restrictions, this is where my thinking is and this is where I am hoping that you can reach agreement: That Mr. Daley should be questioned in a deposition setting. Where that takes place, who else is present besides the lawyers and for how

long of periods we go are all open questions.

Some type of written questions or at least topic areas should be provided in advance, but the plaintiffs have the opportunity and the right to be able to ask spontaneous follow-up and not to have to give all questions in advance.

I think it is fair to require you to turn over some form of written questions/information/topics in some level of detail -- not just "Jon Burge"; with some level of detail -- for Mr. Daley, to assist in getting reliable answers from him, for the reasons Dr. Hanlon explained, in advance of his testimony.

I am only giving these guidelines or outline at the moment for deposition testimony. Whether this is admissible at trial is a whole separate question that we will get to at the appropriate point.

And here is something else I want to throw out for your consideration. This will not all take place in one event. How long the first session should be, I want to talk to you about and get your input. And I am hoping with this guidance you can actually reach agreement; and, if not, I will tell you.

But I am hoping that you can consult with the doctors, whoever you need to consult with, and reach agreement on what the guidelines should be with what I have just given you.

But in light of what I have heard, I am going to want, after that first day, before there is a second day --

MS. MOGUL: Right.

THE COURT: -- to view -- at a minimum, view -- the video.

MS. MOGUL: Right.

THE COURT: The other option is for me to attend the deposition, so that I can make an assessment about reliability. I am not a physician, but I have seen --

MR. TAYLOR: You played one --

(Laughter.)

MS. MOGUL: Well, you've watched more testimony than most.

THE COURT: I have, yes, presided over, I think, 130 trials, and God only knows how many thousands of witnesses have testified.

So, I will want to see his testimony, either live or via video, after that first day to make a further assessment -- if I think he is giving reliable answers or if they are reliable enough to go to a second day or if maybe we change the parameters after that first day.

MR. BURNS: Are you willing to attend?

THE COURT: I am --

MR. BURNS: Not a seven-hour deposition, of course. That, I assure you.

THE COURT: Well, I do not think he is capable of a seven-hour.

MS. MOGUL: And we proposed doing it at one- or two-hour increments. We don't have an issue with that at all.

THE COURT: I know it is highly unusual and I do not know that it has ever happened before, but for -- I am willing to attend if there is no objection to my attending. That would certainly be one factor. And I am willing to attend as an observer --

MR. BURNS: No, I understand.

THE COURT: -- not as a --

MR. BURNS: Sure, the referee of question and answer.

THE COURT: Right.

MR. BURNS: I'm concerned -- we expressed in our motion to begin with that, I mean, deposition -- if we are to accept what we've learned through the medical, as well as what we've learned through him, videotaping it, preserving that serves only really to embarrass him. I mean -- and that's why I think if you're willing to do it, I would prefer we do it in that manner.

THE COURT: And this will be under seal. Nothing can happen with that video deposition without further order of the Court.

And I do not think you are here to embarrass --

MS. MOGUL: No, and --

THE COURT: -- him.

And somebody will be in lots of trouble if there is a leak of that deposition. I do not think that is anybody's intention, though.

MS. MOGUL: As we put in our motion -- our response -- we're willing to put it under seal. Our only -- and to be honest, have considered foregoing the video. We're just concerned, though, that depending on when this goes to trial, if we need that testimony, we want to preserve it via video. That's the only reason why. And, as we noted, potentially to give to you, your Honor, in case there's issues between the deps.

So, at this point, we're happy -- we're fine and we're willing to proceed under seal for sure.

THE COURT: Okay.

So, that is my guidance to you. What I would like you to do is see if you can work out the details with the guidance I have given you, including whether there is an objection to my attending.

I think it would be helpful for me to attend to observe him.

MR. BURNS: I don't have an objection to that.

MS. MOGUL: We don't either. I guess -- well, I don't think we do.

MR. TAYLOR: Well, no, we don't.

MS. MOGUL: We would actually think about doing it here, if that would be convenient for you. The only issue is could we videotape it if it was here.

THE COURT: I do not know if we can videotape it.

Location, I want you to talk about that to see if there is a better setting that might be --

MS. MOGUL: Okay.

THE COURT: -- where you might get -- where you think you might get -- more reliable answers.

MS. MOGUL: Okay.

THE COURT: I do not know if you can do videotaping. If it is here, I worry a little bit more about the public aspect of it, if he is coming into the courthouse, that --

MR. BURNS: Appreciate that concern.

THE COURT: I know we want to keep this under seal, but I am sensitive to that.

I know I have video capabilities. I do not know about taping in the courtroom. We would have to -- Joe can look into that.

MR. TAYLOR: Well, we can find a neutral site.

THE COURT: Yes, a neutral site. I do not know if it is better if he is in a more comfortable setting. So, I am willing to work with you on that.

But that is my proposal.

MR. BURNS: What do you suggest, then, as far as

coming back to you?

THE COURT: I would like you to talk about this and come back in a week --

MR. BURNS: Okay.

THE COURT: -- with your, hopefully, agreed proposal. If you cannot agree, then I will tell you. But I am hoping I have given you enough guidance that you can agree on where.

MS. MOGUL: Okay.

MR. TAYLOR: Okay.

MS. MOGUL: Well, we are back here on Monday. Is it possible that we could try to get this done by Monday?

THE COURT: That would be ideal if you can do it by Monday.

MR. BURNS: Tomorrow, after a hearing, I'm flying to Dallas and not coming back until Sunday night. If we could extend a couple more days beyond that --

MS. MOGUL: That's fine. Okay.

MR. BURNS: -- at least at a minimum.

MS. MOGUL: That's fine.

THE COURT: Why don't you tell me where you are on Monday. At the latest, I would like to have it by next Thursday. I mean, you can come back if you are not ready on Monday, just the --

MR. BURNS: Sure. I mean, we'll get something preliminary to you, Judge.

THE COURT: We will have a sidebar on Monday on our regular status and you can tell me where you are. There are not a lot of details to fill in, because I think I have given you enough guidance; but, I am hoping that you can work out some of these -- the specifics -- about how long each session should be, format of written-type questions in advance.

I am not going to require you to submit every written question you are going to ask. But I do think, from what Dr. Hanlon said, it would be helpful to have some meat on the bones given to Mr. Daley in advance, in hopes of getting more reliable information.

And we may have the first day of deposition and say scrap it. You may all agree to. We may have the first day of deposition and say, we got a lot more than we thought; we can proceed sooner than we thought or go longer next time. This will be a little bit fluid.

MR. BURNS: That's fair.

Judge, I know currently there was -- what? -- requests to admit that were sent out to all defendants. That would include him. Can we defer those until we get this resolved?

THE COURT: Let's defer those until we get this resolved.

MR. BURNS: Okay.

THE COURT: I do not see --

MS. MOGUL: Okay, let me say this. Those are the kind of requests to admit that are really more directed to counsel than they are to Mr. Daley. It's about medical records and foundational requirements and the details --

THE COURT: We are only deferring them until next week.

MS. MOGUL: Okay. That's fine.

THE COURT: So, you can defer that --

MR. BURNS: Thank you.

THE COURT: -- until we meet next week.

So, we will have our regular status on Monday --

MS. MOGUL: Yes.

THE COURT: -- if that is the day you tell me it is.

I am granting the motion, in part, and denying it, in part, along the lines that I have just told you, with the details to be filled in, hopefully, by agreement; and, if not, I will fill them in. But lawyers are always happier when it is by agreement than when you are told.

MR. TAYLOR: And so are Judges, right?

THE COURT: I do not mind. I will tell you. But I am trying to do what is best for the case. You know more of some of these intricacies than I do.

MR. BURNS: All right. Then we will have a preliminary report by Monday, and then certainly, I think you said, by Thursday we will have something fine line.

THE COURT: Yes. I will have you come back on -- we will talk about it on Monday, but I will have you come back if Thursday works for everybody.

MS. MOGUL: Okay.

Can you just give me -- right now we do have a deposition that may be proceeding in this case on Monday -- Thursday. Can you just give me a time when you would like us back and I'll rearrange the dep around that.

THE COURT: It can be Wednesday, if that is better for you.

MS. MOGUL: Wednesday is wide open.

THE COURT: January 31st.

MR. BURNS: I'll do whatever, Judge.

THE COURT: We will do 8:45 --

MR. BURNS: I have no excuse. I'm in town.

MS. MOGUL: Okay.

THE COURT: -- on January 31st.

MS. MOGUL: Thank you.

THE COURT: Did you file this latest affidavit?

MR. MICHALIK: No.

MR. BURNS: No.

THE COURT: I want to make sure you are not giving me the only --

MR. BURNS: No.

MR. MICHALIK: No.

THE COURT: Okay. That is not the original.

MR. BURNS: No.

THE COURT: So, you should file that under seal so we have it in the record.

MR. BURNS: All right, Judge.

THE COURT: You got a copy?

MS. MOGUL: We did.

MR. TAYLOR: Yes, we did.

THE COURT: All right.

So, I will see you on Monday. We will touch base, see where you are. Then I will have you come back on January 31st at 8:45 and --

MR. BURNS: Go from there.

THE COURT: -- to the extent you have not finalized the details, we will finalize them.

MS. MOGUL: Okay. Great.

Thank you.

MR. BURNS: Thank you, your Honor. Appreciate all the time.

THE COURT: Thank you.

MR. MICHALIK: Thank you.

* * * * *

I certify that the foregoing is a correct excerpt from the record of proceedings in the above-entitled matter.

/s/ Joseph Rickhoff March 28, 2018
Official Court Reporter

**Exhibit 3**

**From:** FOIA - City of Chicago <chicagoil@govqa.us>
**Subject:** **[Records Center] Department of Law :: F083718-090924**
**Date:** September 19, 2024 at 3:16:10 PM CDT
**To:** "bob@mediaprocess.com" <bob@mediaprocess.com>
**Cc:** "lawfoia@cityofchicago.org" <lawfoia@cityofchicago.org>

--- Please respond above this line ---

CITY OF CHICAGO

September 19, 2024

RE: PUBLIC RECORDS REQUEST of September 05, 2024, Reference # F083718-090924.

Dear Bob Hercules,

This correspondence is in response to the Freedom of Information Act ("FOIA") request received by the City of Chicago Department of Law on September 05, 2024. You requested:

**"Pursuant to FOIA please produce any and all video of the deposition of Richard M. Daley taken in NDIL Case No. 16 C 3404, Alonzo Smith vs. Jon Burge et al. To the extent you do not have physical possession of it, please obtain a copy from your attorneys or, if necessary, order a copy from the court reporter. See 5 ILCS 140/2(c) (defining "public records" to include records "under the control of any public body")."**

The Department of Law cannot produce records in response to your request.

The document you requested is under seal by order of court and the City of Chicago cannot produce it in response to a FOIA request. See In re Appointment of Special Prosecutor, 2019 IL 122949, ¶ 68 (holding "protective orders took precedence over the disclosure requirements of FOIA"). Accordingly, your request is denied.

You have the right to have a denial reviewed by the Public Access Counselor (PAC) at the Office of the Illinois Attorney General, 500 S. 2nd Street, Springfield, Illinois 62701, (877) 299-3642. You may also seek judicial review of a denial under 5 ILCS 140/11 of FOIA.

If you have any questions or need additional information, please feel free to contact my office at 312-744-6976.

Sincerely,

Lexie Heinemann
Public Relations Representative
Department of Law

Powered by GovQA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALONZO SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:16-cv-03404 |
| | ) | |
| v. | ) | |
| | ) | |
| JON BURGE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF G. FLINT TAYLOR**

1. My name is G. Flint Taylor.

2. I am over the age of 18 and competent to provide this declaration.

3. The following statements are made on my personal and professional knowledge and, if sworn as a witness, I can testify competently thereto.

4. I represented Plaintiff Alonzo Smith in this case.

5. In the course of representing Mr. Smith, I lawfully came to possess a video copy of the deposition of Defendant Richard M. Daley that I took on the dates of April 9, June 7, and July 16, 2018 in the presence of then District Court Judge Amy St. Eve. I still possess that video copy.

6. I wish to distribute a copy of that video of the Daley deposition to Intervenor Bob Hercules.

7. Were it not for the protective order entered in this case on January 24, 2018, I would have distributed a copy to Hercules. If the Court vacates the protective order, I plan to do so.

8. I support Hercules' motion to vacate the January 24, 2018 protective order.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 4, 2024.

G. Flint Taylor

Attorney for Alonzo Smith

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALONZO SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:16-cv-03404 |
| | ) | |
| v. | ) | |
| | ) | |
| JON BURGE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**INTERVENOR BOB HERCULES' NOTICE OF APPEAL**

Notice is hereby given that Intervenor Bob Hercules in the above-captioned case hereby appeals to the United States Court of Appeals for the Seventh Circuit from the memorandum opinion and order entered in this action on September 24, 2025 (Dkt. 320), which denied Hercules' motion to vacate the January 24, 2018 order precluding the distribution of Defendant Richard M. Daley's video deposition.

Respectfully Submitted,

s/ Matthew Topic
*One of Intervenor's Attorneys*

Matthew Topic
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

I, Matthew Topic, an attorney, hereby certify that I served the foregoing on all parties of record via the Court's CM/ECF e-filing system on October 24, 2025.

s/ Matthew Topic