# United States Court of Appeals
*for the*
# Seventh Circuit

Case No. 25-2933

ALONZO SMITH,

*Plaintiff,*

– v. –

RICHARD M. DALEY,

*Defendant-Appellee.*

APPEAL OF: BOB HERCULES,

*Intervenor.*

ON APPEAL FROM AN ORDER ENTERED IN THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION, NO. 1:16-CV-03404
THE HONORABLE VIRGINIA M. KENDALL, JUDGE PRESIDING

## REDACTED BRIEF OF DEFENDANT-APPELLEE


TERRENCE M. BURNS
PAUL A. MICHALIK
DANIEL M. NOLAND
DANIEL J. BURNS
BURNS NOLAND LLP
311 South Wacker Drive, Suite 5200
Chicago, Illinois 60606
*Attorneys for Defendant-Appellee Richard M. Daley*



CP COUNSEL PRESS (800) 4-APPEAL • (625127)

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2933

Short Caption: Alonzo Smith v. Jon Burge, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Richard M. Daley

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Burns Noland LLP

Dykema, Reiter Burns LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: /s/ Terrence M. Burns Date: November 11, 2025

Attorney's Printed Name: Terrence M. Burns

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: Burns Noland LLP, 311 S. Wacker Drive, Suite 5200

Chicago, IL 60606

Phone Number: 312-878-1296 Fax Number: 312-429-0644

E-Mail Address: tburns@burnsnoland.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2933

Short Caption: Alonzo Smith v. Jon Burge, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Richard M. Daley

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Burns Noland LLP

Dykema, Reiter Burns LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: /s/ Paul A. Michalik Date: November 11, 2025

Attorney's Printed Name: Paul A. Michalik

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Burns Noland LLP, 311 S. Wacker Drive, Suite 5200

Chicago, IL 60606

Phone Number: 312-878-1294 Fax Number: 312-429-0644

E-Mail Address: pmichalik@burnsnoland.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2933

Short Caption: Alonzo Smith v. Jon Burge, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Richard M. Daley

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Burns Noland LLP
Dykema, Reiter Burns LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: /a/ Daniel M. Noland Date: November 13, 2025

Attorney's Printed Name: Daniel M. Noland

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Burns Noland LLP, 311 S. Wacker Drive, Suite 5200
Chicago, IL 60606

Phone Number: 312-878-1291 Fax Number: 312-429-0644

E-Mail Address: dnoland@burnsnoland.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2933

Short Caption: Alonzo Smith v. Jon Burge, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Richard M. Daley

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Burns Noland LLP

Dykema, Reiter Burns LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: /a/ Daniel J. Burns Date: November 13, 2025

Attorney's Printed Name: Daniel J. Burns

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Burns Noland LLP, 311 S. Wacker Drive, Suite 5200

Chicago, IL 60606

Phone Number: 312-878-1291 Fax Number: 312-429-0644

E-Mail Address: dburns@burnsnoland.com

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ..... vii

JURISDICTIONAL STATEMENT ..... 1

ISSUES PRESENTED ..... 2

I. ..... 2

II ..... 3

III ..... 3

STATEMENT OF THE CASE ..... 3

SUMMARY OF ARGUMENT ..... 14

ARGUMENT ..... 18

I. Judge Kendall Correctly Imposed on Hercules the Burden to Establish Good Cause to Vacate the Protective Order ..... 18

Judge St. Eve's Finding of Good Cause ..... 18

Judge Kendall's Imposition of the Burden ..... 23

II. Judge Kendall Did Not Abuse Her Discretion in Finding Hercules Did Not Meet His Burden to Establish Good Cause to Vacate Judge St. Eve's Protective Order ..... 25

Four-Factor Test ..... 26

A. Nature of the Protective Order ..... 27

B. Foreseeability of the Requested Modification ..... 30

C. Parties' Reliance on the Order ..... 30

D. Good Cause ..... 33

1. Changed Circumstances: Judge St. Eve's "Expectations" ..... 34

2. Changed Circumstances: Denial of FOIA Request ..... 37

3. Mr. Daley's Privacy Interest ..... 39

III. Alternatively, Even If the Burden Is Improperly Imposed on Mr. Daley, He Continues to Show Good Cause to Support Judge St. Eve's Protective Order ..... 43

Mr. Daley's Demonstrated Privacy Interests .......................................... 43
Any Public Interests are Outweighed by Mr. Daley's Privacy Interests .......................................... 47
CONCLUSION .......................................... 50

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*American Telephone & Telegraph Co. v. Grady*,
594 F.2d 594 (7th Cir. 1978) .......... 2

*Baxter Int'l, Inc. v. Abbott Labs.*,
297 F.3d 544 (7th Cir. 2002) .......... 38

*Bayer AG & Miles, Inc. v. Barr Laboratories, Inc.*,
162 F.R.D. 456 (N.D. Ill. 1995) .......... 27, 28, 29, 30

*Bond v. Utreras*,
585 F.3d 1061 (7th Cir. 2009) .......... *passim*

*Chi. Mercantile Exch., Inc. v. Tech. Research Grp., LLC*,
276 F.R.D. 237 (N.D. Ill. 2011) .......... 27

*City of Greenville, Ill. v. Syngenta Crop Prot., LLC*,
764 F.3d 695 (7th Cir. 2014) .......... 38

*Crothers v. Pilgrim Mortg. Corp.*,
No. 95-CV-4681, 1997 WL 570583 (S.D.N.Y. Sept. 11, 1997) .......... 24, 36

*Cty. Materials Corp. v. Allan Block Corp.*,
502 F.3d 730 (7th Cir. 2007) .......... 25

*Daniels v. City of New York*,
200 F.R.D. 205 (S.D.N.Y. 2001) .......... 23

*Daniels v. Univ. of Notre Dame*,
No. 22-CV-698, 2024 WL 4602349 (N.D. Ind. Oct. 29, 2024) .......... 21

*Doe v. Lansal, Inc.*,
No. 08-CV-5983, 2012 WL 707112 (N.D. Ill. Mar. 5, 2012) .......... 36

*Est. of Gifford v. Operating Engineers 139 Health Benefit Fund*,
126 F.4th 509 (7th Cir. 2025) .......... 25

*Felling v. Knight*,
211 F.R.D. 552 (S.D. Ind. 2003) .......... 24, 25, 37

*Gile v. United Airlines, Inc.*,
95 F.3d 492 (7th Cir. 1996) .......... 26

*Grove Fresh Distribs., Inc. v. John Labatt Ltd.*,
888 F. Supp. 1427 (N.D. Ill. 1995) .......... 21, 22

*Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*,
24 F.3d 893 (7th Cir. 1994) .......... 2

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
881 F.3d 550 (7th Cir. 2018) ........................................................................ *passim*

*In re Agent Orange Prod. Liab. Litig.*,
821 F.2d 139 (2d Cir. 1987)........................................................................ 23, 24

*In re Roman Catholic Archbishop of Portland in Or.*,
661 F.3d 417 (9th Cir. 2011) ............................................................................ 36

*In re U.S. Motion to Modify Sealing Orders*,
No. 5:03-MC-2, 2004 WL 5584146 (E.D. Tex. June 8, 2004) ........................... 24, 25

*Iridium India Telecom Ltd. v. Motorola, Inc.*,
165 Fed. App'x 878 (2d Cir. 2005) ..................................................................... 24

*James v. Sheahan*,
137 F.3d 1003 (7th Cir. 1998) ............................................................................ 32

*Jepson, Inc. v. Makita Elec. Works, Ltd.*,
30 F.3d 854 (7th Cir. 1994) ........................................................................ 20, 36

*Knitting Fever, Inc. v. Coats Holdings Ltd.*,
No. CV05-1065, 2011 WL 3678823 (E.D.N.Y. Aug. 22, 2011) ............................... 24

*Kyles v. J.K. Guardian Sec. Servs.*,
No. 97-CV-8311, 2006 WL 2349238 (N.D. Ill. Aug. 15, 2006) ............................... 33

*Lukaszczyk v. Cook County*,
137 F.4th 671 (7th Cir. 2025)............................................................................. 25

*Magnuson v. Exelon Generation Company, LLC*,
No. 21-CV-4142, 2023 WL 5436345 (C.D. Ill. Aug. 23, 2023)................................ 20

*Morning Call, Inc. v. Lower Saucon Township*,
627 A.2d 297 (1993)........................................................................................... 49

*Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*,
234 F.R.D. 175 (N.D. Ill. 2006) ................................................................... *passim*

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994)........................................................................... 48, 49

*Prestwick Capital Mgmt., Ltd. v. Peregrine Fin. Grp., Inc.*,
727 F.3d 646 (7th Cir. 2013) ............................................................................. 26

*Pub. Citizen v. Liggett Grp., Inc.*,
858 F.2d 775 (1st Cir. 1988)............................................................................... 29

*Schaill v. Tippecanoe County Sch. Corp.*,
864 F.2d 1309 (7th Cir. 1989) ............................................................................ 46

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984) .......... 25

*Securities and Exchange Comm'n v. TheStreet.com*,
273 F.3d 222 (2d Cir. 2001) .......... 24

*United States v. Wolfson*,
55 F.3d 58 (2d Cir. 1995) .......... 40

*Wachovia Sec., LLC v. Banco Panamericano, Inc.*,
674 F.3d 743 (7th Cir. 2012) .......... 32

*Wanko v. Bd of Trustees of Indiana Univ.*,
927 F.3d 966 (7th Cir. 2019) .......... 25

*Wilk v. American Medical Ass'n*,
635 F.2d 1295 (7th Cir. 1980) .......... 24

**Statutes & Other Authorities:**

28 U.S.C. § 1291 .......... 2

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1343 .......... 1

28 U.S.C. § 1367(a) .......... 1

42 U.S.C. § 1983 .......... 1

5 ILCS 140/2(c) .......... 11

5 ILCS 140/7(1)(b) .......... 48

Fed. R. Civ. P. 5 .......... 24, 25

Fed. R. Civ. P. 26 .......... 24

Rule 26(c)(1) .......... 20

## JURISDICTIONAL STATEMENT

Appellant's jurisdictional statement is not complete and correct. A complete and correct jurisdictional statement follows.

On March 17, 2016, Plaintiff Alonzo Smith ("Plaintiff") filed suit in the United States District Court for the Northern District of Illinois alleging his constitutional rights were violated under 42 U.S.C. § 1983. Because the complaint raised federal claims, the District Court had federal-question jurisdiction over the case under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a).

On January 24, 2018, Judge Amy St. Eve of the District Court[1] entered a protective order that precluded the disclosure of the videotaped deposition of then-defendant Richard M. Daley. The City of Chicago reached a settlement with Plaintiff in November 2018, at which time Mr. Daley and other City defendants were dismissed. (R.240).[2] Plaintiff accepted an offer of judgment from Cook County in late November 2018, and Plaintiff's civil action was terminated. (R.248).

Years later, on December 23, 2024, Intervenor-Appellant Bob Hercules, a non-party and self-described documentary filmmaker, filed a motion to vacate the District Court's protective order precluding the public dissemination of Mr. Daley's videotaped deposition. (R.293). Among other arguments, Hercules' challenge to the protective order invoked the First Amendment. (*Id.* at 5). The District Court entered a final order

---

[1] As noted by Intervenor/Appellant Hercules, three different judges have presided over this matter. Mr. Daley also will refer to the judges by name where necessary for clarity.

[2] The District Court record is cited as "R.__,", Intervenor Hercules' Short Appendix as "S.A.__,", and Hercules' Opening Brief as "Intervenor Br."

on September 24, 2025, denying Hercules' motion to vacate. (R.320). That order is the subject of this appeal.

The September 24, 2025 order is final and appealable. The District Court has the inherent power to modify a protective order as long as it remains in effect, even after final judgment is entered in the underlying case, and the modification of a protective order is a final and appealable order when it leaves nothing remaining to be decided on the matter. See, e.g., *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 895-96 (7th Cir. 1994); *American Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 596-97 (7th Cir. 1978). Thus, the District Court's September 24, 2025 order denying Hercules' motion to vacate the protective order at issue is final and appealable, given that the District Court had the ongoing power to modify or keep in place the protective order, and the order denying the motion to vacate left nothing remaining to be decided in this matter.

Hercules filed a notice of appeal on October 24, 2025, which was timely because it was filed within thirty days of the September 24, 2025 final order. This Court therefore has jurisdiction over this appeal under 28 U.S.C. §1291.

## ISSUES PRESENTED

### I.

Whether Judge Kendall correctly determined Intervenor Hercules bore the burden to demonstrate good cause to vacate a protective order entered by Judge St. Eve sealing the videotape of Mr. Daley's deposition where Judge St. Eve invested an extraordinary level of personal involvement in evaluating the unique issues and circumstances presented and had good cause to support entry of a protective order.

**II.**

Whether Judge Kendall – after carefully considering (1) Judge St. Eve's rulings and thorough review and analysis of Mr. Daley's privacy rights, the public record, and extensive adversarial briefing, (2) Judge Dow's equally thorough review of the relevant record before Judge St. Eve, and (3) extensive additional briefing and materials – abused her discretion in denying Hercules' motion to vacate Judge St. Eve's protective order precluding the public dissemination of Mr. Daley's videotaped deposition where the nature of the protective order, Mr. Daley's reliance on the protective order, the existence of good cause to maintain the protective order, and Mr. Daley's continued interest in the privacy of his private personal health circumstances, all weighed against Hercules' motion and supported keeping the protective order in place.

**III.**

Even if the burden is imposed on Mr. Daley, whether he established the existence of good cause to maintain Judge St. Eve's protective order precluding the public dissemination of his videotaped deposition where his substantial privacy interests outweighed any public interest in unfiled discovery, and where the deposition videotape was not subject to an Illinois FOIA request.

## STATEMENT OF THE CASE

Intervenor Hercules has appealed Judge Kendall's September 2025 ruling that denied his motion to vacate the January 24, 2018 protective order entered by then-District Court Judge St. Eve, which placed Mr. Daley's videotaped deposition under seal. While Hercules' appeal expressly challenges Judge Kendall's 2025 ruling, it

collaterally challenges the underlying 2018 protective order entered by Judge St. Eve, as well as subsequent findings and a ruling made by Judge Robert Dow in March 2023. To put Hercules' appeal in the proper context, a thorough recitation of the pertinent procedural history and related district court rulings is necessary.

Plaintiff Smith filed the underlying action on March 17, 2016, against multiple defendants including Mr. Daley. (R.1). Plaintiff's lawsuit was filed more than two years after Mr. Daley had experienced a [redacted] stroke in January 2014. (R.111, Ex. C, Rpt. at 1). In December 2016 and February 2017, Plaintiff served Mr. Daley's counsel with notices of deposition. (R.111, Ex. A, B). In a court hearing conducted on February 15, 2017, Plaintiff's counsel raised the issue of Mr. Daley's deposition with Judge St. Eve.[3] (R.105, at 7). Counsel for Mr. Daley, Terrence Burns, at that time advised Judge St. Eve and Plaintiff's counsel there was an issue related to Mr. Daley's medical condition involving protected health information. (*Id.* at 7-8). Attorney Burns requested leave to file a motion for protective order under seal regarding the deposition notice so that the Court could consider the issue and make appropriate rulings. (*Id.*) Judge St. Eve allowed Mr. Daley leave to file the motion for protective order under seal. (*Id.* at 10; R.99). A "Qualified HIPAA and MHDDCA 'Attorneys' Eyes Only' Protective Order Pertaining to Defendant Daley" was entered on March 22, 2017 (R.110), and on the same day, Mr. Daley filed under seal a motion for protective order to preclude his deposition. (R.111).

[3] Plaintiff's counsel in the underlying matter included Flint Taylor, who Hercules claimed to be a "willing speaker" for purposes of his motion to vacate before Judge Kendall. (R.293 at 5).

The motion for protective order was supported by affidavits and medical reports from Mr. Daley's treating physicians, Dr. Bernstein and Dr. Terman (R.111, Ex. C, D), in which they explained that in January 2014, Mr. Daley suffered a [redacted], resulting in significant and permanent neurologic deficits, [redacted]. (R.111 ¶4 and Ex. C, Rpt. at 1). [redacted] (*Id.*). Mr. Daley's treating physicians opined that as a result of the neurologic compromise and sequelae from the stroke, Mr. Daley would be unable to properly prepare for a deposition and would be unable to provide accurate or reliable testimony in response to questions that might be put to him in a deposition setting. (R.111 ¶¶ 7, 9; Ex. C, Rpt. at 2; Ex. D, Rpt. ¶5). [redacted].[4] (R.111 ¶5). Mr. Daley's counsel thereafter sought a protective order to preclude his deposition. (*Id.* ¶¶8-9).

---

[4] There is a discrepancy between certain redactions ordered by Judge Dow and those ordered by Judge Kendall regarding a portion of this sentence. *Compare* R.322 at 3-4 with R.285 at 1-2. As Hercules is challenging Judge Kendall's order (R.320), this brief follows the redactions directed by Judge Kendall. (*Id.* at S.A.016).

Plaintiff's counsel challenged Mr. Daley's request for a protective order. Over the next few months, Plaintiff's counsel requested numerous medical records related to Mr. Daley's care and treatment from the date of the stroke forward, which were provided by Mr. Daley's counsel to support the good cause standard applicable to the motion for protective order. (R.162 ¶3). The medical information was provided on an "Attorneys' Eyes Only" basis to Plaintiff's counsel only.[5] (R.275 at 3). No other party or their counsel was given access to the medical records. (*Id.*) Court proceedings pertaining to the request for a protective order were conducted at separate or sidebar conferences attended by Judge St. Eve and attorneys for Plaintiff and Mr. Daley only. (*See e.g.* R.115, 121, 136, 161, 287).

On September 19, 2017, Judge St. Eve conducted an *in camera* hearing concerning the motion for protective order that was attended by counsel for Mr. Daley and Plaintiff, and no other attorneys. (R.142; R.275 at 3-4). Mr. Daley's treating physician, Dr. Terman (in person), and his treating neurologist, Dr. Bernstein (via videoconference), participated in the hearing and were questioned extensively by the parties and the Court. (R.167 at 7; R.275 at 3-4). Dr. Bajwa was the only other individual present at the *in camera* hearing. (R.167 at 7). At the end of the hearing, Judge St. Eve asked Dr. Bernstein if there could be any accommodation for Mr. Daley's deficits, such as by answering written questions. (R.275 at 4). Dr. Bernstein responded that he was unable to provide an opinion on the issue of accommodation,

---

[5] Plaintiff's counsel was subsequently allowed to share the medical information with an expert consultant, Dr. Rizwan Bajwa, after he signed a consent to be bound by the "Qualified HIPAA and MHDDCA "Attorneys' Eyes Only" Protective Order Pertaining to Defendant Daley." (R.275 at 3 n.3).

but that a neuropsychological battery would be helpful in order to answer the Court's question. (*Id.*) Judge St. Eve then indicated arrangements should be made for a neuropsychological assessment of Mr. Daley. (*Id.*) Following Plaintiff's counsel's agreement that Dr. Robert Hanlon was acceptable to conduct the assessment, the neuropsychological evaluation was performed over two dates, November 27, 2017 and December 13, 2017. (*Id.*; R.167 at 8).

On December 7, 2017, while the parties were awaiting the completion of Dr. Hanlon's evaluation, Judge St. Eve denied Mr. Daley's original motion for a protective order without prejudice. (R.161; R.289 at 2-3). The Court's ruling indicated Mr. Daley had not yet met his burden since his treating physicians could not rule out any form of accommodated deposition without neuropsychological testing. (*Id.*) Judge St. Eve further granted Mr. Daley leave to refile the motion so that Dr. Hanlon's assessment could be completed. (*Id.*) On December 18, 2017, Mr. Daley filed under seal a Renewed Motion for Protective Order to Preclude his Videotaped Deposition, which was supported with Dr. Hanlon's report. (R.162 ¶7; R.167, Ex. H). [redacted]

---

[redacted]

[redacted].

Notwithstanding Dr. Hanlon's conclusions and recommendation, Plaintiff's counsel continued to insist on an oral deposition. (R.167 at 17). Plaintiff's response to the renewed motion for protective order challenged the medical evidence provided by Dr. Terman and Dr. Bernstein in support of their opinions.[7] (*Id.* at 13-17). Moreover, Plaintiff rejected outright the accommodations proposed by Dr. Hanlon:

> Dr. Hanlon's suggestion that Daley be given written questions to review at home at his own pace and be allowed to verbalize answers to a third party is a completely inadequate substitute for a deposition and is unwarranted under the circumstances.

(*Id.* at 17). Despite receiving the opinion of an approved expert in the field, Plaintiff's counsel believed Dr. Hanlon's recommended accommodation was "unnecessary" in light of factors that Plaintiff's counsel, rather than Dr. Hanlon, deemed significant. (*Id.* at 18). However, [redacted] Plaintiff's counsel assured the Court they were willing to conduct the deposition under seal so that Mr. Daley "will not suffer any undue embarrassment from having his deposition disseminated." (*Id.*) Plaintiff's counsel explained they sought to videotape the deposition solely to preserve the testimony for use at trial, if necessary, or to aid the Court if further intervention was sought. (*Id.* at 18 n.6).

On January 24, 2018, Judge St. Eve conducted a second in-chambers hearing with counsel for Mr. Daley and Plaintiff only, which was attended by both Dr. Hanlon

---

[7] Plaintiff's Response (R.167) was noteworthy for the lack of any affidavit and/or report from Dr. Bajwa or other medical expert challenging the findings of Dr. Bernstein or Dr. Terman. (R.303 at 6 n.6).

and Dr. Terman. (R.168). Dr. Hanlon was questioned at length by counsel for the parties and the Court, with a particular focus on the issue of accommodation. (R.275 at 5). Following the hearing, Judge St. Eve granted in part and denied in part Mr. Daley's request for a protective order to preclude his deposition. (R.168). Judge St. Eve explained that "In light of everything – the medical evidence I reviewed, Dr. Hanlon's testimony, the results of neuropsychological test scores, the fact Mr. Daley still sits on the Board of Directors of Coca-Cola, he is listed as Executive Chairman for Tur Partners, he is of counsel at Katten," Mr. Daley should be questioned in a deposition setting. (S.A.025). Judge St. Eve cautioned that she was not making a determination at that time whether the deposition testimony would ever be admissible at trial. (S.A.026).

In light of Dr. Hanlon's testimony and the restrictions he recommended, Judge St. Eve proposed some guidelines in an attempt to accommodate a deposition that still would proceed under a question-and-answer format. (S.A.026). Judge St. Eve also agreed to personally attend the deposition as an "observer" to assess Mr. Daley's ability to meaningfully participate in the process. (S.A.027). Attorney Burns expressed opposition to videotaping the deposition, raising the concern that, based on the medical evidence, preserving a videotape would serve only to embarrass Mr. Daley. (S.A.028). In response, Judge St. Eve ordered that the video deposition would be placed under seal. (*Id.*) Plaintiff's counsel agreed to the sealing of the deposition videotape, suggesting they even had "considered foregoing the video" and reiterating

that the "only reason why" they wanted to preserve the video was in the event the case went to trial and Plaintiff needed the testimony. (S.A.029).

Mr. Daley's deposition took place over three separate sessions, each attended by Judge St. Eve: April 9, 2018; June 7, 2018; and July 16, 2018. (R.303 at 6). [redacted], Plaintiff thereafter sought leave to serve Mr. Daley with 116 requests to admit. (R.206). [redacted]. Judge St. Eve, who had attended all three deposition sessions, granted over objection Plaintiff's request to issue the requests to admit, finding them to be an "appropriate solution under the circumstances" given the "complicated nature" of discovery pertaining to Mr. Daley. (R.218 at 2).

Plaintiff's case was terminated pursuant to settlements as of November 28, 2018. (R.240; R.248). Almost three years later (August 24, 2021), Hercules filed a motion seeking to unseal certain pleadings and transcripts relating to Mr. Daley's motion for protective order. (R.256). By that time, Judge St. Eve had been elevated to the Seventh Circuit Court of Appeals, and the matter was reassigned to Judge Dow. (R.257). Hercules' motion was granted in part and denied in part in March 2023. (R.278). Judge Dow devoted considerable time to Hercules' motion, which included Judge Dow's personal use of a black marker to designate, page by page and line by line, portions of the briefs to be redacted before public filing. (R.279). Explaining his

reasoning for the redactions, Judge Dow indicated he considered the basis for Judge St. Eve's ruling on the motion for protective order along with Mr. Daley's "legitimate privacy interests in regard to his medical circumstances and associated medical records." (*Id*. at 1-2). According to Judge Dow:

> Nevertheless, the public does have the right to know that concerns about Mayor Daley's health conditions were the driving force behind (a) Judge St. Eve's rulings on the motions for protective order, (b) her careful guidance to the parties on the ground rules for the deposition that took place in three sessions, and (c) her decision to allow Plaintiff to serve further written discovery requests after the deposition concluded. (*Id*. at 1).

Hercules did not appeal Judge Dow's ruling.

In September 2024, Hercules sent a Freedom of Information Act ("FOIA") request to the City of Chicago, which stated:

> Pursuant to FOIA please produce any and all video of the deposition of Richard M. Daley taken in NDIL Case No. 16 C 3404, Alonzo Smith v. Jon Burge et al. To the extent you do not have physical possession of it, please obtain a copy from your attorneys or, if necessary, order a copy from the court reporter. See 5 ILCS 140/2(c) (defining "public records" to include records "under the control of any public body"). (S.A.036).

The City responded that the Department of Law could not produce the video in response to the FOIA request, and further explained the videotape was under seal by order of the court. (*Id*.). The City's Department of Law did not possess or control the videotape, which was possessed only by counsel for Mr. Daley and Plaintiff. (R.303 at 10 n.8; R.331 at 4-5).

In December 2024, Hercules challenged another ruling by Judge St. Eve, this time seeking to vacate the protective order pertaining to the videotape of Mr. Daley's deposition. (R.293). Hercules' motion to vacate stated he was seeking the videotape "for his journalistic purposes." (*Id*. at 4). As Judge Dow no longer had an active

calendar, Hercules' motion was reassigned to Judge Kendall. (R.294). In a sealed filing, Mr. Daley opposed the motion to vacate. (R.303). Hercules thereafter submitted multiple filings, including a sealed reply in support of his motion. (R.304, R.307, R.308, R.311).

On September 24, 2025, Judge Kendall denied Hercules' motion and ordered that certain sealed briefs be refiled on the public docket with specific redactions identified by the Court. (R.320; S.A.001–014). In her Memorandum Opinion and Order (R.320), Judge Kendall initially ruled Hercules had standing to challenge the protective order. (S.A.006). Mr. Daley had argued Hercules lacked an injury in fact to establish standing because there was no general right of access to unfiled discovery materials such as the deposition videotape. (R.303 at 10-12). The Court nevertheless determined Hercules identified an injury in fact because he pointed to a "willing speaker" (Plaintiff's attorney Flint Taylor), who stated he would provide the videotaped deposition to Hercules but for the protective order. (S.A.005-006).

Finding standing, Judge Kendall next considered whether it was appropriate to vacate the protective order that precluded the dissemination of the deposition videotape. (*Id*.). The Court rejected Hercules' attempt to place the burden on Mr. Daley to demonstrate good cause to keep the protective order in place. According to the Court, a party (like Hercules) seeking to vacate an existing protective order bore the burden of showing good cause to do so. (S.A.006-007). The Court also found Mr. Daley did not "inherit the burden" given the particular circumstances under which the protective order was issued. (S.A.007). Judge Kendall explicitly rejected as

"misguided" Hercules' attempt to characterize Judge St. Eve's protective order as unsupported by good cause, and found Judge Dow's "equally thorough review of the record" to be in accord with Judge St. Eve's good cause finding. (*Id.*).

Judge Kendall then applied a four-factor test to determine whether Hercules met his burden to establish good cause to vacate the protective order. Finding the order in question to be akin to a blanket order that protected select documents containing confidential information, which are more difficult to modify, and that the order was entered pursuant to the stipulation of the parties, the Court concluded the first factor, the nature of the protective order, weighed against Hercules. (S.A.008-009). The Court found the second factor, foreseeability, not relevant to the analysis. (S.A.009). As to the third factor, the parties' reliance on the order, the Court concluded Mr. Daley did rely on the protective order. (S.A.010). Judge Kendall explained Mr. Daley's counsel voiced concern about the possible public release of the deposition videotape and relied on assurances from Plaintiff's counsel that the deposition was only being videotaped to preserve the testimony if needed for a potential trial. (*Id.*) Judge Kendall also found Mr. Daley had been relying on the protective order for more than seven years, which further weighed against modification of the order. (*Id.*)

Finally, Judge Kendall determined Hercules failed to establish the fourth and most important factor, good cause to vacate the protective order. (S.A.013). Reviewing the parties' competing interests, Judge Kendall concluded the circumstances had not fundamentally changed since Judge St. Eve entered the protective order in 2018.

(S.A.011-012). Judge Kendall expressly rejected Hercules' argument that the protective order interfered with disclosure under Illinois FOIA, since the videotape was not in possession or control of any state body and because the videotaped deposition was "decidedly not a matter of public record." (S.A.012-013). The Court further determined both the nature of the order and Mr. Daley's reliance on it supported maintaining the protective order, as Mr. Daley's need for protection "weigh[ed] heavily on the side of keeping the order in place." (S.A.013).

After carefully reviewing the extensive involvement and rulings of Judge St. Eve and Judge Dow, considering the relevant history, record, and specific circumstances presented by the issues, and conducting the four-factor analysis, Judge Kendall denied Hercules' motion to vacate the protective order. (R.320). Hercules appeals that ruling. (R.326).

## SUMMARY OF ARGUMENT

This appeal involves the most recent of Hercules' piecemeal challenges to protective orders entered by Judge Amy St. Eve in the 2016 lawsuit filed by Plaintiff Alonzo Smith. In December 2024, some six years after Plaintiff's lawsuit settled, Hercules moved to vacate the protective order entered by Judge St. Eve in January 2018 that precluded public dissemination of the videotaped deposition of Richard M. Daley, a defendant in Plaintiff's underlying lawsuit. Hercules' motion to vacate was reassigned to Judge Kendall at that time. In September 2025, Judge Kendall denied Hercules' motion to vacate Judge St. Eve's 2018 protective order. While Hercules' appeal pertains to Judge Kendall's 2025 ruling, it collaterally challenges the validity

of the underlying 2018 protective order entered by Judge St. Eve, as well as findings and a subsequent ruling made by Judge Robert Dow in March 2023.

As the individual seeking modification of the protective order, Hercules bears the burden of showing good cause to vacate that order. Hercules' various attempts to shift the burden to Mr. Daley to demonstrate good cause to maintain the protective order are without merit. The challenged protective order pertains to unfiled discovery, for which there is no presumption of a right to public access. *Bond v. Utreras*, 585 F.3d 1061, 1074–76 (7th Cir. 2009). Hercules' conclusory assertions that Judge St. Eve made no good cause finding and that her protective order is not entitled to deference are baseless and ignore the underlying record and considerable personal involvement of Judge St. Eve that preceded her entry of that order. Judge St. Eve expended substantial time and effort to evaluate the complex issues relating to Mr. Daley's request for a protective order to preclude his deposition, and the record reflects her rulings were supported by good cause. In 2021, on Hercules' first challenge to Judge St. Eve's protective orders, Judge Robert Dow was assigned to the matter in Judge St. Eve's stead. After immersing himself in the record, Judge Dow confirmed Judge St. Eve's protective orders were supported by good cause, expressly noting that concerns about Mr. Daley's health conditions were the "driving force" behind Judge St. Eve's rulings on the motion for a protective order.

Presented with the same issue, Judge Kendall rejected as "misguided" Hercules' assertion that Judge St. Eve did not make a finding of good cause. Hercules' proposition that Judge St. Eve's decision to seal the deposition was "offhand" and

lacked good cause is thoroughly refuted by the record and by two highly experienced judges who closely studied the issue, and imputes without basis an abuse of discretion in Judge St. Eve's 2018 ruling. Hercules' arguments on burden, which ignore this record, should be summarily rejected.

Thus, the question on appeal is whether Judge Kendall abused her discretion in concluding Hercules failed to demonstrate the existence of good cause to vacate the protective order precluding the public dissemination of Mr. Daley's videotaped deposition. Courts in this circuit have adopted a test that considers four factors: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of that order, of the modification requested; (3) the parties' reliance on that order; and most significantly (4) whether good cause exists for the modification." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 565 (7th Cir. 2018). Judge Kendall properly utilized the four-factor test to analyze Hercules' motion to vacate.

On the first factor, the nature of the protective order, Judge Kendall initially found the order in question was stipulated to by Plaintiff's counsel rather than court imposed, which weighed against vacating the order. Judge Kendall correctly rejected Hercules' attempt to distance himself from Plaintiff's stipulation. Next, Judge Kendall determined Judge St. Eve's order fit the description of a "blanket" type of protective order. Such orders are more difficult to vacate where, as here, the parties have agreed to them. Judge Kendall's conclusion that this factor weighed against Hercules was carefully considered, rational, and based on the facts, and was not arbitrary or an abuse of discretion.

Hercules does not challenge Judge Kendall's finding that the second factor, foreseeability of the requested modification, was not relevant to the analysis. As to the third factor, reliance, Judge Kendall's holding that Mr. Daley relied on assurances from Plaintiff's counsel that the deposition would be videotaped only to preserve the testimony if needed for trial was well-founded and supported by the record. Judge Kendall's further conclusion that Mr. Daley's longstanding reliance on the protective order weighed against modification as a matter of fairness and finality is not addressed in Hercules' brief, resulting in waiver. The finding that the reliance factor weighed against Hercules was not an abuse of discretion.

The fourth and most important factor in applying the four-factor test is whether there is good cause to vacate the protective order. Judge Kendall's holding that Hercules failed to establish the existence of good cause to vacate the protective order was not an abuse of discretion. Hercules failed to demonstrate a legally significant change in circumstances that justified vacating the protective order. Hercules' argument that Judge St. Eve, at the time she entered the protective order, reasonably expected the public would learn at trial of Mr. Daley's alleged knowledge of police torture, which did not happen because the case settled, conflates the public's interest in live trial testimony with its interest in access to unfiled discovery, for which there is no presumption of public access. Moreover, arguing changed circumstances based on Judge St. Eve's "expectation" at the time she entered the protective order is pure speculation. There were no legally significant "changed circumstances" based on the City's denial of Hercules' FOIA request for the deposition

videotape. The videotape was not subject to a FOIA request because it was not a public record and there was no evidence the City had it or had access to it.

Judge Kendall's analysis balancing the competing public and private interests provides further support for her decision to keep in place Judge St. Eve's order. The finding that Mr. Daley's continued interest in keeping his sensitive health conditions private weighed against vacating the protective order was not an abuse of discretion.

Alternatively, even if the burden is improperly imposed on Mr. Daley to establish good cause to keep the protective order in place, he has done so. Mr. Daley's privacy interests in his personal medical circumstances are the same today as they were in 2018, when Judge St. Eve ruled. Hercules' contention that Mr. Daley's privacy interests are "undemonstrated" is meritless. The record before Judges St. Eve, Dow, and Kendall, essentially ignored by Hercules' appeal, establish Mr. Daley's privacy interests have been amply demonstrated. As for the public's interest, there is no presumption of public access to unfiled discovery materials. Even if the burden is imposed on Mr. Daley, the record supports his continued interest in keeping his sensitive health conditions private, which, as Judge Kendall found after assessing the private vs. public interests, weighed against vacating the protective order.

## ARGUMENT

### I. Judge Kendall Correctly Imposed on Hercules the Burden to Establish Good Cause to Vacate the Protective Order.

#### Judge St. Eve's Finding of Good Cause

As this Court has explicitly held, "the party seeking modification … has the burden of showing good cause to modify the protective order." *Heraeus Kulzer*, 881

F.3d at 566. The person seeking to modify the protective order here is Hercules; therefore, he bears the burden of establishing good cause to vacate the order in question. See *id.* Attempting to avoid the burden imposed by law, Hercules contends Judge St. Eve "made no good cause finding" and therefore her order "is not entitled to deference." (Intervenor Br. 9). According to Hercules, Judge St. Eve "simply stated at a hearing … that the deposition 'will be under seal' without requiring any evidence or elaborating on her reasoning, and did not issue a written order." (*Id.* at 10). Hercules' conclusory contention ignores both the underlying record and the extensive personal involvement of Judge St. Eve that preceded her entry of the protective order.

Judge St. Eve invested substantial time and effort evaluating the issues relating to Mr. Daley's request for a protective order to preclude his deposition. In addition to regular status hearings in Plaintiff's case, she conducted multiple separate hearings in which only counsel for Mr. Daley and Plaintiff participated. (*See supra*, at 7-10). She reviewed multiple briefs, exhibits, and reports of medical professionals. Judge St. Eve conducted an initial *in camera* hearing attended only by counsel for Mr. Daley and Plaintiff, Plaintiff's medical consultant, and Mr. Daley's treating physicians, wherein the court and counsel questioned the physicians. As a result of information provided at the hearing, Judge St. Eve requested an independent neuropsychological assessment of Mr. Daley, which was conducted by Dr. Hanlon. After Dr. Hanlon completed the neurological assessment and provided a report, Judge St. Eve held a second *in camera* hearing attended by counsel for Mr. Daley and Plaintiff, Dr. Hanlon, and Mr. Daley's treating physician. (*Id.*).

Following the second hearing, Judge St. Eve granted in part and denied in part Mr. Daley's motion for protective order. Weighing everything that had been presented, Judge St. Eve proposed guidelines in an attempt to accommodate Dr. Hanlon's findings regarding Mr. Daley's neurological injuries and his ability to participate in a formal question and answer deposition format. After concerns raised by Mr. Daley's counsel, and with the agreement of Plaintiff's counsel, Judge St. Eve ordered that the deposition videotape be sealed. She then personally attended each of the three sessions of the deposition as an observer to assess Mr. Daley's ability to meaningfully participate in the accommodated deposition process. (*See supra*, at 10-11). Based on this extraordinary level of personal involvement and investment of time, Hercules cannot seriously contend Judge St. Eve casually issued the protective order and lacked good cause to do so.

For starters, that Judge St. Eve entered the protective order presumes good cause was demonstrated for its entry. *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 178 (N.D. Ill. 2006), citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). Hercules appears to argue that because Judge St. Eve did not utter the magic words "good cause," no good cause determination was made. He is mistaken. Courts analyze the entirety of the record, including implicit references rather than searching for the specific phrase "good cause," to determine whether good cause existed. See *Magnuson v. Exelon Generation Company, LLC*, No. 21-CV-4142, 2023 WL 5436345, at *4 (C.D. Ill. Aug. 23, 2023) ("Certainly, Rule 26(c)(1) imposes no requirement the phrase 'good cause' be incanted verbatim.");

*Daniels v. Univ. of Notre Dame*, No. 22-CV-698, 2024 WL 4602349, at *3 (N.D. Ind. Oct. 29, 2024) ("courts in this Circuit have recognized that such explicit references to good cause are not necessary if the record reflects that the judge engaged in a good cause analysis prior to adopting the protective order."); *Grove Fresh Distribs., Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1445 (N.D. Ill. 1995) ("And although I never used the phrase 'good cause' to justify my reasons for signing [the protective order], the record amply attests to an independent determination of good cause, including a balancing of interests, which justified the seal as well as the protective order."). Judge St. Eve explained on the record the reasons underlying her rulings (R.280 at 99-100), and long after she ordered the videotape to be sealed, expressly confirmed "the Court has spent a considerable amount of time and energy to ensure the parties have conducted discovery pertaining to the former mayor with the utmost care." (R.218 at 2).

Judge Dow, tasked with succeeding Judge St. Eve, determined there was good cause for her protective orders. Judge Dow extensively reviewed the record before Judge St. Eve and easily identified the reasons for her decision to seal the materials pertaining to Mr. Daley's deposition. In both of his orders entered on Hercules' 2021 motion to unseal, Judge Dow confirmed the protective orders were supported by good cause, expressly noting "concerns about Mayor Daley's health conditions were *the driving force behind* Judge St. Eve's rulings on the motions for protective order." (R. 278, R.279) (emphasis added).

Presented with the same issue, Judge Kendall rejected as "misguided" Hercules' assertion that Judge St. Eve did not make a finding of good cause. (S.A.007). Judge Kendall explained Judge St. Eve "undertook a thorough review of the parties briefing, Daley's personal medical information, and the public record in concluding that the deposition videotape would 'be under seal.'" (*Id.*). Accordingly, Hercules' suggestion that there was no good cause determination is refuted by the record and should be rejected.

Hercules' contention that the protective order was "requested by nobody" at a "non-adversarial hearing without good cause" (Intervenor Br. 10) is likewise misguided.[8] The suggestion the protective order was "requested by nobody" is belied by the record. The entire issue before Judge St. Eve arose from Mr. Daley's request for a protective order to preclude his deposition. In responding to Mr. Daley's motion, Plaintiff's counsel expressly offered orally and in writing to conduct the deposition under seal. (R.167 at 18). As for being "non-adversarial," Mr. Daley's motion was zealously opposed by Plaintiff's counsel, resulting in protracted litigation before Judge St. Eve, including extensive briefing, two lengthy evidentiary-style hearings involving treating physicians, and an independent examination and report from a neuropsychologist. After Mr. Daley's counsel expressed concern about Plaintiff's plan to videotape the deposition, Judge St. Eve directed that the videotape be sealed to

---

[8] Hercules asserts this was all done "in secret," only to be revealed years later following a motion he brought. (Intervenor Br. 10). Contrary to Hercules' assertion, the fact that Judge St. Eve held *in camera* hearings with respect to Mr. Daley's motion does not mean it was done "in secret." Indeed, contemporaneous court orders were entered reflecting that *in camera* proceedings were being conducted. *See, e.g.*, R.142; R.168.

allay those concerns. The proposition that the decision to seal the deposition was "offhand" and lacked good cause is contradicted by the record and imputes without basis an abuse of discretion in Judge St. Eve's ruling. This argument should be summarily rejected.

**Judge Kendall's Imposition of the Burden**

Citing *Heraeus Kulzer*, Hercules next proposes that "when a party seeks to keep information subject to a protective order secret, the burden of showing good cause lies with that party." (Intervenor Br. 11). But *Heraeus Kulzer* explicitly held that "the party seeking modification … has the burden of showing good cause to modify the protective order." 881 F.3d at 566. Here, Hercules is attempting to vacate a protective order to gain access to unfiled discovery material. Because "[p]retrial discovery—depositions, interrogatories, and the production of documents—'are not public components of a civil trial,' 'were not open to the public at common law,' and 'in general, are conducted in private as a matter of modern practice,'" *Bond*, 585 F.3d at 1074–75, there is no presumption of public access to the deposition videotape. Judge Kendall properly determined Hercules bore the burden to show good cause to modify the protective order.

The out-of-circuit decisions in Hercules' brief (Intervenor Br. 12–13) do not support shifting the burden to Mr. Daley. Hercules offers *Daniels v. City of New York*, 200 F.R.D. 205, 207 (S.D.N.Y. 2001), citing *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139 (2d Cir. 1987) (hereinafter "*Agent Orange*"), for the proposition that "[w]hen a private party asserts a public interest in order to gain access to information, the

burden is on the party seeking to maintain the confidentiality order to show that there is 'good cause' for continued confidentiality." He also cites *Crothers v. Pilgrim Mortg. Corp.*, No. 95-CV-4681, 1997 WL 570583, at *3 (S.D.N.Y. Sept. 11, 1997) for the same proposition. However, *Agent Orange*'s rationale did not survive this Court's decision in *Bond,* 585 F.3d at 1073 ("To the extent this language [in *Agent Orange*] suggests the existence of a general public right to access the materials that litigating parties exchange in response to discovery requests, it sweeps too broadly … [g]enerally speaking, the public has no constitutional, statutory (rule-based), or common-law right of access to *unfiled* discovery."). *Bond* controls here.[9]

*In re U.S. Motion to Modify Sealing Orders*, No. 5:03-MC-2, 2004 WL 5584146 (E.D. Tex. June 8, 2004) (hereinafter *Sealing Orders*), also cited by Hercules, relies on *Agent Orange*, *Felling v. Knight*, 211 F.R.D. 552, 554–55 (S.D. Ind. 2003), and *Wilk v. American Medical Ass'n*, 635 F.2d 1295 (7th Cir. 1980). However, those cases have been repudiated by *Bond*. See, e.g., *Bond*, 585 F.3d at 1073 (rejecting *Agent Orange*); and *id*. at 1068 n.4 (recognizing that *Wilk*'s rationale has been superseded by the 2000

[9]*Agent Orange*'s reasoning did not survive in the Second Circuit, either. See *Securities and Exchange Comm'n v. TheStreet.com*, 273 F.3d 222, 229 n.7 (2d Cir. 2001) (hereinafter "*TheStreet.com*") and *Iridium India Telecom Ltd. v. Motorola, Inc.*, 165 Fed. App'x 878, 880–81 (2d Cir. 2005). *TheStreet.com* recognized that "[w]ithout an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless 'annoyance, embarrassment, oppression, or undue burden or expense' and it would be "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." 273 F.3d at 229–30 (quoting Fed. R. Civ. P 26). See *Knitting Fever, Inc. v. Coats Holdings Ltd.*, No. CV05-1065, 2011 WL 3678823, at *2 (E.D.N.Y. Aug. 22, 2011) (The viability of a "public interest" standard that shifts the burden to the party resisting modification of a protective order is "doubtful" following the decisions in *The-Street* and *Iridium*); see also *TheStreet.com*, 273 F.3d at 231 n.9, 233 n.11 (noting that aspect of *Agent Orange* has been overruled in light of the changes to Fed. R. Civ. P. 5).

amendments to Rule 5 of the Federal Rules of Civil Procedure). *Felling* predates and is incompatible with this Court's decision in *Bond*. *Sealing Orders* thus does not support shifting the burden to Mr. Daley to maintain the protective order. Consistent with *Bond* and *Heraeus Kulzer*, Judge Kendall correctly imposed on Hercules the burden to establish the existence of good cause to vacate the protective order.

## II. Judge Kendall Did Not Abuse Her Discretion in Finding Hercules Did Not Meet His Burden to Establish Good Cause to Vacate Judge St. Eve's Protective Order.

The proper question on appeal is whether Judge Kendall abused her discretion in concluding Hercules failed to demonstrate the existence of good cause to vacate the protective order precluding the public dissemination of Mr. Daley's videotaped deposition. As explained below, the answer is a resounding "No."

The "'unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.'" *Cty. Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 739 (7th Cir. 2007), quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). This Court therefore reviews the district court's discovery orders for an abuse of discretion. See *Wanko v. Bd of Trustees of Indiana Univ.*, 927 F.3d 966, 969 (7th Cir. 2019); *Est. of Gifford v. Operating Engineers 139 Health Benefit Fund*, 126 F.4th 509, 524 (7th Cir. 2025). An abuse of discretion occurs "only when no reasonable person could agree with the district court's actions." *Lukaszczyk v. Cook County*, 137 F.4th 671, 675 (7th Cir. 2025). This Court has recognized that a district court does not abuse its discretion unless "(1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based

on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary." *Gile v. United Airlines, Inc.* 95 F.3d 492, 495 (7th Cir. 1996). Accordingly, this Court's review is "extremely deferential." *Prestwick Capital Mgmt., Ltd. v. Peregrine Fin. Grp., Inc.*, 727 F.3d 646, 664 (7th Cir. 2013).

To reiterate, a party seeking to vacate a protective order bears the burden of demonstrating good cause to do so. *Heraeus*, 881 F.3d at 566, citing *Murata*, 234 F.R.D. at 179. When there is good cause to support entry of a protective order in the first place, good cause must be established before that order can be vacated. *Murata*, 234 F.R.D. at 179. A court's decision to enter a protective order presumes the movant demonstrated good cause for its entry. *Id.* at 178.

Above and beyond that presumption, the record in this case conclusively refutes the suggestion that Judge St. Eve casually adjudicated the matter and arbitrarily entered a protective order unsupported by good cause. (See Section I, *supra*). Judge St. Eve invested an extraordinary and perhaps unprecedented degree of personal involvement in the unique circumstances presented by Mr. Daley's motion for protective order. (R.218 at 2). As Judge Kendall confirmed, the notion that Judge St. Eve's order was unsupported by good cause is "misguided." (S.A.007).

**Four-Factor Test**

Because good cause initially existed for the protective order, Hercules must establish good cause to vacate that order. *Murata*, 234 F.R.D at 179. Where, as here, the movant has the burden of showing good cause to modify or vacate a protective

order, courts in this circuit have adopted a test that considers four factors: "'(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification.'" *Heraeus*, 881 F.3d at 565, quoting *Chi. Mercantile Exch., Inc. v. Tech. Research Grp., LLC*, 276 F.R.D. 237, 239 (N.D. Ill. 2011). Judge Kendall's application of the four-factor test to deny Hercules' motion to vacate the protective order was not an abuse of discretion. *Heraeus*, 881 F.3d at 565-66.

A. <u>Nature of the Protective Order</u>

The nature of the protective order relates to "'its scope and whether it was court-imposed or stipulated to by the parties.'" *Murata*, 234 F.R.D. at 179, quoting *Bayer AG & Miles, Inc. v. Barr Laboratories, Inc.*, 162 F.R.D. 456, 465 (N.D. Ill. 1995). Judge Kendall initially found the protective order was stipulated to by Plaintiff's counsel rather than court imposed, which weighed against vacating the order. (S.A.008-009; *Bond*, 585 F.3d at 1077). That finding cannot reasonably be disputed and was not an abuse of discretion.

Hercules argues he should not be bound by Plaintiff's stipulation because he was not a party to the case when the order was entered and had no ability to object to it. (Intervenor Br. 20). This contention cannot change the character of the order from one that was stipulated to one that was court-imposed. Moreover, Hercules is not as dissociated from that stipulation as he claims. G. Flint Taylor, as counsel for Plaintiff, stipulated to Judge St. Eve's entry of the protective order sealing the

deposition videotape so that he would be allowed to videotape the deposition in the first place. Hercules' standing to present his motion necessarily depended on Taylor as the "willing speaker" who, contrary to his prior express written and oral representations to Judge St. Eve, now proposes to publicly disseminate the deposition videotape. (S.A.005-006). As the "willing speaker" for Hercules, Taylor must "backtrack" and renege on his prior agreement to maintain the videotape under seal. (S.A.010). By suggesting he should not be bound by Taylor's stipulation while at the same time using Taylor as the means to gain access to the videotape, Hercules is using Taylor as both a shield and a sword against Mr. Daley's privacy interests safeguarded by the protective order.[10] By claiming a derivative right to receive the videotape from Taylor (*Bond*, 585 F.3d at 1066), Hercules is inextricably tied to Taylor's agreement that the videotape be maintained under seal, and he should be bound by that agreement. See, e.g., *Bayer AG*, 162 F.R.D at 465.

Courts have identified three types of protective orders. An umbrella order is the broadest type, "which generally designates that all discovery is protected, without any review or determination of good cause." *Murata*, 234 F.R.D at 179. "Next in this hierarchy is the 'blanket' protective order, which permits the parties to protect selected documents they believe in good faith contain [confidential information]." *Id*. Blanket protective orders are more difficult to vacate when the parties have agreed

[10] Perhaps recognizing Taylor's contradictory position, Hercules' brief seemingly disavows his reliance on Taylor as the "willing speaker," which was the basis of finding Article III jurisdiction in the district court. (S.A.005-006). To the extent Hercules is now abandoning the basis for Article III jurisdiction, this Court should dismiss for lack of standing. See *Bond*, 585 F.3d at 1077–78 ("in the absence of a willing speaker, an Article III court must dismiss the action for lack of standing.").

to them. *Id.* The third type of protective order, the narrowest, is one which "covers a specific kind of identified information." *Id.* Such narrowly tailored protective orders are the most difficult to vacate. *Id.*

Judge Kendall's determination that the protective order was akin to a "blanket order" was not an abuse of discretion. This case does not involve an umbrella protective order that designated *all* discovery to be confidential or protected. Judge St. Eve's protective order pertains to a selected item of discovery, the deposition videotape. As such, it more neatly fits the description of a blanket order.[11] (S.A.009). Hercules' argument that there was no reason to expect the deposition would cover sensitive medical information (Intervenor Br. 20) is pure misdirection. The protective order was not entered due to the anticipated subject matter of the deposition; rather, it was based on the potential embarrassment Mr. Daley would experience [redacted], irrespective of subject matter.

Hercules' last argument on the nature of the protective order is based on FOIA. According to Hercules, the protective order affects the public's right to access the

[11] Hercules cites *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 790 (1st Cir. 1988), for the proposition that "blanket" protective orders are overinclusive by nature and "therefore, peculiarly subject to later modification." (Intervenor Br. 20). Although the *Liggett* court used the term "blanket protective order," the order in *Liggett* was not a "blanket" order as described by courts using the four-factor test. The subject order in *Liggett* "extend[ed] broad protection to all documents produced by Liggett, without a showing of good cause for confidentiality as to any individual documents." 858 F.2d at 790. Based on that description, the *Liggett* court was analyzing what the four-factor test would characterize as an "umbrella" order, and not a "blanket" order as described in *Murata* and *Bayer AG*. Thus, *Liggett* does not support Hercules' argument that Judge St. Eve's protective order was overinclusive and "peculiarly" subject to modification.

videotape through FOIA. (Intervenor Br. 20). As discussed in more detail below (*infra* at 39-40), the deposition videotape is unfiled discovery to which the public has no general right of access. As found by Judge Kendall, it "decidedly" is not a public record for purposes of FOIA. (S.A.012). FOIA has no relevance here on the issue of scope.

Blanket protective orders are more difficult to vacate where, as here, they are stipulated to by the parties. *Murata*, 234 F.R.D. at 179. Judge Kendall's analysis of the first factor, the nature of the protective order, and her conclusion that this factor weighed against Hercules, was carefully considered, rational, and based on the facts and law. It was not an abuse of discretion.

B. <u>Foreseeability of the Requested Modification</u>

The second prong of the four-factor test asks whether the need for modification of the protective order "'was foreseeable at the time the parties negotiated the original stipulated protective order.'" *Murata*, 234 F.R.D. at 180, quoting *Bayer AG*, 162 F.R.D. at 466. Judge Kendall determined the foreseeability factor was not relevant to the analysis (S.A.009), and Hercules does not challenge that holding on appeal. (Intervenor Br. 19).

C. <u>Parties' Reliance on the Order</u>

The third factor, reliance, assesses the extent to which the party opposing modification (here, Mr. Daley) "'relied on the protective order in affording access to discovered materials.'" *Murata*, 234 F.R.D. at 180, quoting *Bayer AG*, 162 F.R.D. at 467. Judge Kendall initially noted Mr. Daley was ordered to sit for the deposition and had no choice in the matter, which without more, suggested the reliance factor was a

wash. (S.A.009). However, Judge Kendall concluded Mr. Daley's reliance interest deserved a closer look given the specific information sought by Hercules. (*Id*). It is Judge Kendall's "closer examination" that Hercules challenges on appeal.

Hercules disputes Judge Kendall's finding that Mr. Daley relied on assurances from Plaintiff's counsel that the videotaped deposition was only to preserve the testimony if needed for trial, contending Judge Kendall "misapprehends the record" in reaching that conclusion. (Intervenor Br. 21). According to Hercules, Mr. Daley's counsel did not protest the order prior to those assurances from Plaintiff's counsel. (*Id.*) The notion that Mr. Daley "did not protest" the deposition is absurd. The entire issue before Judge St. Eve arose precisely because Mr. Daley's counsel objected to the deposition in the first place. (S.A.001). In response to Mr. Daley's motion, Plaintiff's counsel offered the assurance that the deposition could be conducted under seal to prevent embarrassment to Mr. Daley [redacted] (R.167 at 18). After Judge St. Eve attempted to provide guidelines for an accommodated deposition, counsel for Mr. Daley voiced concern with videotaping the deposition on the basis it would only serve to embarrass Mr. Daley. (S.A.028). In response, Plaintiff's counsel again expressly disclaimed any intent to embarrass Mr. Daley and reiterated their assurance that the "only reason" to videotape the deposition was to preserve the testimony for trial, if needed. (S.A.028-029). Judge Kendall did not misapprehend the record, and her conclusion that Mr. Daley's counsel would have more forcefully resisted the videotaping of the deposition for public

dissemination absent the assurances from the Court and Plaintiff's counsel (S.A.010) was well-founded.

Hercules' argument that Mr. Daley "failed to specify how his testimony would have been different but for the protective order" (Intervenor Br. 22) misses the point entirely. The protective order did not pertain to the anticipated subject matter of the testimony, [redacted]. (*Supra*, at 6). Indeed, the whole point of Judge St. Eve's attendance at the deposition was to assess whether Mr. Daley could meaningfully and reliably participate in a deposition [redacted].

Unaddressed in Hercules' brief is Judge Kendall's further finding that Mr. Daley "undoubtedly" established his "longstanding reliance" on the protective order. (S.A.010). It is uncontroverted Mr. Daley has been relying on the protective order sealing his deposition videotape for almost eight years. As Judge Kendall held, longstanding reliance on a protective order "weighs against modification as a matter of fairness and finality." (S.A.010, citing *Heraeus*, 881 F.3d at 568). Hercules' failure to address this aspect of Judge Kendall's ruling results in waiver, and he cannot raise it now in his reply. See *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 758 (7th Cir. 2012) ("because appellants did not raise this issue in their opening briefs, they waived any argument on this ruling"); *James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998) ("Arguments raised for the first time in a reply brief are waived").

Hercules cannot dispute Mr. Daley's longstanding reliance on the protective order. Judge Kendall's conclusion that the reliance factor weighed against Hercules was supported by the record and was not an abuse of discretion.

D. Good Cause

The fourth and most important factor identified by courts applying the four-factor test is whether there is good cause to vacate the protective order. *Heraeus*, 881 F.3d at 565. To assess "good cause" in this context, courts consider whether there are "changed circumstances or new situations." *Kyles v. J.K. Guardian Sec. Servs.*, No. 97-CV-8311, 2006 WL 2349238, at *4 (N.D. Ill. Aug. 15, 2006). In further consideration of "whether [a movant] seeking to vacate [a] protective order has established good cause, the court must weigh [the movant's] need for modification against the other party's need for protection." *Murata*, 234 F.R.D at 180.

Judge Kendall relied on these principles in holding that Hercules failed to establish the existence of good cause to vacate the protective order. Judge Kendall initially determined Hercules "failed to demonstrate a legally significant change in circumstances that justifies vacating the protective order." (S.A.012). In her analysis, Judge Kendall considered the public's interest in Mr. Daley's potential testimony, finding those same considerations "were as true on the day the protective order was entered as they are today." (S.A.011). Any public interest in Mr. Daley's knowledge of alleged police torture presumably was the same in 2018 as it is today. Mr. Daley's privacy interests in the confidentiality of his medical information were the same in 2018 as they are today. The deposition videotape was then, as it is today, unfiled

discovery for which there is no presumption of public access. *Bond, supra.* Accordingly, Judge Kendall's finding of no legally significant changed circumstances was not an abuse of discretion.

This straightforward analysis supports the conclusion that the fourth factor, good cause, weighs against Hercules, and should be sufficient to end the inquiry. Hercules nevertheless proposes the circumstances "changed" in two ways: first, Judge St. Eve, at the time she entered the protective order, reasonably expected the public would learn at trial of Mr. Daley's alleged knowledge of police torture, but the trial never happened; second, the protective order "now" affects his ability to obtain the deposition videotape through an Illinois FOIA request. (Intervenor Br. 22). Both arguments fail.

1. <u>Changed Circumstances: Judge St. Eve's "Expectations"</u>

Hercules suggests Judge Kendall's finding of no legally significant changed circumstances was irrelevant because nothing about his position "turns on the public's right to access court records and proceedings." (Intervenor Br. 24). As Hercules reframes the issue, circumstances "changed" when the underlying lawsuit settled. According to Hercules, when the protective order was entered, Judge St. Eve "could reasonably have expected the public to learn about Daley's knowledge of police torture and coerced confessions at the eventual trial in the case, which did not happen due to the settlement." (*Id.* at 22). However, the argument that the public was expected to learn of Mr. Daley's knowledge at the eventual trial necessarily presumes and relies upon the public's right to access that live trial testimony. No matter how

Hercules attempts to spin it, Judge Kendall correctly interpreted his argument as being that circumstances changed because the case did not go to trial, which she properly rejected as conflating the public's interest in access to live trial testimony with its interest in access to unfiled discovery materials. (S.A.011).

Moreover, arguing changed circumstances based on Judge St. Eve's "expectation" at the time she entered the protective order is pure speculation. For starters, Hercules' argument necessarily speculates there eventually would be a trial. More to the point, nothing in the record indicates Judge St. Eve ever expressed any expectation the public would learn anything of Mr. Daley's knowledge at the eventual trial. Judge St. Eve never suggested she expected Mr. Daley would testify at the time of trial. At no time did Judge St. Eve determine Mr. Daley's deposition testimony or videotape would be admissible for any reason, including summary judgment or trial, specifically reserving her ruling on that question. (S.A.026). The record fails to support the speculative premise that the public would learn about Mr. Daley's knowledge of alleged police torture at Plaintiff's trial, let alone what Judge St. Eve "could reasonably have expected" when she entered the protective order.

Hercules' string citation (Intervenor Br. 23-24) to several cases that suggest "changed circumstances" need not be limited to factors relevant to the "court access doctrine" (*i.e.*, documents that affect judicial decision-making) does not aid his appeal. To reiterate, Hercules' argument that the circumstances changed because the case did not go to trial necessarily relies upon the public's right to access live trial

testimony. Cases discussing other types of "changed circumstances" that support modification of a protective order are therefore irrelevant here.

Moreover, each of the cases in Hercules' string citation is distinguishable. In *Jepson*, 30 F.3d 854, there was no evidence of a finding of "good cause" by the Magistrate Judge to support a protective order covering a deposition transcript, and no showing the opposing party's rights would be prejudiced by modifying the order. Here, as confirmed by Judge Dow and Judge Kendall, Judge St. Eve had good cause to enter the protective order in question (*supra*, at 21-23); further, as Judge Kendall also found (S.A.013), Mr. Daley established that his rights to privacy would be prejudiced by vacating the order. (See also *infra*, at 40-41). *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417 (9th Cir. 2011), involved the modification of a protective order needed to advance the "weighty interest in public safety" of preventing sexual abuse of children. There is no similar weighty public safety interest that would be advanced by vacating the protective order here. In *Doe v. Lansal, Inc.*, No. 08-CV-5983, 2012 WL 707112, at *5 (N.D. Ill. Mar. 5, 2012), both parties to the protective order "demonstrated broad abandonment of their protective agreement." Here, Mr. Daley has steadfastly maintained his adherence to and reliance on the protective order and in no way has demonstrated abandonment of its protections. In *Crothers*, 1997 WL 570583, the non-movant was alleged to be affirmatively using the protective order to further a fraud upon the movant and other creditors. Here, Mr. Daley is not using the protective order to perpetrate a fraud, nor is he using the

deposition videotape to advance a personal interest or cause. He is relying on the order to protect his right to privacy in his personal medical information.

In *Felling*, 211 F.R.D. 552, Coach Bobby Knight opposed the modification of a protective order prohibiting the release of videotaped depositions on the basis that their release would "humiliate" the deponents. The *Felling* court found that because the deposition transcripts had been released to the press over one year earlier, the potential embarrassment of the deponents had "significantly lessened or outright disappeared." *Id.* at 554. As noted above (*supra* at 25), *Felling* is incompatible with this Court's decision in *Bond*. Moreover, *Felling* is factually inapposite in two critical ways. Unlike *Felling*, the transcript of Mr. Daley's deposition testimony has *never* been publicly released. And, the potential embarrassment to Mr. Daley from a public release of the videotape has neither "disappeared" nor "lessened" since 2018 – it is the same today as it was when Judge St. Eve entered the protective order.

2. Changed Circumstances: Denial of FOIA Request

Hercules alternatively argues "changed circumstances" following the City's rejection of his Illinois FOIA request based on the protective order. According to Hercules, Judge Kendall improperly "discounted this argument because [she] found the video is not a public record and believed there is no evidence that the Law Department has access to it." (Intervenor Br. 24). Contrary to Hercules' argument, Judge Kendall was correct on both points.

Taking the latter point first, Judge Kendall correctly believed there was no evidence the Law Department had access to the videotape because no such evidence

existed. The protective order limited access of the videotape to Mr. Daley and his counsel, and to Plaintiff and his counsel. (R.303 at 10 n.8). Nor, as Hercules' FOIA request further directed (S.A.036), could the Law Department obtain the videotape from the City's attorneys in *Smith* (they did not possess or have access to it) or from the court reporter (authorized access to the videotape did not include the City or other parties). As such, Judge Kendall correctly found the videotape was not in the "possession or control" of a state body (*i.e.*, the City) for purposes of Illinois FOIA. (S.A.012).

The determination that the videotape deposition was not a matter of public record for purposes of FOIA was also correct. The deposition videotape was unfiled discovery, and as such, is not a matter of public record. *Bond*, 585 F.3d at 1074-76; *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002); *City of Greenville, Ill. v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 698 (7th Cir. 2014).

Hercules' speculative suggestion that the City somehow "acknowledged" the videotape was a public record because it did not expressly deny Hercules' request on the basis it was not a public record is meritless and strained beyond reason. Based on its straightforward language, the City's response to the FOIA request "acknowledges" no such thing. The compound nature of the FOIA request asked for a copy of the videotape and further directed that if the City did not have physical possession of the videotape, it was to obtain a copy from its attorneys or order a copy from the court reporter. (S.A.036). Neither the City nor its attorneys possessed a copy of the videotape, and due to the protective order, the City could not obtain a copy from

the court reporter because it was "under seal by order of the court." (*Id.*). The City's denial thus was directly responsive to the compound nature of the FOIA request and explained why it could not otherwise obtain or order a copy as alternatively directed in the FOIA request. Of note, Hercules never challenged the City's denial of his FOIA request. If he truly believed the City's denial was an acknowledgment that the videotape was a public record accessible under FOIA, he could have sought review of the denial by the Public Access Counselor at the Illinois Attorney General's Office or through judicial review. (*Id.*). He did neither.

The City never stated it was in possession or control of the deposition videotape. Nothing in the City's denial suggests it acknowledged the videotape was a public record. Nor can the City's denial be read to overcome the presumption against public access to unfiled discovery. The unfiled discovery at issue (the deposition videotape) was not somehow transformed into a "public record" simply because it was the subject of a FOIA request.[12]

3. Mr. Daley's Privacy Interest

Judge Kendall's conclusion that Hercules failed to demonstrate a legally significant change in circumstances to justify vacating the protective order was not an abuse of discretion and her ruling could and should be affirmed on that basis alone. Yet, Judge Kendall's analysis of the good cause factor went one step further. Judge

---

[12] As further support for Judge Kendall's conclusion that circumstances have not fundamentally changed since Judge St. Eve entered the protective order (S.A.011-012), if Hercules made his FOIA request immediately after the deposition or underlying settlement, the City's response and denial would have been the same as provided in 2024. There are no "changed circumstances" related to Hercules' FOIA request.

Kendall also found that Mr. Daley's continued interest in keeping his sensitive health conditions private weighed against vacating the protective order to allow public dissemination of the videotape. (S.A.013).

To support this additional finding, Judge Kendall evaluated and relied on the relevant record materials, including Judge St. Eve's exhaustive efforts and reasoning underlying her decision to seal the deposition videotape, and Judge Dow's subsequent finding that, after consideration of the basis for Judge St. Eve's ruling on the motion for protective order, along with Mr. Daley's "legitimate privacy interests in regard to his medical circumstances and associated medical records," Mr. Daley's health conditions "were the driving force" behind Judge St. Eve's rulings on the protective order. (S.A.013, citing R.279). Judge Kendall also reviewed certain portions of the videotape, and without considering the substantive testimony, noted the recording "could have the tendency to reveal sensitive aspects" of Mr. Daley's medical circumstances and symptoms that resulted from his 2014 stroke.[13] (S.A.013). Judge Kendall's finding that Mr. Daley's continued interest in keeping his sensitive health conditions private also weighed against vacating the protective order was not an abuse of discretion.

Hercules' contention that Mr. Daley failed to show how the deposition videotape implicated his private health information (Intervenor Br. 25) ignores the record before Judge Kendall. Mr. Daley explained in detail how public dissemination

---

[13] As Judge Kendall noted (S.A.013 n.1), the public does not acquire a right to access unfiled discovery material simply because a judge reviewed those materials *in camera* to determine whether the refusal to disclose them was proper. *Bond*, 585 F.3d at 1075 n.8, citing *United States v. Wolfson*, 55 F.3d 58, 61 (2d Cir. 1995).

of the videotape would require him to disclose the very health information for which he sought protection. (R.303 at 15-17). [redacted].

[redacted]. Either alternative would result in embarrassment to Mr. Daley. [redacted]. Judge Kendall recognized the continued threat to Mr.

Daley's privacy interests posed by public dissemination of the videotape and did not abuse her discretion in concluding that his "continued 'need for protection' still weighs heavily on the side of keeping the protective order in place." (S.A.013).

Hercules' proposal to redact or modify the videotape to remove private health information misses the point. The privacy concerns underlying the protective order are incapable of redaction. The order to seal the deposition videotape was not entered by Judge St. Eve because of the expected subject matter.[14] It was entered to prevent the potential embarrassment that would result [redacted], irrespective of the subject matter. Attempting to downplay the significance of Mr. Daley's privacy interests, Hercules suggests Mr. Daley's stroke is already public knowledge. (Intervenor Br. 7). As recognized by Judge St. Eve, Judge Dow, and now Judge Kendall, the sensitive medical information needing protection is not that Mr. Daley suffered a stroke, [redacted]. Judge Kendall's analysis balancing the competing public and private interests provides further support for her decision to keep the protective order in place.

[14] Judge St. Eve's decision to allow the accommodated deposition in the first place does not undermine Mr. Daley's concern about the potential embarrassment that would result from public dissemination of the videotape, as suggested by Hercules. (Intervenor Br. 25). Judge St. Eve never determined the deposition testimony would be admissible or otherwise made public. (S.A.026).

Hercules has failed to show Judge Kendall abused her discretion in denying his motion to vacate Judge St. Eve's protective order prohibiting public dissemination of the deposition videotape. Judge Kendall's ruling should be affirmed.

## III. Alternatively, Even If the Burden Is Improperly Imposed on Mr. Daley, He Continues to Show Good Cause to Support Judge St. Eve's Protective Order.[15]

As explained above, Judge Kendall correctly concluded Hercules bore the burden of establishing the existence of good cause to vacate the protective order precluding the public dissemination of Mr. Daley's videotaped deposition. Hercules rejects that finding and argues that "if" Mr. Daley bears the burden, he failed to show good cause existed to maintain the protective order. (Intervenor Br. 13). According to Hercules, Mr. Daley failed to demonstrate the deposition videotape would reveal his private health information, and that the public interest outweighs Mr. Daley's "undemonstrated" privacy interest. (*Id.* at 16). However, the record before Judges St. Eve, Dow, and Kendall, essentially ignored by Hercules' appeal, establish Mr. Daley's privacy interests have been amply demonstrated.

Mr. Daley's Demonstrated Privacy Interests

Hercules' conclusory contention that the record does not support the finding that the videotape would reveal Mr. Daley's private health information (*id.* at 14) completely ignores the medical information and briefing presented to Judge Kendall. As set forth above (*supra* at 41-43), Mr. Daley provided medical evidence and

[15] It is Mr. Daley's position that Judge Kendall correctly placed the burden to show "good cause" on Hercules, and that the Court need not consider this alternative argument.

explained in the sealed portions of the briefing how public dissemination of the videotape would require him to disclose the sensitive health information for which he initially sought protection. (R.303 at 15-17). Judge Kendall expressly found the record supported Mr. Daley's continued interest in keeping his sensitive health conditions private, which weighed against vacating the protective order to allow public dissemination of the videotape. (S.A.013). That finding was not an abuse of discretion.

Most of Hercules' remaining arguments on this issue (Intervenor Br. 14-15) have been addressed above, as summarized here:

- *The subject matter of the deposition was Mr. Daley's knowledge of police torture and not his health* – The protective order was not entered to prevent disclosure of the anticipated subject matter of the deposition testimony; rather, it was entered to protect Mr. Daley from the embarrassment that would result [redacted]. (*Supra* at 30; 33; 43).

- *It is public knowledge Mr. Daley suffered a stroke in 2014* – The sensitive medical information needing protection is not that Mr. Daley suffered a stroke, [redacted]. (*Supra* at 43).

- *Judge St. Eve made no specific findings as to Mr. Daley's privacy concerns when she ordered the deposition videotape to be placed under seal* – The issue is whether good cause existed for entry of the protective order. Judge St. Eve expended an extraordinary amount of time and consideration pertaining to the protective orders, which she confirmed on the record. (*Supra* at 7-11; 20-22). As for privacy concerns, Judge Dow extensively reviewed the record before Judge St. Eve and found Mr. Daley's private medical circumstances were the "driving force" underlying her orders. (*Supra* at 11-12; 22). Finally, Judge Kendall specifically characterized the notion that Judge St. Eve's order was unsupported by good cause as "misguided." (*Supra* at 13-14).

- *Judge St. Eve found Mr. Daley was capable of being deposed as to his knowledge of alleged police torture* – Judge St. Eve proposed an accommodated deposition and agreed to attend the proceedings as part of her ongoing assessment of Mr. Daley's motion for protective order; Judge St. Eve never determined the deposition testimony would be admissible or otherwise made public, and ultimately allowed Plaintiff's request for additional discovery as an "appropriate solution" given the complicated nature of discovery pertaining to Mr. Daley. (*Supra* at 10-11; 36; 43 n.13).

- *Judge Dow's rulings are irrelevant on the issue of whether the deposition videotape would reveal private health information* – Judge Dow's rulings

are relevant to confirm that Judge St. Eve's protective orders were supported by good cause (a point repeatedly contested by Hercules) and related to Mr. Daley's privacy concerns (also contested by Hercules). (*Supra* at 11-12; 22).

- *If parts of the videotape implicate Mr. Daley's health information, the solution should be to redact the confidential information* – The concerns underlying the protective order are incapable of redaction; the order to seal the deposition videotape was entered not because of specific subject matter, [redacted]. (*Supra* at 43; see also S.A.013 ("[I]rrespective of Daley's substantive answers, the recording could have the tendency to reveal sensitive aspects of his medical condition and symptoms following his 2014 stroke.")).

As Judge Kendall expressly confirmed (S.A.013), Mr. Daley demonstrated how dissemination of the deposition videotape would imperil his continued privacy interest in the confidentiality of his medical circumstances. *Schaill v. Tippecanoe County Sch. Corp.*, 864 F.2d 1309, 1322 n.19 (7th Cir. 1989) (recognizing a "substantial privacy interest in the confidentiality of medical information"). Hercules' contention that Mr. Daley's privacy interests were "undemonstrated" is conclusively refuted by the record before Judges St. Eve, Dow, and Kendall and dooms his arguments based on that disproven premise.

Any Public Interests are Outweighed by Mr. Daley's Privacy Interests

Hercules argument that the public interest in Mr. Daley's testimony outweighs his "undemonstrated" privacy interests (Intervenor Br. at 16) thus fails at the outset, as those privacy interests were clearly established. For purposes of completeness, however, Mr. Daley will address Hercules' additional argument concerning the public's interest. Hercules contends he triggered a presumption against the protective order by showing the order interfered with access to public records through Illinois FOIA. (*Id.*). This claim relies on a mistaken premise, *i.e.*, that the deposition videotape is a "public record" subject to FOIA. It is not.

Judge Kendall held the deposition videotape was not a matter of public record for purposes of FOIA. (S.A.012-013). Hercules nevertheless challenges Judge Kendall's reasoning that the videotape was unfiled discovery and not a matter of public record, claiming that holding "addresses the wrong question." (Intervenor Br. 17). He reframes the issue as whether the protective order interferes with public rights under Illinois FOIA. (*Id.*) No matter how the issue is phrased, Hercules' argument necessarily rests on the improper assumption the deposition videotape was a public record subject to FOIA.

As explained above (*supra* at 39-40), there is no merit to Hercules' speculative suggestion that the City "confirmed" the videotape was a public record because it did not deny Hercules' FOIA request on that specific basis. (Intervenor Br. 18). Nothing about the City's denial of Hercules' compound FOIA request can fairly be read as "confirming" the deposition videotape was a public record. The City's denial is

consistent with the fact that neither the City nor its attorneys possessed or controlled the deposition videotape, and because of the protective order, the City could not obtain a copy from the court reporter. (*Supra* at 38-40). Moreover, Hercules does not explain how the City's denial of his FOIA request could operate to waive Mr. Daley's privacy rights recognized and shielded by the protective order.[16]

Hercules' assertion that Judge Kendall "did not dispute" the deposition videotape was subject to FOIA (Intervenor Br. 17) is patently incorrect. Judge Kendall expressly determined "Illinois FOIA does not apply for at least two reasons." (S.A.012). Judge Kendall found the videotape was not in the "possession or control" of any state body for purposes of Illinois FOIA and determined the videotape deposition was not a matter of public record for purposes of FOIA. (S.A.012-013). Contrary to Hercules' conclusory assertion, Judge Kendall was not "speculating" that the Law Department did not actually possess or control the videotape. (Intervenor Br. 18). The protective order limited access of the videotape to Mr. Daley and his counsel, and to Plaintiff and his counsel (R.303 at 10 n.8). Hercules presented no tangible, non-speculative evidence to the contrary.

Hercules' reliance on *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), does not support him. *Pansy* involved an intervenor's attempt to vacate an order of confidentiality pertaining to a settlement agreement between a municipality

---

[16] As unfiled discovery, the deposition videotape was not a public record for purposes of FOIA. But even if considered a public record, which it is not, and even if in the possession or control of the City, which it is not, the deposition videotape still would be exempt from public disclosure under 5 ILCS 140/7(1)(b). That section exempts from disclosure a record revealing private information such as Mr. Daley's sensitive personal health information.

and a civil rights plaintiff. *Pansy* is distinguishable in at least three significant respects. First, the district court in *Pansy* made no findings when it entered the order of confidentiality and did not balance the public and privacy interests before entering the order. *Id*. at 786. Here, Judge Kendall performed an analysis balancing the public and privacy interests before concluding Mr. Daley's "continued 'need for protection' still weighs heavily on the side of keeping the protective order in place." (S.A.011-013). Second, but for the order of confidentiality, the settlement agreement in *Pansy* would have been accessible to the public under the Pennsylvania Right to Know Act. 23 F.3d at 791. Under Pennsylvania case law, a settlement agreement between a municipality and a private party is considered a "public record" subject to disclosure. *Id*. at 791 n.28&12, citing *Morning Call, Inc. v. Lower Saucon Township*, 627 A.2d 297, 299-301 (1993). Here, the deposition videotape reveals private information in unfiled discovery, and is not a public record for purposes of Illinois FOIA. Third, the Borough in *Pansy* possessed the settlement agreement. In contrast, the deposition videotape here was never in the possession or control of the City for purposes of Illinois FOIA.

As a final point, Hercules' repeated attempt to bolster his public interest argument concerning Mr. Daley's purported deposition testimony is undermined by the record. Although there are multiple assertions that Mr. Daley provided testimony "under oath about police torture allegations," the record indicates otherwise. Despite insisting to Judge St. Eve any form of discovery besides a deposition was "completely inadequate" or "unwarranted" (R.167 at 17), when the deposition concluded, counsel

for Plaintiff sought leave to issue 116 requests for admissions [redacted] (R.206 at 1). Judge St. Eve granted over objection Plaintiff's request to issue the requests for admissions, finding them to be an "appropriate solution under the circumstances" given the "complicated nature" of discovery pertaining to Mr. Daley. (R.218). Judge Dow, who in Judge St. Eve's stead immersed himself into the record before her, expressly confirmed as appropriate Judge St. Eve's decision to allow Plaintiff to serve further discovery on Mr. Daley after the deposition concluded. (R.279). The record reflecting [redacted], Judge St. Eve's subsequent decision to allow further discovery as an "appropriate solution" [redacted], and Judge Dow's agreement with that ruling, refute the premise that dissemination of the videotape would allow the public "to learn what Daley knew about police torture allegations." (Intervenor Br. 3).

Mr. Daley did not bear the burden of establishing good cause to maintain the protective order precluding the public dissemination of his videotaped deposition. However, even if the burden is imposed on Mr. Daley, the record supports his continued interest in keeping his sensitive health conditions private, which, as Judge Kendall found, weighed against vacating the protective order to allow public dissemination of the videotape. (S.A.013).

## CONCLUSION

This Court should affirm the judgment of the district court.

Dated April 7, 2026

Respectfully submitted,

*/s/ Terrence M. Burns*

TERRENCE M. BURNS
PAUL A. MICHALIK
DANIEL M. NOLAND
DANIEL J. BURNS
BURNS NOLAND LLP
311 South Wacker Drive, Suite 5200
Chicago, Illinois 60606
*Attorneys for Defendant-Appellee Richard M. Daley*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because this document contains 13,785 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2016 in 12-point Century Schoolbook style font.

Dated: April 7, 2027

*/s/ Terrence M. Burns*
Terrence M. Burns
*Attorney for Defendant-Appellee*
*Richard M. Daley*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2026 the Brief of Defendant-Appellee was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Terrence M. Burns*
Terrence M. Burns
*Attorney for Defendant-Appellee*
*Richard M. Daley*