**No. 25-2933**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

---

ALONZO SMITH,

*Plaintiff-Appellee*

JOHN BURGE*, et. al.,*

*Defendants-Appellees*

---

BOB HERCULES,

*Intervenor-Appellant*

---

Appeal from the United States District Court for the Northern District of Illinois,
Case No. 16 C 03404--Virginia Kendall, *Judge*

---

# INTERVENOR-APPELLANT BOB HERCULES'S REPLY BRIEF (PUBLIC REDACTED VERSION)

---


Matthew Topic
Stephen Stich Match
Shelley Geiszler
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
foia@loevy.com


**Oral Argument Requested**

# TABLE OF CONTENTS

I. ARGUMENT ........ 1

A. Daley bears the burden of showing good cause ........ 2

1. The district court entered the agreed protective order barring release of the video without determining good cause ........ 3

2. Hercules seeks to make the video public ........ 7

B. Daley did not meet his burden of showing good cause ........ 9

1. Daley is under no obligation to [redacted] ........ 9

2. [redacted] does not outweigh the significant interest in his testimony on police torture while he served as Mayor and State's Attorney ........ 12

C. If Hercules bears the burden of showing good cause, he met that burden ........ 15

1. The nature of the protective order supports modification ........ 15

2. Daley did not testify in reliance on the protective order ........ 17

3. There is good cause to vacate the protective order ........ 18

II. CONCLUSION ........ 21

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(A)(7) ........ 22

CERTIFICATE OF SERVICE ........ 23

## TABLE OF AUTHORITIES

***Page***

***Cases***

*Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009) ........ 2, 7, 13

*Condit v. Dunne*, 225 F.R.D. 113 (S.D.N.Y. 2004) ........ 11, 13, 14

*Daniels v. Univ. of Notre Dame*, No. 22-cv-698, 2024 WL 4602349 (N.D. Ind. Oct. 29, 2024) ........ 5

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995) ........ 10, 12

*Grove Fresh Dist., Inc. v. John Labatt, Ltd.*, 888 F. Supp. 1427 (N.D. Ill. 1995) ........ 5

*Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550 (7th Cir. 2018) ........ 7, 15, 16

*In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139 (2d Cir. 1987) ........ 7

*In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417 (9th Cir. 2011) ........ 4, 6, 9, 12, 18

*Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854 (7th Cir. 1994) ........ 2, 3, 4, 5, 6, 9, 12, 13, 18

*Magnusen v. Exelon Generation Co. LLC*, No. 21-cv-4142, 2023 WL 5436345 (C.D. Ill. Aug. 23, 2023) ........ 5

*Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979) ........ 17, 18

*Murata Mfg. Co. v. Bel Fuse Inc.*, 234 F.R.D. 175 (N.D. Ill. 2006) ........ 18, 19, 20

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) ........ 4, 9, 12, 13, 15

*Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787 (7th Cir. 2009) ........ 4

*U.S. v. Ky. Utils. Co.*, 124 F.R.D. 146 (E.D. Ky. 1989) ........ 3

*Wiggins v. Burge*, 173 F.R.D. 226 (N.D. Ill. 1997) ........ 12

***Statutes***

5 ILCS 140/2(c) ........ 8, 20

5 ILCS 140/9(a) ........ 8, 20

***Other Authorities***

Fed. R. Civ. P. 26(c) ....................................................................................................................12

Fran Spielman, *Former Mayor Richard M. Daley recovering after suffering third stroke ahead of his 84th Birthday*, Chicago Sun-Times (Apr. 21, 2026), https://chicago.suntimes.com/city-hall/2026/04/21/former-mayor-richard-m-daley-third-stroke-rehab-recovering ..........................................................................................................1, 10

# I. ARGUMENT

This appeal challenges a protective order that prevents the public from learning what the longest-serving Mayor of Chicago, former Mayor Richard M. Daley, knew about police torture and coerced confessions perpetrated by disgraced Chicago Police Commander Jon Burge. The protective order also prohibits the City of Chicago from releasing public records under the Illinois Freedom of Information Act. It has been publicly known for some time that Daley suffered a stroke—something his family recently confirmed publicly again[1]—but the district court found him competent to sit for a deposition. Hercules does not seek any portions of the deposition video that discuss medical specifics, which can be redacted; he seeks Daley's answers to questions about police torture.

Because the underlying case settled without Daley publicly testifying, the video of his deposition is now the only way for the public to learn what he knew about police torture and coerced confessions while he served in public office. The protective order over the video was entered in secret, and the basis for its entry was sealed from public view until Appellant-Intervenor Bob Hercules moved to unseal the relevant court records. On top of that secrecy, the entering court made no independent good cause determination pursuant to Federal Rule of Civil Procedure 26(c) when it ordered the video sealed indefinitely. Nor did the court consider the impact of its order on the FOIA rights of Illinois residents under state law or the regard federal courts should pay to the states when considering such orders.

Today, the protective order deprives the public of the right to understand what their former Mayor and former State's Attorney knew about the police torture allegations that have plagued the

[1] Fran Spielman, *Former Mayor Richard M. Daley recovering after suffering third stroke ahead of his 84th Birthday*, Chicago Sun-Times (Apr. 21, 2026), https://chicago.suntimes.com/city-hall/2026/04/21/former-mayor-richard-m-daley-third-stroke-rehab-recovering.

City for decades. For the reasons explained below, the Court should reverse the district court and order the protective order vacated so that the public can view the video of Daley's testimony.

**A. Daley bears the burden of showing good cause.**

This Court has held that the absence of a good cause finding by the district court "requires us to independently determine whether 'good cause' existed" for a protective order. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 859 (7th Cir. 1994). Here, the protective order over the video was entered without any express finding of good cause. That is indisputable. The judge who entered it simply stated, at a closed court hearing, that the video "would be under seal" without elaboration or written order. S.A.028. While the lack of a good cause determination and the unusual circumstances surrounding the protective order support modification, Hercules also seeks to vacate the protective order so that the public can view the video and learn what Daley said he knew about police torture while he served as Mayor and State's Attorney. Both factors support placing the burden of showing good cause to maintain the protective order on Daley, and the district court erred in burdening Hercules. Hercules Br. at 9-13.

Daley has two responses. First, he argues that because Judge St. Eve, who entered the order, spent substantial time determining whether his deposition should be precluded, she made a good cause finding as to the "seal[ing]" of the video—in reality, not a "seal" but a protective order barring its release. *See* S.A.002; *Bond v. Utreras*, 585 F.3d 1061, 1073-74 (7th Cir. 2009) (distinguishing between sealing court records and a protective order pursuant to Rule 26(c)). Second, Daley argues that Hercules's intention to vacate the protective order so that he can share the video with the public is irrelevant. Hercules responds to each argument in turn.

**1. The district court entered the agreed protective order barring release of the video without determining good cause.**

Daley disputes the lack of a good cause finding for the protective order, arguing that "Judge St. Eve invested substantial time and effort evaluating the issues relating to Mr. Daley's request for a protective order ***to preclude his deposition***." Daley Br. at 19 (emphasis added). But he does so by conflating two distinct protective orders: (1) the protective order he sought, which Judge St. Eve denied, to preclude him from sitting for a deposition; and (2) the protective order he did ***not*** seek, but which Judge St. Eve ordered, barring distribution of the video.

Daley's argument is based entirely on that conflation. Of course, as Daley argues, Judge St. Eve carefully considered Daley's request "for a protective order to preclude his deposition" from occurring at all. *Id.* That issue was hotly contested and the subject of extensive medical testimony. But that is not the protective order at issue here. The protective order at issue—the one barring distribution of the video—was offhandedly suggested by Plaintiff's counsel in opposition to Daley's motion to preclude his deposition, *see* Dkt. 286 at 18, and received no discussion at the evidentiary hearing prior to Judge St. Eve's spontaneously ordering that the video "will be under seal. Nothing can happen with that video deposition without further order of the Court." S.A.028.

Had the court expressly considered "good cause" for barring distribution of the video, one would have expected some reference in the record to the balancing test prescribed by Rule 26(c). *E.g. Jepson*, 30 F.3d at 859 (citing *U.S. v. Ky. Utils. Co.*, 124 F.R.D. 146 (E.D. Ky. 1989), *rev'd on other grounds* 927 F.2d 252 (6th Cir. 1991)) ("stipulated confidentiality orders should not be given binding effect even if they are endorsed by the court" because the "court should balance the interests between privacy and public access at the time the motion to modify a protective order is made"). That analysis would have pitted Daley's interest in keeping his medical information secret

against the public's interest in learning about his knowledge of police torture and coerced confessions. But the record contains no such analysis. Instead, the court solely assessed the conflicting medical evidence presented about Daley's capacity to sit for the deposition. S.A.024-25. That is entirely understandable given that that was the only issue in dispute. Nor should it be surprising that the court did not consider the public's interest in knowing Daley's testimony given that all of this took place entirely through sealed filings to which the public lacked access and in courtrooms from which it was excluded. *See* S.A.001-03; S.A.015-16.

Especially when a protective order is agreed, this Court has held that courts must "independently determine" good cause before issuing a protective order. *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 795 (7th Cir. 2009) (quoting *Jepson*, 30 F.3d at 858) ("It is of course true, as *Jepson* holds, that a district court is required to 'independently determine if 'good cause' exists' before judicially protecting discoverable documents from third-party disclosure."). And other Circuits recognize that when the court does not make a good cause finding before entering an agreed protective order, the burden of showing continued good cause lies with the party seeking its protection. *E.g. In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) ("When the protective order was a stipulated order and no party ha[s] made a good cause showing, then the burden of proof" remains with "the party seeking protection") (cleaned up); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994) ("The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order."). Here, we have a protective order over the video that was not requested by Daley, was agreed to by counsel, and is without an independent determination of good cause. That should be easier to vacate than an order where the court made

an independent good cause determination, not harder, and the burden of keeping the order in place lies with Daley.

Because he cannot dispute the facts of the protective order's entry, Daley seeks to transform Judge St. Eve's ***no good cause*** finding as to the occurrence of his deposition into a ***yes good cause*** finding as to the distribution of the video. The district court did the same when it denied Hercules's motion to vacate below. S.A.007 (stating that Judge St. Eve "articulated the good cause standard in finding the deposition could proceed"). Neither can be squared with this Court's requirement that the court must "independently determine whether 'good cause' exist[s]" for the protective order actually entered, and that the burden remains with the proponent when the court fails to make that determination. *Jepson*, 30 F.3d at 859.

Apparently conceding the lack of a good cause determination as to the video, Daley argues that "explicit references to good cause are not necessary if the record reflects that the judge engaged in a good cause analysis prior to adopting the protective order." Daley Br. at 21 (quoting *Daniels v. Univ. of Notre Dame*, No. 22-cv-698, 2024 WL 4602349, at *3 (N.D. Ind. Oct. 29, 2024)). Whether or not that is true, in all Daley's cited cases, it was clear that the courts had actually analyzed the protective order at issue. *See Daniels*, 2024 WL 4602349, at *3 (agreed protective order designating certain categories of information confidential); *Grove Fresh Dist., Inc. v. John Labatt, Ltd.*, 888 F. Supp. 1427, 1432 n.3 (N.D. Ill. 1995) (stipulated protective order as to trade secrets); *Magnusen v. Exelon Generation Co. LLC*, No. 21-cv-4142, 2023 WL 5436345, at *2 (C.D. Ill. Aug. 23, 2023) (protective order precluding deposition of defendant's in-house counsel). That is unlike this case where, as discussed above, there is no indication that Judge St. Eve conducted the analysis required by Rule 26(c) as to the protective order in dispute on appeal, such as by considering the public's interest in learning Daley's knowledge about police torture.

Likewise, the issue is not, as Daley claims, that the judge failed to ***incant*** "good cause" when issuing her order. It is that she did not ***analyze*** good cause for that order, as she did not independently balance the private interest and public interest in access to Daley's testimony or consider the possibility of redactions of medical information when she ordered the video be sealed indefinitely. *See Jepson*, 30 F.3d at 859; *Roman Catholic Archbishop*, 661 F.3d at 425 (redaction is appropriate to protect sensitive information subject to a protective order).

In addition, Daley claims that Judge Dow, who ruled only on Hercules's motion to unseal court records pertaining to the protective order's entry, independently "determined there was good cause[.]" Daley Br. at 21. The district court also suggested that Judge Dow's ruling on the separate issue of unsealing of court records was consistent with Judge St. Eve's protective order. S.A.007-8. Both mischaracterize Judge Dow's ruling because Judge Dow was never asked to vacate the protective order barring distribution of the video. Rather, Judge Dow unsealed certain court filings and transcripts pertaining to Daley's deposition, among them those that publicly disclosed, for the first time, the existence of the order barring the video's distribution. S.A.015-16. He did so under a First Amendment right of access rubric that is distinct from Rule 26(c). *Id.*; *see* Dkt. 256. And the interests he considered were largely distinct from those pertaining to the protective order. The sealed court filings contained extensive details about Daley's medical condition, while the video does not. S.A.015-16; Dkt. 284-86; Daley Br. at 29. And the sealed court filings were not directly related to Daley's knowledge of police torture and coerced confessions, which the video almost certainly is. *See id.* at 41; S.A.011-12.

Judge Dow's ruling also highlights that the protective order was issued in secret, its circumstances never publicly known until Hercules intervened and moved to unseal the relevant court records. S.A.015-16. Because all the proceedings were secret, Hercules could not even

arguably have had constructive notice of the protective order. He should not now be put in a worse position with respect to vacatur by virtue of that very fact.

### 2. Hercules seeks to make the video public.

While the lack of a good cause finding and the nature of the protective order support placing the burden of showing good cause on Daley, Hercules has also sought to vacate the protective order so that the public can view the video and learn what Daley said he knew about police torture allegations and coerced confessions while he held public office. This Court has recognized that where the party seeking modification intends to vacate a protective order barring distribution of discovery materials "so the public can view them," the party resisting vacatur retains the burden to justify it. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 567 (7th Cir. 2018) (placing burden of showing good cause on the party seeking modification because it "stressed throughout this litigation that it wants to *prevent* public disclosure") (emphasis in original).

Cases from other jurisdictions also place the burden on the party seeking to keep the information secret. Hercules Br. at 12 (citing cases). Daley argues these cases do not comport with *Bond*, where the Court held there is no presumptive right to unfiled discovery. Daley Br. at 23-24; *Bond*, 585 F.3d at 1075-76. But *Bond* issued no holding about who bears the "good cause" burden. Nor could it have, since it found that it lacked subject-matter jurisdiction to even consider that question as to the protective order at issue in the case.[2] *Id.* at 1078.

In addition, the City of Chicago Law Department's denial of Hercules's Illinois FOIA request for the video independently supports burdening Daley because the City's denial letter

[2] *Bond* similarly distinguished *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139 (2d Cir. 1987) because the court in that case held that unfiled discovery qualified as a "judicial record" subject to First Amendment and common law rights of access under the prior version of Federal Rule of Civil Procedure 5(d). *Bond*, 585 F.3d at 1075-76. This also says nothing about who bears the burden of showing good cause.

citing the protective order shows that the protective order interferes with Hercules's right to access the video. *See* S.A.036; Hercules Br. at 16-18.

Daley responds that the protective order does not interfere with Hercules's rights under Illinois FOIA because, he says, Illinois FOIA does not apply to unfiled civil discovery. Daley Br. at 38-39. But that is just wrong. Illinois FOIA defines "public records" subject to the Act broadly to include "materials pertaining to the transaction of public business . . . having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/2(c). Daley cites nothing in FOIA supporting his claim that unfiled discovery cannot qualify as a public record.

Daley also claims that the order does not interfere with Hercules's Illinois FOIA rights because the City of Chicago does not possess the video. But he identifies nothing in the record supporting that claim, apart from a similar unsupported claim in a prior brief. Daley Br. at 38-39 (citing Dkt. 303 at 10 n.8).[3] Neither did the district court, which made the same point. S.A.012-13. Instead, the record shows that the City does possess it because its FOIA response was not that it does not possess the video, but rather that the protective order bars the City from disclosing it. *See* 5 ILCS 140/9(a) ("Each public body denying a request for public records shall notify the requester in writing of the decision to deny the request, the reasons for the denial, including a detailed factual basis for the application of any exemption claimed"); S.A.036. Thus, the City both possesses the video and conceives of it as a public record and would have produced it to Hercules but for the protective order prohibiting it from doing so. As the Third Circuit has held, a "strong presumption exists against . . . maintaining an order of confidentiality whose scope would prevent

[3] To the extent Daley relies on the HIPAA protective order restricting certain materials to Smith's counsel, the video is not HIPAA material, and so that protective order is irrelevant. *See* Daley Br. at 4; Dkt. 110.

disclosure of [] information pursuant to" freedom of information laws. *Pansy*, 23 F.3d at 791. That strong presumption applies equally here and justifies placing the burden of showing good cause on Daley to maintain the protective order. *See id.* at 786-87.

**B. Daley did not meet his burden of showing good cause.**

Good cause for a protective order barring access depends on balancing the public interest in that access with the privacy interests it would invade. *Jepson*, 30 F.3d at 859 (the "court should balance the interests between privacy and public access at the time the motion to modify a protective order is made"); *Roman Catholic Archbishop*, 661 F.3d at 425 ("in determining whether to protect discovery materials from disclosure under Rule 26(c), a court must . . . consider whether the party seeking protection has shown particularized harm, and whether the balance of public and private interests weighs in favor"). Here, Daley has not shown that balancing weighs in favor of continued secrecy.

**1. Daley is under no obligation to [redacted].[4]**

Daley agrees that the subject of the deposition was not his health; it was his knowledge of police torture while he served in public office. *See* Daley Br. at 29, 41, 44. He also does not claim the video would reveal his private medical information. *Id.* Instead, he argues that public release of the video deposition would cause him the embarrassment [redacted] *Id.* at 41. Daley's argument fails to articulate "a clearly defined and serious injury" as

[4] Hercules has filed his brief partially under seal only because he is presently required to do so because Daley sealed the redacted information in his own brief. Hercules disputes that this material is properly sealed and will be filing a motion to unseal it.

required to show good cause for two reasons. *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

First, Daley is wrong that [redacted]. It is true that he would need to reveal certain facts [redacted] but those facts are publicly available already in the records unsealed by Judge Dow. S.A.015-16; Dkt. 285 at 2 (Daley arguing that "his neurological deficits would not allow him to express or communicate reliable, consistent, and accurate testimony in response to questions"); Dkt. 286 at 2-3 (Daley suffered an "acute ischemic stroke" in 2014). Daley's claim that his stroke [redacted] is also referenced in the district court's written ruling. S.A.001 (quoting Dkt. 293 at 2, Dkt. 284 at ¶¶ 4, 7) (Daley's attorneys sought "to preclude any deposition because Daley would be 'unable to provide accurate or reliable answers in response to questions that might be put to him' due to a stroke he suffered in 2014."). And the fact of the stroke is referenced throughout Daley's redacted, publicly available brief. Daley Redacted Br. at 4-6, 40, 42, 44, 46. His family has also recently commented to the media on the effects (or lack thereof) of Daley's 2014 stroke.[5] Daley has not explained why vacating the protective order would require him to [redacted] other than what is publicly known.

Second, Daley argues that he would suffer embarrassment [redacted]

[5] Fran Spielman, *Former Mayor Richard M. Daley recovering after suffering third stroke ahead of his 84th Birthday*, Chicago Sun-Times (Apr. 21, 2026).

[redacted] Indeed, Judge St. Eve found that Daley was competent to testify, particularly given his public-facing roles on the Board of Directors of Coca-Cola, as Executive Chairman of Tur Partners, and "Of Counsel at Katten." S.A.025 (stating "I am sure he is speaking to people and not just silently coming along" when finding Daley competent to testify). [redacted] Judge St. Eve found him competent to testify.

Critically, the district court held that only "certain portions" of the video, which spanned three days, tended to reveal something about Daley's health. S.A.013. If that is the case, courts recognize redaction is appropriate to protect specific sensitive information. *E.g. Roman Catholic Archbishop*, 661 F.3d at 425. Daley insists that his alleged privacy concerns "are incapable of redaction," Daley Br. at 42, and to some extent that is true—the video does not contain any private details, [redacted] the fact of the stroke and its general effects are public. That does not answer why the entire three-day deposition should remain barred from the public when Daley agrees the subject of the deposition was not his health and the district court held that only "certain portions . . . could have a tendency to reveal sensitive aspects of [Daley's] medical condition and symptoms following his 2014 stroke." S.A.013.

**2. [redacted] does not outweigh the significant interest in his testimony on police torture while he served as Mayor and State's Attorney.**

In balancing the public and private interests as part of the good cause analysis, *e.g. Jepson*, 30 F.3d at 859, courts consider "whether a party benefitting from the order of confidentiality is a public entity or official" and "whether the case involves issues important to the public." *Glenmede*, 56 F.3d at 483; *Roman Catholic Archbishop*, 661 F.3d at 424 n.5; *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997) (citing *Pansy*, 23 F.3d at 787-88). Here, there is a public interest in what Daley knew about police torture involving disgraced former Chicago Police Detective and Commander Jon Burge while Daley served in public office. *See* Hercules Br. at 16-18. Daley argues there is no public interest in his testimony because the video deposition was never filed with the court, and he suggests [redacted]. Daley Br. at 33-34, 49-50. Hercules responds to each argument in turn.

First, Daley claims that because the video deposition is unfiled discovery, "there is no presumption of public access to the deposition videotape." Daley Br. at 23. That is misdirection. The issue is not whether the public has a First Amendment or common law right to access the video *qua* unfiled discovery. Of course it does not. *See* Hercules Br. at 11-12, 23 (acknowledging this).[6] The issue is whether there is "good cause" for an order barring its release from a willing speaker or under state public records laws. Fed. R. Civ. P. 26(c). And the public's interest in accessing discovery material is a key element of the "good cause" analysis. *See Jepson*, 30 F.3d at 858-59 (holding that Rule 26(c) good cause determination requires the court to "balance the interests between privacy and public access"); *Roman Catholic Archbishop*, 661 F.3d at 425 (good

[6] Hercules does, however, have a separate First Amendment right to receive the video from Flint Taylor, a willing speaker. *See infra*. He also has a right under Illinois FOIA. *Id.*

cause analysis depends on "whether the party seeking protection has shown particularized harm, and whether the balance of public and private interests weighs in favor" of a protective order).

Seeking to muddy the waters, Daley cites *Bond*, which rejected the notion that court-access rights attach to unfiled civil discovery material. Daley Br. at 23 (quoting *Bond*, 585 F.3d at 1074-75); I.A.2 *supra*. But as just explained, that is irrelevant. The issue is not whether the public has ***court-access rights*** to the video (which Hercules does not argue), but whether there is "good cause" to bar its distribution—which in turn depends on the public's ***interest*** in accessing it. *See Jepson*, 30 F.3d at 858-59. Indeed, *Bond* did not address the substantive standards for good cause under Rule 26(c), nor could it have, given its holding that, because the intervenor had no willing speaker, there was no Article III jurisdiction. *See* 585 F.3d at 1077-78; I.A.2 *supra*.

In addressing that issue, the Court should conclude that the public interest in the video overcomes the alleged privacy harm. Daley's privacy concerns amount to his claim that he will suffer embarrassment [redacted], which is uncertain, or if he [redacted] which is unnecessary because the fact of his stroke and its effects are already public. I.B.1 *supra*; *see Pansy*, 23 F.3d at 787 ("an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious.") (citation omitted). On the other side of the balance, as the district court recognized, there is a strong public interest "in hearing what Daley might have to say about allegations of police torture and forced confessions" and that this interest is "elevated" because Daley was a public official. S.A.011. The public should not be deprived of an opportunity to hear what Daley said about police torture while he was Mayor and State's Attorney simply because he would be embarrassed [redacted] the information that is already public. *See Condit*, 225 F.R.D. at 118 (denying protective order

over a video deposition where proponent claimed his deposition [redacted]

Second, Daley suggests that he [redacted] Daley Br. at 50. He also claims that Judge Dow "agree[d]" with "Judge St. Eve's subsequent decision to allow further discovery[.]" *Id.* None of these things prove that Daley gave no testimony worthy of public interest. Indeed, he was deposed on subjects of great public concern, as the district court held. S.A.011. And even if Daley claimed [redacted], the public has a strong interest in evaluating that, especially in the context of the underlying subject matter and Judge St. Eve's finding that Daley was competent to testify, and regardless of Plaintiff's counsel strategic decision to serve additional discovery afterward. *See Condit*, 225 F.R.D. at 119 ("The Court sees no better way to assure that the reliability" of the deponent's "deposition testimony is properly represented than to allow public scrutiny."). Further, it is baseless to suggest, as Daley does, that Judge Dow's ruling to unseal court records somehow endorses that Daley's testimony is unworthy of public scrutiny. Daley Br. at 50. Judge Dow only ruled on whether certain court records related to Judge St. Eve's prior decisions could be unsealed; he did not consider the video deposition at all, let alone review it. S.A.015-16.

Finally, as explained in Section I.A.2 *supra*, the City's response to Hercules's FOIA request has also triggered the strong presumption against protective orders that interfere with access to public records through open records laws. *E.g. Pansy*, 23 F.3d at 791. Daley has failed to meet his burden to show good cause to maintain the order, and so the Court should order it vacated.

**C. If Hercules bears the burden of showing good cause, he met that burden.**

The district court erred when it held that Hercules, and not Daley, bears the burden of showing good cause. But if the Court determines that Hercules bears the burden, the Court should still reverse because the district court abused its discretion in holding that Hercules failed to meet that burden. While the district court's holding on whether Hercules met his burden is reviewed for abuse of discretion, the district court made legal errors in applying the relevant four-factor test, which is necessarily an abuse of discretion. *Heraeus Kulzer*, 881 F.R.D. at 565 (a district court abuses its discretion when "the decision is based on an erroneous conclusion of law"). The four-factor test the district court applied considers: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." S.A.006 (quoting *Heraeus Kultzer*, 881 F.R.D. at 565). The second factor is not relevant in this appeal, and Hercules responds as to the other three factors below.

**1. The nature of the protective order supports modification.**

In assessing the nature of the protective order, this Court has focused on whether the movant agreed to the protective order and the circumstances surrounding its entry. *Heraeus Kulzer*, 881 F.3d at 567 (holding that "Heraeus's burden" of showing good cause to vacate the order "was even higher because Heraeus agreed to the protective orders" and the text of the orders "actually restricts Heraeus's right to seek amendment."). Here, Hercules did not agree to the

protective order, and the secrecy surrounding its entry made it impossible for Hercules or anyone else to object.

Daley argues that "[b]y claiming a derivative right to receive the videotape from" Plaintiff's counsel G. Flint Taylor, "Hercules is inextricably tied to Taylor's agreement that the videotape be maintained under seal[.]" Daley Br. at 28. But Hercules was not a party to the case when the protective order was entered, and he had no opportunity to object because the relevant briefing was under seal and the hearings were closed to the public. Hercules Br. at 19-20. Even though Taylor, who is Hercules's willing speaker, agreed to the order, the order is not agreed as to Hercules.[7] Indeed, Hercules only learned the basis for the protective order by intervening in this case and successfully moving to unseal those court records and hearing transcripts. *See* Dkt. 256; S.A.015-16. If Hercules had notice of the order he would have objected, in which case it would be absurd to think he agreed to it. Further, Daley does not claim that the City of Chicago agreed to the protective order, and yet it is still bound by it, as shown by Hercules's FOIA request. *See* S.A.036.

In addition, there is no dispute that the order covers Daley's entire three-day deposition, without regard to subject matter. Daley argues the order was not over-broad, referencing the umbrella-blanket-specific trichotomy cited by the district court. Daley Br. at 29. But this Court has not endorsed that trichotomy. *Heraeus Kulzer*, 881 F.3d at 567-68. And here, the district court concluded that only "certain portions" of the three-day deposition implicate Daley's health, a

[7] Daley accuses Hercules of "disavow[ing] his reliance on Taylor as the 'willing speaker'" and "abandoning" his basis for standing. Daley Br. at 28 n.10. That is not true. Hercules did not affirmatively raise standing in his opening brief because Judge Kendall found that he ***did*** have standing to challenge the protective order, so there was nothing for him to appeal on that front. *See* S.A.003-6. For avoidance of doubt, Hercules has standing both because Flint Taylor is a willing speaker who would provide the video but for the protective order and because the order interferes with his rights under Illinois FOIA. *See id.*; Dkt. 293 at 4-7.

finding that cannot be reconciled with the breadth of a protective order over three days of testimony that Daley agrees did not concern his medical condition. S.A.013; *see* Daley Br. at 42.

Beyond that, the protective order also interferes with the public's ability to access the video deposition through FOIA. Daley argues that the video deposition is not subject to FOIA because it is unfiled discovery, but as explained in Section I.A.2 *supra*, that has no bearing on whether the video is a public record for the purposes of Illinois FOIA. The breadth of the order, its secrecy, and the fact that the order interferes with access through FOIA all support modification.

**2. Daley did not testify in reliance on the protective order.**

The relevant inquiry under the reliance factor is whether witnesses relying on protective orders will "be inhibited from giving essential testimony in civil litigation[.]" *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979). The district court recognized that Daley was ordered to sit for the deposition, and so "he cannot be said to have banked on the order" when he sat for the deposition. S.A.009. Despite that, the district court held that Daley did rely on the protective order when he sat for the deposition because Plaintiff's counsel assured that videotaping the deposition "was to preserve Daley's testimony for a potential trial." S.A.010. Daley repeats the district court's reasoning and claims he would have "more forcefully resisted the videotaping" without that assurance from Plaintiff's counsel. Daley Br. at 31-32.

But what matters here is not Daley's reliance on counsel's assurances, but his reliance on the protective order in giving his testimony. *See Martindell*, 594 F.2d at 295. Again, Judge St. Eve had already ordered Daley to be deposed, and Daley has not claimed he would have appealed that order but for the protective order over the video. Further, the harm Daley articulates—having [redacted]—does not depend on the fact that the deposition was videotaped at all. That alleged harm would apply equally to a transcript because Daley's concern [redacted]. The notion that Daley would

have resisted videotaping without the protective order is speculation, and Plaintiff's counsel's assurance that videotaping was to preserve Daley's testimony could not have stood for an assurance that the public would never try to view the video.

What is more, the only harm Daley identifies if the protective order were vacated now is that he would be embarrassed [redacted] Judge St. Eve found him capable of providing, and if he [redacted] on public information.[8] Daley Br. at 41, 44. That says nothing about the protective order's utility in affording access to Daley's testimony in the first place. *See Martindell*, 594 F.2d at 295.

For these reasons, the district court abused its discretion when it held this factor weighs in favor of Daley.

**3. There is good cause to vacate the protective order.**

Finally, the Court must determine "whether good cause exists" to modify the protective order. *Heraeus Kulzer*, 881 F.3d at 565 (good cause is the "most significant[]" for the four factors). Assessing good cause requires courts to "balance the interests between privacy and public access at the time the motion to modify a protective order is made." *Jepson*, 30 F.3d at 859; *Roman Catholic Archbishop*, 661 F.3d at 424; *Murata Mfg. Co. v. Bel Fuse Inc.*, 234 F.R.D. 175, 180 (N.D. Ill. 2006). "'Good cause' in this context implies changed circumstances or new situations[.]" *Id.*

Hercules has identified two changed circumstances: First, when the protective order was entered, the public could have reasonably learned about Daley's knowledge about police torture

[8] Daley claims that Hercules waived disputing Daley's "longstanding reliance" on the protective order. Daley Br. at 32. That is untrue because Hercules has appealed the district court's entire ruling as to the reliance factor, *see* Hercules Br. at 21-22, and has addressed reliance over time. *Id.* at 25.

and coerced confessions at the eventual trial, but at the time Hercules moved to vacate the protective order the public no longer had that avenue because the case settled. Hercules Br. at 22. Second, the protective order interferes with Hercules's ability to obtain the video deposition through Illinois FOIA. *Id.*

In response to the first argument, Daley claims that Hercules "presumes and relies upon the public's right to access live trial testimony" and accuses Hercules of "conflating the public's interest in access to live trial testimony with its interest in access to unfiled discovery materials." Daley Br. at 34-35. But it is Daley who conflates these doctrines, as the district court did. *See* Hercules Br. at 23. The point is simply that, at the time the order was entered, the public was likely to have learned about Daley's knowledge of police torture and coerced confessions, but at the time Hercules moved to vacate it, it was not. Of course, the public would likely have had that opportunity because trials take place in the open. But the point is not that the public's access ***right***, in and of itself, constitutes changed circumstances. The changed circumstances are the ***fact*** that the trial did not take place. In other words, a "new situation[]" arose when the public lost its only avenue to hear Daley's testimony. *Murata*, 234 F.R.D. at 180.

Daley insists these changed circumstances are speculation because "Judge St. Eve never suggested she expected Mr. Daley would testify at the time of trial." Daley Br. at 35. But the dispositive fact is not the judge's subjective expectations. It is whether circumstances have changed since order's entry that bear upon its validity. Daley was a party to the case, and the case had, at that point, survived a motion to dismiss, so it was reasonable to expect Daley to testify at trial or in the form of the video deposition, and that became impossible once the case settled. Courts analyze changed circumstances based on the facts of each case, not based on whether the protected material affects judicial decision-making as required under the court-access doctrine and

as the district court held. Hercules Br. at 23-24 (citing cases). Daley's attempt to distinguish the cases Hercules cites on this point as "discussing other types of 'changed circumstances'" only proves Hercules's point. *See* Daley Br. at 36-37. In this case, it is highly relevant that Daley would likely testify at trial when the protective order was entered and would not by the time Hercules intervened.

As to Hercules's second argument that the protective order now interferes with access to the video deposition under FOIA, Daley responds that the video deposition is not subject to Illinois FOIA because it is unfiled discovery. *Id.* at 37-39. Hercules responded to this argument above, I.A.2 *supra*, and only reiterates here that the video deposition's status as unfiled discovery in this case does not mean it is not a public record under the FOIA statute or accessible by the City's Law Department. *See* 5 ILCS 140/2(c). Further, if the City was unable to access the record for some reason other than the protective order it was required under FOIA to say so in its response letter. 5 ILCS 140/9(a). It did not.

As the district court acknowledged, the public interest in Daley's testimony is "augmented," because his testimony concerned allegations of police torture and coerced confessions while he served in public office as the head of two different public bodies. *See* S.A.011-12. Since the entry of the protective order, the video has become the only vehicle for sharing this important testimony with the public. *See Murata*, 234 F.R.D. at 180 (good cause includes "the availability of alternatives to better achieve both sides' goals"). Faced with this "augmented" public interest and these changed circumstances, Daley's only privacy claim is the embarrassment he may suffer [redacted] That Daley may [redacted] the fact of his stroke

and its general effects are already public does not outweigh the immense public interest in his testimony about police torture and coerced confessions. Thus, there is good cause to vacate the protective order and the district court erred when it held otherwise.

## II. CONCLUSION

For the foregoing reasons, the decision of the district court should be reversed and this case should be remanded for further proceedings consistent with the Court's ruling.

Respectfully submitted,

s/ Shelley Geiszler
One of Intervenor's Attorneys

Matthew Topic
Stephen Stich Match
Shelley Geiszler
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
foia@loevy.com

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(A)(7)

1. This brief complies with the Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32 because the brief contains 6,897 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).
2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in a type-point 12 point font size and Times New Roman type style.

Respectfully submitted,

s/ Shelley Geiszler
One of Intervenor's Attorneys

Matthew Topic
Stephen Stich Match
Shelley Geiszler
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
foia@loevy.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I served the Reply Brief of Intervenor-Appellant on April 28, 2026, using the CM/ECF system, which effected service on all counsel of record for Appellees.

Respectfully submitted,

s/ Shelley Geiszler
One of Intervenor's Attorneys

Matthew Topic
Stephen Stich Match
Shelley Geiszler
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
foia@loevy.com